Bruce Berline
LAW OFFICE OF BRUCE BERLINE, LLC
Security Title Building
Isa Drive, Capitol Hill
P.O. Box 5682 CHRB
Saipan, MP 96950
Tel: (670) 233-3663
Fax: (670) 233-5262
Email: bruce@saipanlaw.com

Aaron Halegua
AARON HALEGUA, PLLC
524 Broadway, 11th Floor
New York, New York 10012
Tel: (646) 854-9061
Email: ah@aaronhalegua.com

Attorneys for Joshua Gray

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS
### BANKRUPTCY DIVISION

| | |
|---|---|
| In re | Case No. 1:24-0bk-00002 |
| IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, | **MEMORANDUM OF LAW IN SUPPORT OF MOTION BY JUDGMENT CREDITORS JOSHUA GRAY AND U.S.A. FANTER FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 361, 362 AND 541** |
| Debtor and Debtor-in-Possession. | Hearing Date: TBD<br>Hearing Time: TBD<br>Judge: Hon. Ramona V. Manglona |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** …………………….……………………..…….. iii

**PRELIMINARY STATEMENT** ……………………………………………...…. 1

**JURISDICTION AND VENUE** ……………………………………….…….. 2

**BACKGROUND** ……………………………………………………….…… 2

    **Fanter's Judgment and Levy on Personal Property** …………………………… 3

    **Gray's Judgment and Levy on the Personal Property** ……………..………..…… 4

    **Clear's Liquidation of the Personal Property Despite IPI's Interference** ………….... 5

        The Liquidation Generally………………………………………………… 5

        The Liquor Inventory ……………………………………………………… 6

        The Vehicles and Heavy Equipment……………………………..………… 7

        The Art and Other Personal Property ……………………..…………….. 8

    **Gray's Petition for Attorney's Fees** …………………………...……… 8

**RELIEF REQUESTED** …………………………………………..……..... 9

**BASIS FOR RELIEF REQUESTED** ……………………………………….…...9

    **A.  The Personal Property levied upon by Movants is no longer "property of the estate" under Bankruptcy Code §541 and, therefore, is not subject to the automatic stay under Bankruptcy Code §362** ..……………………….…… 9

    **B.  If the Personal Property is not outside the Debtor's estate, then the automatic stay should be lifted so that the liquidation of these items may continue** …….……………………….………………… 13

        **1.  There exists "cause" for the Court to lift the automatic stay to permit the liquidation to proceed** …………………………..………… 13

        **2.  The automatic stay should also be lifted under Bankruptcy Code §362(d)(2) because the Debtor has no equity in the Personal Property and it is not necessary for an effective reorganization** …………..…………… 18

i

**C.** **The Debtor should be required to make adequate protection payments to Movants for any diminution in value of the Personal Property caused by the delay in lifting the automatic stay** …………………………………….... 20

**D.** **This Court should grant relief from the stay for the District Court to decide Gray's pending attorneys' fees petition** …………………………………….. 23

**CONCLUSION**……………………………………….……………………………………..24

ii

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Butner v. United States,* 440 U.S. 48 (1979) ……………………………………………………… 10

*Commonwealth v. Lot No. 218-5 R/W*, Nos. 2013-SCC-0006-CIV &

    2013-SCC-0025-CIV, 2016 WL 7468001 (N.M.I. Super. Ct. Dec. 28, 2016) ………………... 11

*Fanter v. IPI*, 20-cv-0035 (D.N. Mar. I., June 16, 2023), ECF No. 419 …………………….... 3, 4, 22

*Freeman v. Cal. Franchise Tax Bd.*, No. 18-CV-04501, 2019 WL 3412938

    (N.D. Cal. July 29, 2019) ………………………………………………………………….. 11, 12

*Gray v. IPI*, No. 19-cv-0008 (D.N. Mar. I., May 30, 2023), ECF 225 ………………………….. passim

*In re Am. Spectrum Realty, Inc.*, 540 B.R. 730 (Bankr. C.D. Cal. 2015) ……………………... 14, 17

*In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984) …………………………………………………... 14, 23

*In re Daws,* 13 B.R. 101 (Bankr. D. Haw. 1981) …………………………………………………… 21

*In re Deico*, 139 B.R. 945 (B.A.P. 9th Cir. 1992) …………………………………………………… 21

*In re Dennis Meyer Danzik*, 549 B.R. 804 (Bankr. D. Wyo. 2016) ………………………………… 14

*In re Indian Palms Assocs., Ltd.,* 61 F.3d 197 (3d Cir. 1995) ……………………………………….. 18

*In re Junior Larry Hillbroom Litigation,* No. 20-cv-0009, 2020 WL 6572669

    (D. N. Mar. I. Oct. 26, 2020) ………………………………………………………………… 11

*In re Kronemyer*, 405 B.R. 915 (B.A.P. 9th Cir. 2009) …………………………………………..…13

*In re LPM Corp.,* 253 B.R. 914 (Bankr. S.D. Cal. 2000) ………………………………………… 11

*In re Monroe Park,* 17 B.R. 934 (D.C. Del. 1982) …………………………………………………... 21

*In re NMP Concord II, LLC,* No. 10-43080, 2010 WL 3488249

    (Bankr. N.D. Cal. Sept. 1, 2010) ………………………………………………… 18, 19, 20

*In re Perl*, 811 F.3d 1120 (9th Cir. 2016) …………………………………………………… 11

iii

*In re Peterson*, 116 B.R. 247 (D. Colo. 1990) …………………………………………….. 24

*In re Roger*, 539 B.R. 837 (C.D. Cal. 2015) …………………………………………... 13, 14

*In re Sun Valley Newspapers, Inc.,* 171 B.R. 71 (B.A.P. 9th Cir. 1994) …………………………… 20

*In re Sun Valley Ranches, Inc.,* 38 B.R. 595 (Bankr. D. Idaho 1984) ……………………………… 21

*In re The Lodge at Big Sky, LLC,* 454 B.R. 138 (Bankr. D. Mont. 2011) ………………………… 21

*In re Thena, Inc.*, 190 B.R. 407 (D. Or. 1995) ……………………………………………… 11

*Matter of Lake Tahoe Land Co., Inc.,* 5 B.R. 34 (Bankr. D. Nev. 1980) …………………………… 23

*Matter of Rexene Prod. Co.*, 141 B.R. 574 (Bankr. D. Del. 1992) ………………………………… 24

*Nobelman v. Am. Savings Bank,* 508 U.S. 324 (1993) …………………………………………… 10

*People's Capital & Leasing Corp. v. Big3D, Inc. (In re Big3D, Inc.),*

    438 B.R. 214 (B.A.P. 9th Cir. 2010) ……………………………………………………… 21

*Red Coral Corporation v. IPI*, No. 1:20-cv-00016

    (D. N. Mar. I. Mar. 31, 2022), ECF No. 17 ……… ……………………………………... 12

*Qmect, Inc. v. Burlingame Capital Partners II, L.P.,* 373 B.R. 682 (N.D. Cal. 2007) …………… 21

*SI Restructuring, Inc. v. Faulkner (In re SI Restructuring, Inc.),*

    532 F.3d 355 (5th Cir. 2008) …………………………………………………… 16

*Stewart v. Gurley,* 745 F.2d 1194 (9th Cir. 1984) …………………………………………… 18

*United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, LTD.,*

    484 U.S. 365 (1988) ……………………………………………………………… 19, 20

**Statutes**

7 CMC §4203 ……………………………………………………………… 10, 12

7 CMC §4204 ……………………………………………………………... 10, 11, 12

7 CMC §4210 ……………………………………………………………... 11

11 U.S.C. §361 ……………………………………………………………… 2, 9, 20, 25

11 U.S.C. §362 ……………………………………………………………….. passim

11 U.S.C. §503 …………………………………………………………………….. 23

11 U.S.C. §507 …………………………………………………………………….. 23

11 U.S.C. §510 …………………………………………………………………. 14, 16

11 U.S.C. §541 ……………………………………………………………….. passim

**Other authorities**

3 Collier on Bankr. §36103 …….…………………………………………………… 21

**PRELIMINARY STATEMENT**

Joshua Gray ("Gray") and U.S.A. Fanter ("Fanter") (together, "Movants") are judgment creditors of the debtor and debtor in possession in the above-captioned Chapter 11 case, Imperial Pacific International (CNMI), LLC (the "Debtor" or "IPI"). Prior to the Debtor's bankruptcy petition, Movants acted expeditiously to obtain writs of execution, levy upon those writs, and begin liquidating the property subject to those writs (the "Personal Property")—and they should be allowed to proceed. The automatic stay has been devastating to Clear Management, Ltd. ("Clear"), who spent $40,550 preparing for a vehicle auction, whose staff member has now left because no work can be done, and who is fielding emails from bidders asking that their money be returned. Movants will suffer as the Personal Property depreciates and may be damaged or stolen if the stay is not lifted. By contrast, the Debtor has no ownership interest in the Personal Property and it is not needed for a reorganization. Therefore, Movants request that this Court permit the liquidation to proceed.

Specifically, Movants respectfully submit this motion for entry of an Order pursuant to §§ 362(d)(1) and 541 of Title 11, United States Code (the "Bankruptcy Code"), Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 4001-1: (1) finding that the Personal Property levied upon by Movants is not "property of the estate" under Bankruptcy Code §541 and thus the automatic stay does not apply to the continued liquidation of that property to satisfy Movants' judgments; (2) to the extent the Court holds that the Personal Property is property of the estate, pursuant to Bankruptcy Code §362(d), modifying and lifting the automatic stay to allow Gray and Fanter to exercise their rights and remedies available under the prior Orders of the District Court (defined below) with respect to the Personal Property because (a) there exists "cause" to lift the stay under §362(d)(1), and/or (b) the Debtor does not have an equity in the Personal Property and such property is not necessary to an effective reorganization under §362(d)(2); (3) requiring the

1

Debtor to make "adequate protection" payments to Gray and Fanter for any diminution in value of the Personal Property under Bankruptcy Code §361 caused by the delay in lifting the stay; and (4) modifying and lifting the automatic stay under Bankruptcy Code § 362 to permit the District Court to decide Gray's pending and fully-briefed petition for attorneys' fees. This Motion is supported by the declarations of Aaron Halegua and Tim Shepherd, each dated May 12, 2024, and the exhibits attached thereto, as well as other prior declarations and filings submitted in Gray's and Fanter's cases pending before the District Court.

## JURISDICTION AND VENUE

1.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and 48 U.S.C. § 1822. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

2.   Movants consent to entry of a final judgment by the Court solely in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.   The statutory and legal predicates for the relief requested herein are Bankruptcy Code §§ 361, 362 and 541, Bankruptcy Rule 4001(a), and Local Bankruptcy Rule 4001-1.

## BACKGROUND

5.   On April 19, 2024 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with this Court. (ECF No. 1)

6.   On April 23, 2024, the Debtor filed a series of "First Day Motions" (ECF Nos. 9–15), and asked them to be heard on shortened notice (ECF No. 16), which this Court granted (ECF No. 20). This Court declined to rule on most of the "First Day Motions" because the Debtor provided insufficient financial or other information to support its requests for relief. (ECF No. 32).

7.  As of the date of this Motion, the Debtor has not filed a declaration under Bankruptcy Rule 1007, Schedules of Assets and Liabilities, a Statement of Financial Affairs, or indicated in any pleading the reason for the bankruptcy filing or a viable reorganization plan demonstrating how the Debtor intends to emerge from Chapter 11.

8.  As of the date of this Motion, the Debtor is authorized to manage its property and operate its business as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

**Fanter's Judgment and Levy on the Personal Property**

9.  On November 30, 2022, a judgment was entered against the Debtor in favor of Fanter in the amount of $226,127.05 plus post-judgment interest, in the case titled *U.S.A. Fanter v. IPI*, No. 21-cv-0035 ("*Fanter*") pending in the U.S. District Court for the Northern Mariana Islands (the "District Court"). This judgment (*Fanter*, ECF No. 34) is hereinafter referred to as the "Fanter Judgment."

10. On February 8, 2023, Fanter sought a Writ of Execution against the Debtor's motor vehicles and heavy equipment (*id.*, ECF No. 35 ("Fanter Writ")), which was granted by the Court on June 16, 2023 (*id.*, ECF No. 37). (The specific list of property is identified in *Fanter,* ECF No. 35-4).

11. On July 18, 2023, the U.S. Marshals Service filed a notice with the District Court affirming that the Fanter Writ was executed on the Debtor by serving it on Howyo Chi. (*Id.*, ECF No. 39).

12. On October 19, 2023, the District Court granted Fanter's motion to appoint Clear Management, Ltd. ("Clear") as a limited receiver to liquidate the vehicles and heavy equipment. (*Id.*, ECF No. 49 (the "Fanter Receivership Order")).[1]

---

[1] Movants are advised that Clear is reviewing the applicability of Bankruptcy Code §543(d), and its rights or obligations thereunder, and will advise the Court of its intentions in the near future.

13. On January 22, 2024, Clear filed an inventory of the vehicles and heavy equipment that it intended to sell. (*Id.*, ECF No. 51). The Debtor did not file any objections in that case. These items are part of the "Personal Property" defined above.

### Gray's Judgment and Levy on the Personal Property

14. On May 31, 2023, in the action titled *Gray v. IPI*, No. 19-cv-0008 ("*Gray*"), pending in the District Court, the District Court entered judgment in favor of Gray against the Debtor in the amount of $5,686,182.20, plus pre-judgment interest, post-judgment interest, and attorneys' fees and costs. (*Gray,* ECF No. 226 (the "Gray Judgment")).

15. Since the Debtor has neither posted a bond nor satisfied the Gray Judgment, on July 3, 2023, Gray sought a writ of execution from the District Court as to six enumerated categories of personal property as well as "any other non-exempt personal property" of IPI. (*Id.*, ECF No. 231 (collectively part of the "Personal Property" defined above)). These categories include "IPI's Vehicles" to the extent that any unsold vehicles or funds remained after the Fanter Judgment has been satisfied. (*Id.* at 6). The Debtor did not file a timely opposition to that application.

16. On August 16, 2023, the District Court issued a writ of execution as requested by Gray. (*Id.,* ECF No. 247 (the "Gray Writ")). The Gray Writ instructed that after it has been executed by the U.S. Marshals, IPI would have fourteen days to file any exceptions in writing. (*Id.*). The same day, the Clerk of the District Court issued a Notice about the Gray Writ, which also informed the Debtor of its rights and the procedure for raising any objections. (*Id.,* ECF No. 248).

17. On August 21, 2023, the U.S. Marshals Service filed a notice affirming that the Gray Writ was executed by serving it on Howyo Chi. (*Id.*, ECF No. 251).

18. On September 7, 2023, Gray filed a petition for an Order to Show Cause why Clear should not be appointed to liquidate the Personal Property. (ECF No. 254). Despite objections from the Debtor

and its attempt to argue the Personal Property had been pledged to a closely-related entity, on October 23, 2023, the District Court entered an order appointing Clear as the limited receiver to liquidate the Personal Property subject to the Gray Writ. (*Id.*, ECF No. 275 (the "Gray Receivership Order") (together with the Fanter Receivership Order, the "Receivership Orders")).

19. On November 10, 2023, Clear filed its first inventory of items from the Personal Property that it had located and identified. (*Id.*, ECF No. 282).

20. After the filing of the inventory in the *Gray* case, the Debtor never lodged any objection, either on ECF or with Gray's counsel. (Halegua Decl. ¶8).

21. In July 2023, the Debtor had filed a notice of appeal of the Gray Judgment with the Ninth Circuit Court of Appeals (*Gray v. IPI*, No. 23-15956). After the appeal was fully briefed and scheduled for oral argument, on April 30, 2024, the Debtor filed a motion to stay the appeal.

**Clear's Liquidation of the Personal Property Despite IPI's Interference**

<u>The Liquidation Generally</u>

22. After the issuance of the Receivership Orders, Clear has acted diligently to locate the Personal Property and take the many steps necessary to maximize the value received for those items, including inventorying, advertising, and auctioning the property. (Shepherd Decl. ¶6).

23. By contrast, the Debtor has primarily worked to obstruct the liquidation of the Personal Property. By way of example and not limitation, the Debtor and its agents, including its executive director, Howyo Chi, have: failed to provide adequate security at the casino to prevent the theft of its property; opposed the appointment of Clear on the basis of false accusations; argued that its affiliate, Century Estate, was owed $11 million by the Debtor and had a security interest in the Personal Property; and attempted to destroy a piece of art without notifying Gray or Clear because it was causing "negative feng shui." (*See Gray*, ECF No. 290-2 ("Halegua Contempt Decl.") ¶¶15–18).

24. The Debtor delayed and avoided providing keys and registration for the vehicles and heavy equipment that were part of the Personal Property. In perhaps the most blatant example, the Debtor had not provided Clear with the keys to a Toyota Yaris (license plate number ACS 976) for about six weeks after the Fanter Receivership Order was issued. It was only when attorney Aaron Halegua was physically in Saipan and saw the car being driven by a former employee of the Debtor that the Debtor finally tendered the key to Clear. (Halegua Contempt Decl. ¶19).

The Liquor Inventory

25. As of the Petition Date, Clear has liquidated the Debtor's liquor inventory that was part of the Personal Property. The Debtor obstructed this process in numerous ways. First, the total value received was decreased because of the Debtor's inadequate security measures. Between the time that Clear did an inventory of the liquor and held the auction, two expensive bottles of McCallan whiskey were stolen from the casino—each bottle of which retails online for up to $6,699.99 on some websites. (Halegua Contempt Decl. ¶¶9, 13).

26. During the auction, the largest bid was submitted by Century Estate—the same affiliate of the Debtor that had previously sought to block the receivership. After being informed that it won, Century Estate refused to pay its winning bid of $644,413, and Clear was forced to accept the next highest bid of $250,000 from Leader Capital. (*Gray*, ECF No. 283-1 ¶9; Halegua Contempt Decl. ¶20).

27. After the auction was completed, a contract of sale executed with Leader Capital, and the contract approved by the Court, 17 bottles of Moutai liquor were stolen from the casino that the Debtor had been ordered to secure. (*Id.* ¶11). The theft of the liquor has given rise to a dispute with the purchaser, Lender Capital, who claims the value of the stolen bottles is $100,000. (*Id.* ¶14).

6

The Vehicles and Heavy Equipment

28. As of the Petition Date, Clear is only in possession of both the keys and titles for approximately 39 vehicles. On April 11, 2024, Clear conducted and concluded an online auction of 11 of those vehicles, including two Rolls-Royce cars and a Cadillac Escalade. The 11 winning bids totaled $429,500. Prior to the Petition Date, Clear had executed a memorandum of sale for 7 of those vehicles and collected $233,750, which remains in the trust account of Clear's attorney. (Shepherd Decl. ¶15)

29. Howyo Chi bid on three vehicles, including $159,000 on the Rolls Royce, and winning bids of $35,500 for a 2017 Cadillac Escalade and $20,250 for 2015 Lexus RX. Mr. Chi did not follow through on any of his winning bids. Instead, he emailed Clear to say that his attorney advised him that if he paid the money, it could be unavailable for "years" if the Debtor filed for bankruptcy protection and that the vehicles would "depreciate in value" over time. (*Id*. ¶17). After being threatened with a lawsuit for obstructing the auction, on May 6, 2024, Mr. Chi then emailed Clear stating that he wanted to tender payment on the vehicles. (*Id*. ¶¶18–19).

30. Clear has already expended significant time and $40,550 in costs in working towards liquidating the vehicles. (*Id.* ¶¶8, 14). In addition to advertising online and in the media, Clear's principals personally solicited high net worth individuals to participate in the auction to obtain the highest and best price for items like the Rolls Royce and the Escalade. (*Id.* ¶14) Clear also has two local staff in Saipan who worked to locate the cars, collect the keys, clean and photograph the cars, and do other necessary tasks. (*Id.* ¶¶8, 14, 29–30).

31. The Debtor's bankruptcy filing has significantly disrupted the auction process. Winning bidders who executed contracts and tendered payment are not able to get the property they purchased, and several have asked for their money to be returned. (*Id.* ¶20). For those winning bidders who have not yet paid, Clear has refrained from seeking payment, but expects that the bidders will not complete

the transaction unless there is certainty of no further obstructions. (*Id.* ¶21). If the pending transactions are not concluded soon, it may be necessary for Clear to redo the auction, incurring more expenses.

32. Additionally, the longer that the vehicles remain unsold—and continue to grow older—the more their value depreciates. (*Id.* ¶¶22–23).

<u>The Art and Other Personal Property</u>

33. Clear has already expended significant resources trying to sell the artwork, food and beverage equipment, furniture in the casino and villas, and the rest of the Personal Property. Clear was able to secure a potential buyer in the Philippines, HRM, who has tendered a letter of intent to purchase substantially all the remaining Personal Property, except the art, and to come to Saipan to box and ship it to Philippines. The process is stalled due to the Debtor's bankruptcy filing, and Clear fears that further delay will jeopardize the sale. (*Id.* ¶24).

34. With respect to the art, Clear already reached out to many prospective purchasers for the crystal dragons and agents in different countries who can help find buyers. (*Id.* ¶25).

**Gray's Petition for Attorneys' Fees**

35. On July 19, 2023, Gray submitted to the District Court a petition for attorneys' fees and costs in connection with the Gray Judgment. (*Gray*, ECF No. 239). The Debtor filed an opposition (*id.*, ECF No. 240), and on August 17, 2023, Gray filed a reply in support of his petition (*id.*, ECF No. 149). The District Court issued an Order to Show Cause for Gray to explain why the petition for attorneys' fees was filed more than 30 days after the issuance of the Gray Judgment (*id.*, ECF No. 250), but after the parties responded, the District Court discharged the Order to Show Cause and took the fee petition under advisement on September 14, 2023 (*id.*, ECF No. 258).

**RELIEF REQUESTED**

36. Movants respectfully seek entry of an Order finding that the Personal Property is not property of the estate under Bankruptcy Code §541 and, therefore, the automatic stay does not apply with respect to the continued liquidation of the Personal Property to satisfy Movants' judgments.

37. To the extent that this Court finds that the Personal Property is property of the estate, a legal conclusion Movants do not concede in making this alternative argument, Movants request entry of an Order pursuant to Bankruptcy Code §362(d) modifying and lifting the automatic stay to allow Movants to continue liquidating the Personal Property pursuant to the Receivership Orders and applying the proceeds towards their judgments because (a) "cause" exists sufficient to lift the stay under §362(d)(1), and/or (b) the Debtor does not have an equity in the Personal Property and such property is not necessary to an effective reorganization under §362(d)(2).

38. Movants request entry of an Order under Bankruptcy Code §361 requiring the Debtor to immediately commence making "adequate protection" payments to Movants for any diminution in value of the Personal Property until the stay is lifted.

39. Lastly, Gray seeks entry of an Order modifying and lifting the automatic stay under Bankruptcy Code §362(d)(1) to permit the District Court to decide Gray's pending and fully-briefed petition for attorneys' fees in order to liquidate Gray's claim.

**BASIS FOR RELIEF REQUESTED**

**A. <u>The Personal Property levied upon by Movants is no longer "property of the estate" under Bankruptcy Code §541 and, therefore, is not subject to the automatic stay under Bankruptcy Code §362.</u>**

40. Bankruptcy Code §362(a)(2) operates as a stay against "the enforcement, against the debtor or any *property of the estate*, of a judgment obtained before the commencement of the case under this title." 11 U.S.C. §362(a)(2) (emphasis added). Bankruptcy Code §362(a)(3) operates as a stay against

9

"any act to obtain possession of *property of the estate* or of property from the estate or to exercise control over *property of the estate*." 11 U.S.C. §362(a)(3) (emphasis added).

41. Bankruptcy Code §541(a)(1) defines property of the estate to include: "[A]ll legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). The Bankruptcy Code does not further define these terms.

42. "In the absence of a controlling federal rule, [a court should] generally assume that Congress has 'left the determination of property rights in the assets of a bankruptcy's estate to state law,' since such '[p]roperty interests are created and defined by state law.'" *Nobelman v. Am. Savings Bank,* 508 U.S. 324, 329 (1993) (quoting *Butner v. United States,* 440 U.S. 48, 54-55 (1979)).

43. While the terminology may differ somewhat, the Commonwealth of the Northern Mariana Islands ("CNMI") has similar provisions to many other U.S. states for levying upon or seizing property to satisfy a judgment. First, under 7 CMC §4203, a party enforcing a civil judgment for the payment of money can request the court to issue a writ of execution against the personal property of the judgment debtor. Then, under 7 CMC § 4204, "the Director of Public Safety, police officer or other person duly authorized receiving a writ of execution issued by any court, shall levy or cause the Director of Public Safety, or police officer to levy execution . . .". 7 CMC § 4204.

44. The plain language of the relevant CNMI law makes clear that once a party levies upon the personal property subject to a writ of execution, that property is considered to be in the "possession" of the judgment creditor. 7 CMC §4204(a). Specifically, §4204(a) states: "If the person against whom the execution is issued does not pay the execution in full, including interest and costs and expenses thereof, the person making the levy *shall take into his or her possession* property of the person against whom the execution is issued . . . sufficient in his or her opinion to cover the amount of the execution." 7 CMC §4204(a) (emphasis added). *See also Commonwealth v. Lot No. 218-5 R/W*, Nos. 2013-SCC-

0006-CIV & 2013-SCC-0025-CIV, 2016 WL 7468001 (N.M.I. Super. Ct. Dec. 28, 2016) ("A writ of execution is a court order directing an authorized person, such as a police officer, to demand payment of a judgment *or seize the judgment debtor's property* to satisfy the judgment") (citing 7 CMC §4204(a)) (emphasis added).

45. After the writ is executed upon, CNMI law provides the debtor with 14 days to raise any objections. 7 CMC §4210.

46. When there is no controlling legal precedent, CNMI courts also look to legal authority from other states. *See In re Junior Larry Hillbroom Litigation,* No. 20-cv-0009, 2020 WL 6572669 *3 (D. N. Mar. I. Oct. 26, 2020). In the real property context, the Ninth Circuit, interpreting California law, held that the levying or execution of a writ of possession against a debtor/tenant extinguishes all other legal and equitable interests in the real property, even where the debtor/tenant retained actual possession of the property. *In re Perl*, 811 F.3d 1120, 1127–28 (9th Cir. 2016). Similarly, under California law, where a court had issued a surrender order pertaining to property leased by the debtor, that property was no longer considered to be property of the estate. *In re LPM Corp.,* 253 B.R. 914, 917 (Bankr. S.D. Cal. 2000).

47. The district court in *Freeman* found that ownership rights transferred immediately after a bank received an Order to Withhold because the California statute states that the bank is "require[d]" to and "shall" transmit the funds, implying these duties are "mandatory and binding" upon receipt of the Order. *Freeman v. Cal. Franchise Tax Bd.*, No. 18-CV-04501, 2019 WL 3412938, at *4 (N.D. Cal. July 29, 2019). Similarly, the plain language of 7 CMC 4204(a) states that the person making the levy "shall" take the property into his possession. *Id.*, at *4.  *See also In re Thena, Inc.*, 190 B.R. 407 (D. Or. 1995) (holding that Chapter 11 debtor had no equitable interest in property seized prepetition under criminal forfeiture statute and therefore was not part of bankruptcy estate).

11

48. The fact that property is transferred out of the judgment debtor's estate upon the levy of a writ of execution under 7 CMC §4204(a) is even more readily apparent when the personal property in question is cash or a bank account. When the U.S. Marshal executes a writ of execution against a bank with the judgment debtor's funds, a check is immediately drafted and the funds are transferred out of the judgment debtor's account. (*See* "Order Granting Release of Funds" *Red Coral Corporation v. IPI*, No. 1:20-cv-00016 (D. N. Mar. I. March 31, 2022), ECF No. 17)).

49. As of the Petition Date, under applicable CNMI law, the Debtor does not have any legal or equitable interest in the Personal Property and, therefore, it is not "property of the estate" under Bankruptcy Code §541 or subject to the automatic stay under Bankruptcy Code §362. Movants were granted writs of execution under 7 CMC §4203. The applications for those writs, as per 7 CMC §4204, included an accounting of the money necessary to satisfy the judgment and a statement that the judgment had not been satisfied. Those writs for the Personal Property were then executed or levied upon by the U.S. Marshals under 7 CMC §4204, thus divesting the Debtor of its interest in such property. *See Freeman*, 2019 WL 3412938, at *3 (ownership of funds in debtor's bank account transferred upon tax authority serving its order to withhold on debtor's bank, and thus funds "never became part of the bankruptcy estate […], and the automatic stay did not apply to them").

50. Furthermore, the Debtor and its principals have also acted in a manner consistent with the fact that the Debtor no longer owned the Personal Property. For instance, despite the District Court ordering the Debtor to secure the Personal Property, after the McCallan liquor was stolen, the Debtor told Clear that it should be responsible for securing the liquor. (*Gray*, ECF No. 292 at 3). When the Moutai was stolen, the Debtor did not call the police; rather, Clear had to call. (*Id.*, ECF No. 290-3 ¶22). As for the vehicles, despite the bankruptcy petition and automatic stay, the Debtor is still requesting that Clear provide VINs for the vehicles (*id.*, ECF No. 309 at 5) and Howyo Chi has stated

that he wants to tender payment for his winning bids (Shepherd Decl. ¶19, Ex. B). Therefore, the Debtor should be estopped from now arguing that it owns the Personal Property.

**B. If the Personal Property is not outside the Debtor's estate, then the automatic stay should be lifted so that the liquidation of these items may continue.**

51. If this Court holds that the Personal Property remains property of the estate, Movants request entry of an Order modifying and lifting the automatic stay to allow Movants to exercise their rights under the Receivership Orders to liquidate the Personal Property and distribute the proceeds.

52. Bankruptcy Code §362(d) provides in relevant part that the Court shall, after notice and a hearing, grant relief from the stay either: "(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;" or "(2) … if – (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d). Here, each of these two conditions is satisfied.

**1. There exists "cause" for the Court to lift the automatic stay to permit the liquidation to proceed.**

53. In the Ninth Circuit, the existence of "cause" is determined on a "case-by-case basis," but courts are typically guided by the twelve non-exclusive "*Curtis* factors." *See In re Roger*, 539 B.R. 837, 844–45 (C.D. Cal. 2015) (directing bankruptcy court to lift automatic stay in order to liquidate debtor's liabilities).[2] *See In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) ("[T]he *Curtis*

---

[2] The factors are as follows:

    (1)    Whether the relief will result in a partial or complete resolution of the issues.

    (2)    The lack of any connection with or interference with the bankruptcy case.

    (3)    Whether the foreign proceeding involves the debtor as a fiduciary.

    (4)    Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.

    (5)    Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.

    (6)    Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.

factors are appropriate, nonexclusive factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum"). Not all of the *Curtis* factors are relevant in every case, and a court is not required to apply equal weight to each factor. *In re Roger*, 539 B.R. at 845. As such, "[t]he most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate." *Id.* at 846 (quoting *In re Curtis*, 40 B.R. at 806) (alteration in original). *See also In re Dennis Meyer Danzik*, 549 B.R. 804 (Bankr. D. Wyo. 2016) (finding cause existed to grant stay relief based on *Curtis* factors to liquidate claims against debtor's estate in separate action). In terms of the burden of proof, once the party requesting relief from the stay establishes a prima facie case, the burden shifts to the debtor to show that relief from the stay is unwarranted. *In re Am. Spectrum Realty, Inc.*, 540 B.R. 730, 737 (Bankr. C.D. Cal. 2015).

54. There exists "cause" to grant Movants relief from the stay in this case. Broadly speaking, lifting the stay to permit the liquidation of the Personal Property presents no burden to the Debtor, but it relieves a significant hardship on Movants (who seek to satisfy their judgments), on Clear (who has already expended significant resources on the liquidation), and on the successful bidders who have paid for the property. Movants also consider each of the individual *Curtis* factors herein.

---

(7)   Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.

(8)   Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).

(9)   Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).

(10)  The interest of judicial economy and the expeditious and economical determination of litigation for the parties.

(11)  Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.

(12)  The impact of the stay on the parties and the "balance of hurt."

*In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984).

55. As to the first *Curtis* factor, granting the requested relief from the stay will eliminate significant claims against the Debtor's estate. If the first vehicle auction alone is completed, the proceeds should be sufficient to fully satisfy the Fanter Judgment. If all the Personal Property is liquidated, the Gray Judgment will either be fully satisfied or at least significantly reduced, depending on the bids received. Alternatively, if the stay is not lifted, the funds already bid in the first vehicle auction may be lost and the Personal Property will not only continue to depreciate in value, but also risk being damaged or stolen—and thus losing all value to either the estate or its creditors. (*See* Shepherd Decl. ¶¶20–23).

56. As to the second *Curtis* factor, lifting the automatic stay for this limited purpose will not interfere with the Debtor's Chapter 11 case. The Debtor has never raised any meritorious objection to the liquidation of the Personal Property prior to the Petition Date. The Debtor's primary involvement thus far has been to obstruct the process, and the Debtor's assistance is not needed to complete this process. (*See* Halegua Decl. ¶10; Shepherd Decl. ¶7). Moreover, the liquidation in no way impacts the success of this Chapter 11 case. The Debtor has not presented any plan or strategy that involves using these already-aged vehicles or any of the other Personal Property. Indeed, the Debtor's proposed budget for the $7 million in debtor-in-possession ("DIP") financing that it seeks would pay almost all of those funds towards fees owed to the Commonwealth Casino Commission ("CCC")—not to start any operations that require vehicles, art, or other property. (*See* ECF No. 15, Ex. B). (The third, fifth, ninth and eleventh *Curtis* factors do not apply here.)

57. As to the fourth *Curtis* factor, the District Court issued the relevant judgments, writs of execution, and Receivership Orders, and has already invested significant time in overseeing the liquidation. The relevant filings for the liquidation are on the District Court dockets and relevant parties have filed appearances in those cases. Indeed, in *Gray*, the District Court recently issued an Order to Show Cause regarding the Debtor's obligation to provide security for the Personal Property.

While Movants recognize that the same individual is currently presiding over the bankruptcy and adversarial proceedings, the jurisdiction of the two courts is independent and should remain as such. Moreover, if the liquidation proceedings become part of the bankruptcy case, and a new judge were to take over the bankruptcy, then all of the institutional knowledge of the District Court and those liquidation proceedings would be lost. Similarly, if the bankruptcy case is dismissed, the liquidation proceedings would need to be sent back to the District Court. Hence, this factor weights in favor of permitting the liquidation to continue before the District Court.

58. As to the sixth *Curtis* factor, the liquidation primarily involves Clear and potential buyers of the Personal Property, and the Debtor is only involved as a mere conduit of the Personal Property that it has been ordered to secure—a function at which it is also failing. The Debtor has no equity in the Personal Property, and has demonstrated no plan to use it for the benefit of the estate.

59. As to the seventh *Curtis* factor, since the proceeds of the liquidation will go to satisfy the Movants' judgments, it is of little concern to the other creditors; and the small number of parties who are concerned have filed appearances in the District Court matters. Indeed, it would be unnecessarily cumbersome to administer the liquidation through the bankruptcy proceeding, which includes a vast and ever-growing number of parties. Further, administering the liquidation through the bankruptcy proceeding is likely to drive down prices from potential bidders, who will expect significant discounts in a bankruptcy liquidation sale. (Shepherd Decl. ¶26).

60. As to the eighth *Curtis* factor, neither Gray's nor Fanter's judgment claim is the subject of an equitable subordination proceeding under Bankruptcy Code §510(c), nor will they become the subject of such a proceeding. Neither Gray nor Fanter is an insider of the Debtor, nor has there ever been an accusation that their conduct might warrant a remedy of equitable subordination of their claims against the Debtor. *See SI Restructuring, Inc. v. Faulkner (In re SI Restructuring, Inc.)*, 532 F.3d 355, 364

16

(5th Cir. 2008) (holding equitable subordination unwarranted absent finding that creditor's transactions with debtor caused harm to the debtor or its creditors).

61. As to the tenth *Curtis* factor, the interest of judicial economy and the expeditious and economical determination of litigation favor finding cause to lift the stay. The liquidation of some of the Personal Property, such as the liquor, has already been completed and the District Court has issued an Order to Show Cause relating to the final pending issues. As for the vehicles, Clear has already completed an auction as well as collected funds from and executed contracts with several winning bidders. The bankruptcy filing has *already* derailed this process, enraged bidders, and caused many to lose faith in this judicially-supervised process. (Shepherd Decl. ¶¶21, 24). Further, restarting this process in the Chapter 11 case would be a waste of judicial resources. *See In re Am. Spectrum Realty*, 540 B.R. at 742 (trial should be conducted by state court that had been handling the case for two years). In terms of economic considerations, failure to lift the stay means that the Personal Property will depreciate and likely be damaged or stolen. While the Debtor would be obligated to compensate Movants for any such loss, there is no evidence that it will be able to do so.

62. As to the twelfth *Curtis* factor, as set forth herein, the "balance of hurt" decisively favors lifting the stay. While IPI suffers no prejudice from lifting the stay, all other parties experience real hardship. Movants are forced to sit and wait to use the Personal Property to satisfy their judgments while its value decreases each day. Successful bidders have their money tied up but cannot receive the vehicles. Clear's reputation and credibility has already been tarnished, and will suffer further if it cannot deliver the goods that it has auctioned and for which it has collected funds. (Shepherd Decl. ¶31). Moreover, Clear has incurred $40,550 in costs to auction the vehicles, lost one employee due to the stay, and risks losing its primary employee. (*Id.* ¶8). With the stay in place, Clear is in the unadmirable position of deciding whether to continue retaining this employee to sit idle on Saipan in case the auctions resume,

or to let him go and risk being unable to quickly restart if the auctions resume. (*Id.* ¶30). By contrast, the Debtor has shown no evidence that the Personal Property is necessary for its reorganization.

63. In sum, "cause" clearly exists to lift the automatic stay under Bankruptcy Code §362(d)(1) to allow the liquidation of the Personal Property by Clear to proceed under the Receivership Orders.

### 2. The automatic stay should also be lifted under Bankruptcy Code §362(d)(2) because the Debtor has no equity in the Personal Property and it is not necessary for an effective reorganization.

64. "The Ninth Circuit Court of Appeals has held that the proper definition of 'equity' for purposes of §362(d)(2)(A) is the difference between the value of the property and all the encumbrances upon it." *In re NMP Concord II, LLC,* No. 10-43080, 2010 WL 3488249 *2 (Bankr. N.D. Cal. Sept. 1, 2010) (quoting *Stewart v. Gurley,* 745 F.2d 1194, 1196 (9th Cir. 1984)). *See also In re Indian Palms Assocs., Ltd.,* 61 F.3d 197 (3d Cir. 1995) (holding all liens are considered in determining whether the debtor has equity in property).

65. The Debtor likely has no equity in the Personal Property. If the Court does not find the Personal Property is already outside of the Debtor's estate, then Movants *at a minimum* have a perfected secured lien on such property. As of the Petition Date, since Fanter received $26,609.31 from the distribution of gaming equipment proceeds, the Fanter Judgment is currently valued at approximately $199,517.74. (*See Fanter v. IPI*, 20-cv-0003, ECF No. 419 at 5). The Gray Judgment, after receiving a distribution from the gaming equipment proceeds ($326,843.18) and liquor proceeds ($205,259.12), is valued at $5,154,079.90, plus an additional amount of attorneys' fees and costs. Thus, these two judgments are valued at over $5.3 million, plus any fees to be awarded Gray. Since Clear will receive a commission out of any auction proceeds, the Personal Property will actually need to be sold for at least 15-18% more than this amount in order to pay off these judgments—thus, more than $6.1 million.

66. As for the value of the Personal Property, starting with the vehicles, the Court previously endorsed an estimate that the vehicles would likely auction for no more than $1.05 million. (*Fanter*, ECF No. 37 at 4). The first auction of 11 vehicles, which included many of the most expensive ones, is generally consistent with that. Beyond the vehicles, there is an offer to purchase all the remaining Personal Property, except the art, for approximately $1 million. (Shepherd Decl. ¶24). Thus, in order to pay off the existing Gray judgment, the aforementioned numbers would need to be achieved and the crystal dragons would need to sell for more than $4 million, which is not very likely given the enormous cost and challenges of deconstructing, packing, shipping, reassembling, repairing, and installing them. (*Id.* ¶25). Yet, even all of this would not cover Gray's pending fee petition and fees incurred in enforcing his judgement. Moreover, even if Gray were satisfied, any excess proceeds would first go towards Kan Pacific Saipan Ltd.'s writ of execution for $697,801.30 before the Debtor received any funds. (*See Kan Pacific Saipan Ltd. v. IPI*, No. 21-cv-0034, ECF Nos. 64, 66).

67. The Personal Property is also not necessary to the Debtor's effective reorganization.

68. "The United States Supreme Court has defined 'necessary' as used by §362(d)(2) as requiring the debtor to demonstrate, 'a reasonable possibility of a successful reorganization within a reasonable time.'" *In re NMP Concord II*, 2010 WL 3488249 at *3 (quoting *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, LTD.,* 484 U.S. 365, 376 (1988)). "'While it is true that a relief from stay hearing should not be converted into a confirmation hearing, the 'effective reorganization' requirement enunciated by the Supreme Court requires a showing by a debtor that a proposed or contemplated plan is not patently unconfirmable and has a realistic chance of being confirmed. Courts usually require the debtor to do more than manifest unsubstantiated hopes for a successful reorganization.'" *In re NMP Concord II*, 2010 WL 3488249 at *3 (quoting *In re Sun Valley Newspapers, Inc.,* 171 B.R. 71, 75 (B.A.P. 9th Cir. 1994)).

69. The Debtor has not yet put forward a cohesive, realistic plan for effective reorganization, let alone made a showing that any such reorganization plan has any legitimate chance of success. Moreover, based on the information that the Debtor has provided since the Petition Date (or even prior to then), there has been no indication that the Personal Property is somehow necessary to the Debtor's effective reorganization. As presented, the Debtor's entire reorganization rests on its ability to cure its obligations to the CCC to reinstate its gaming license—not obtain possession of and utilize the vehicles, artwork, or other items. *See United Savings Ass'n of Texas,* 484 U.S. at 375–77. The budget proposed by the Debtor uses the DIP-financing to pay security guard wages, rent, professional fees, and then $6.15 million to the CCC. (ECF No. 15, Ex. B).

70. In sum, the stay should be lifted under Bankruptcy Code §362(d)(2), because the Debtor has no equity in the Personal Property and the property is not necessary to an effective reorganization.

**C.** **The Debtor should be required to make adequate protection payments to Movants for any diminution in value of the Personal Property caused by the delay in lifting the automatic stay.**

71. The Debtor should be required to make adequate protections payments to Movants for any diminution in value to the Personal Property caused by the delay in lifting the automatic stay.

72. Bankruptcy Code §361 provides in relevant part: "When adequate protection is required under section 362 . . . of this title of an interest of an entity in property, such adequate protection may be provided by – (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title . . . results in a decrease in the value of such entity's interest in such property." 11 U.S.C. §361.

73. When imposition of the automatic stay causes diminution in the value of property in which a creditor has a secured interest and the debtor has no equity cushion, the bankruptcy court should order adequate protection payments to compensate the creditor for that loss. *See Qmect, Inc. v. Burlingame*

20

*Capital Partners II, L.P.,* 373 B.R. 682, 690 (N.D. Cal. 2007) ("'Adequate protection payments are intended to compensate the creditor for a decline in the value of the collateral'") (quoting 3 Collier on Bankr. §36103 [2][a])). *See also In re Sun Valley Ranches, Inc.,* 38 B.R. 595, 597–98 (Bankr. D. Idaho 1984) (creditor "entitled to adequate protection against any depreciation or diminution" in value of collateral to preserve status quo as of date of filing) (citations omitted).

74. The bankruptcy court has "broad discretion" to set the beginning date, amount, and frequency of the adequate protection payments. *People's Capital & Leasing Corp. v. Big3D, Inc. (In re Big3D, Inc.),* 438 B.R. 214, 218–22 (B.A.P. 9th Cir. 2010) (discussing order requiring $3500 monthly payment for equipment collateral). There is no "rigid formula;" the decision is based on the circumstances of the case. *Id.* at 229 (quoting *In re Deico*, 139 B.R. 945, 947 (B.A.P. 9th Cir. 1992)).

75. Under certain circumstances, adequate protection need not be paid at the conclusion of the bankruptcy, but rather immediate or intermittent payments of adequate protection are warranted. *See, e.g., In re The Lodge at Big Sky, LLC,* 454 B.R. 138, 144–45 (Bankr. D. Mont. 2011) (granting secured creditor's request for immediate payment where debtor had cash available in the bank).

76. If the bankruptcy court determines that the debtor is unable to provide adequate protection, the creditor should be granted relief from the stay. *See* 11. U.S.C. §362(g)(2) (debtor's burden to demonstrate providing adequate protection); *In re Monroe Park,* 17 B.R. 934, 937–42 (D.C. Del. 1982) (analyzing depreciation in value of collateral based on valuations by debtor and bank, considering debtor's offer of monthly adequate protection payments, and holding that offer would not protect bank's interest and thus bank was entitled to relief from stay); *In re Daws,* 13 B.R. 101, 104–05 (Bankr. D. Haw. 1981) (granting bank relief from stay to continue foreclosure action on vehicles because debtor unable to make adequate protection payments to compensate for declining value of asset).

77. Here, adequate protection payments by the Debtor are required from the Petition Date until the stay is lifted because the value of the Personal Property is declining, as the District Court has previously noted. (*See* Gray Writ at 4 ("Here, the Court acknowledges Gray's asserted urgency of the writ because as time progresses, the personal property that Gray seeks a writ over continues to depreciate in value.")). (*See also* Shepherd Decl. ¶17, Ex. A (email from Howyo Chi stating that vehicles will depreciate)). Further, the risk of damage, loss, or theft increases with each passing day— and has already led to a significant loss in value. But for the Debtor's bankruptcy petition, Movants would be entitled to liquidate the Personal Property under the Receivership Orders.

78. Accordingly, if the stay is not lifted, the Court should issue an Order requiring the Debtor to make monthly cash payments to Movants for adequate protection: (1) payment for the diminution in value of the 11 auctioned vehicles starting from the Petition Date (when the value was $400,000) until the stay is lifted, and (2) payment for the diminution in value from the Petition Date until the stay is lifted of the other vehicles and other Personal Property. For the first category, at the Motion hearing, the Court should order the Debtor to make monthly payments of $5,000 with the first payment (compensating from the Petition Date, April 19, 2024) to be made immediately. (*See Id.*. ¶22).[3] For the latter category, an evidentiary hearing should be scheduled to determine the proper size of the adequate protection payments. The Order should also specify that these adequate protection payments shall be treated as superpriority administrative claims under Bankruptcy Code §§ 503(b) and 507(b).[4]

---

[3] Tim Shepherd's calculation uses the average depreciation value referenced on the Kelley Blue Book website, of which district courts in the Ninth Circuit have taken judicial notice. (*See Fanter v. IPI*, No. 21-cv-0035, ECF No. 37, June 16, 2023, at 4 n.3).

[4] Movants emphasize, however, that where the debtor has no "equity cushion" in the property and the debtor is unable to make adequate protection payments, the stay should be lifted. *See, e.g., Matter of Lake Tahoe Land Co., Inc.,* 5 B.R. 34, 36–37 (Bankr. D. Nev. 1980) (lifting stay because debtor's equity cushion too "thin"). Here, as discussed above, the Debtor has no equity in the Personal Property.

**D.** **This Court should grant relief from the stay for the District Court to decide Gray's pending attorneys' fees petition.**

79. This Court should find that "cause" exists to lift the automatic stay under Bankruptcy Code §362(d)(1) to allow Gray to proceed before the District Court to liquidate his claim for attorney's fees in connection with the Gray Judgment. *In re Curtis*, 40 B.R. at 799–800. (Only the relevant *Curtis* factors are addressed herein).

80. With respect to the first *Curtis* factor, the relief requested (liquidation of Gray's attorneys' fees petition) is the last major component of determining the amount Gray is owed by the Debtor under the Gray Judgment, leaving only post-judgment interest. Further, the Debtor's liability for attorneys' fees was already determined by the District Court and, therefore, the proceedings will be entirely technical. Accordingly, this factor weighs in favor of finding cause to lift the stay.

81. With respect to the second *Curtis* factor, there is no connection with or interference with the Debtor's bankruptcy case for the District Court to make a determination on Gray's fee petition. Neither the Debtor nor its professionals will need to expend any time or resources on this issue since it has already been fully briefed for the District Court.

82. With respect to the seventh *Curtis* factor, there is no prejudice to the Debtor, its creditors, or this bankruptcy case by granting this relief, particularly as Gray is not seeking payment of his attorneys' fees at this stage but only liquidation of the claim. *See Matter of Rexene Prod. Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992) (finding liquidation of class action lawsuit would not prejudice debtor because discovery already complete and trial preparation would not be burdensome).

---

There is also no reason to believe that the Debtor can pay whatever adequate protection is ordered by this Court. Therefore, the more appropriate course is to lift the stay. 11 U.S.C. §362(d)(1).

83. With respect to the tenth *Curtis* factor, judicial economy weighs in favor of the District Court completing its oversight and determination of the attorney's fees which stem from the Gray Judgment, which was entered by that same court. It is certainly economical for the court that heard and determined the underlying matter to determine the appropriate amount of legal fees that should be awarded. The only alternative is for the Debtor (or Gray) to remove the District Court action to this Court, which would risk duplicative litigation and waste valuable judicial resources. *See id.* at 577 (duplicative litigation is burdensome to both creditor and debtor).

84. Lastly, with respect to the eleventh *Curtis* factor, there is no harm or prejudice to the Debtor, or any other party, by lifting the stay to permit the District Court to decide the fully-briefed fee petition. Gray's fee claim will eventually need to be reduced to a number, and it is most efficient for the District Court that issued the underlying judgment to issue that decision given its familiarity with the facts and circumstances. As all the briefs have been submitted, no party will be required to incur any expense or expend any time in the event that the stay is lifted to liquidate the claim. Therefore, this Court should issue an Order lifting the stay and permitting the proper award of fees and costs to be decided by the District Court. In fact, "numerous courts have permitted the stay to be lifted when the movant is simply seeking to establish the fact and amount of the debtor's liability . . . .". *See In re Peterson*, 116 B.R. 247, 250–51 (D. Colo. 1990) (collecting cases).

## CONCLUSION

**WHEREFORE**, Movants respectfully request entry of an Order: (i) finding that the Personal Property is not "property of the estate" under Bankruptcy Code §541 and, therefore, the automatic stay does not apply with respect to the continued liquidation of the Personal Property to satisfy Movant's judgments; (ii) or to the extent the Court is not inclined to do so, modifying and lifting the automatic stay to allow the continued liquidation of the Personal Property because (a) "cause" exists under

Bankruptcy Code §362(d)(1) and the *Curtis* factors, and/or (b) the Debtor lacks equity in the Personal Property and it is not necessary to any possible effective reorganization; (iii) to the extent the stay is not lifted, requiring the Debtor to make adequate protection payments to Movants pursuant to Bankruptcy Code §361 in connection with the Personal Property which continues to diminish in value under the proposal set forth above; (iv) modifying and lifting the automatic stay under Bankruptcy Code §362 to permit the District Court to decide Gray's pending and fully-briefed petition for attorneys' fees; and (iv) for such other and further relief as this Court deems just and proper.

Dated: May 13, 2024

Respectfully submitted,

_____/s/_____
Aaron Halegua
Bruce Berline

Attorneys for Joshua Gray


_____/s/_____
Colin Thompson

Attorney for U.S.A. Fanter