1  CHOI & ITO
   Attorneys at Law
2  CHUCK C. CHOI
   ALLISON A. ITO
3  700 Bishop Street, Suite 1107
   Honolulu, Hawaii 96813
4  Telephone: (808) 533-1877
   Fax: (808) 566-6900
5  Email: cchoi@hibklaw.com; aito@hibklaw.com

6  MCDONALD LAW OFFICE
   CHARLES H. MCDONALD II (F0494)
7  2nd Floor ICC, Room 203
   Gualo Rai, Saipan, MP 96950
8  Telephone: (866) 967-7567
   E-Mail: charles@mcdonald.law
9
10 Attorneys for Debtor and Debtor-in-Possession

11              UNITED STATES DISTRICT COURT
        DISTRICT OF THE NORTHERN MARIANA ISLANDS
12                    BANKRUPTCY DIVISION

13

14 In re                          Case No.  24-00002

15 IMPERIAL PACIFIC               (Chapter 11)
   INTERNATIONAL (CNMI), LLC,
16                                DEBTOR'S OPPOSITION TO MOTION BY
          Debtor and             JUDGMENT CREDITORS JOSHUA GRAY
17        Debtor-in-possession.  AND U.S.A. FANTER FOR ENTRY OF AN
                                 ORDER UNDER 11 U.S.C. §§ 361, 362 AND
18                               541; DECLARATION OF HOWYO CHI;
                                 EXHIBITS "1" – "2"
19

20

21                               Hearing

22                               Date:  May 30, 2024
                                 Time:  8:30 a.m. (ChST)
23                               Judge:  Hon. Ramona V. Manglona

24                               [Relates to ECF 48, 49]

25

26

27

28

1

1

TABLE OF CONTENTS

I.      LIMITED FACTUAL AND PROCEDURAL BACKGROUND ...........................1
II.     APPLICABLE LAW AND LEGAL STANDARD...................................................6
III.    ARGUMENT ...................................................................................................................9
        A.      THE MOTION AND NOTICE OF THE MOTION WERE NOT
        PROPERLY SERVED..........................................................................................9
        B.      THESE PIECEMEAL PROCEEDINGS UNDERSCORE WHY THE
        AUTOMATIC STAY SHOULD STAY IN PLACE.............................................11
        C.      THE PERSONAL PROPERTY IS PROPERTY OF THE ESTATE........13
        D.      THE PROPERTY IS IN THE POSSESSION OF A SECTION 543
        CUSTODIAN. ....................................................................................................16
        E.      CENTURY ESTATE'S SECURED CLAIM MUST BE DETERMINED
                19
        F.      CAUSE UNDER SECTION 362(D)(1) DOES NOT EXIST TO GRANT
        MOVANTS RELIEF FROM THE AUTOMATIC STAY TO PURSUE
        COLLECTION EFFORTS. ................................................................................19
        G.      THE RELIEF FROM THE AUTOMATIC STAY CANNOT BE
        GRANTED UNDER 362(D)(2) BECAUSE THE PERSONAL PROPERTY IS
        NECESSARY FOR AN EFFECTIVE REORGANIZATION. .............................22
        H.      MOVANTS CANNOT BE AWARDED ADEQUATE PROTECTION
        PAYMENTS FOR THE ALLEGED DIMINUTION IN VALUE OF THE
        VEHICLES AND OTHER PERSONAL PROPERTY .........................................23
IV.     CONCLUSION...............................................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Benedor Corp. v. Conejo Enters. (In re Conejo Enters.)*, 96 F.3d 346 (9th Cir. 1996)...... 9

*Bennett v. Hunter*, 76 U.S. (9 Wall.) 326 (1869) ................................................. 17

*Boucher v. Shaw*, 572 F.3d 1087 (9th Cir. 2009) .............................................. 9

*In re 1604 Sunset Plaza, LLC*, No. 2:21-bk-19157-ER, 2022 Bankr. LEXIS 981  (Bankr. C.D. Cal. Apr. 8, 2022) ......................................................................... 27

*In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984) ....................................... 23, 24

*In re First Alliance Mortgage Co.*, 264 B.R. 634 (C.D. Cal. 2001) ................... 9

*In re Ford*, 24 B.R. 616 (Bankr. D.S.C. 1982) ............................................... 17

*In re Malamatos*, Nos. 10-11857-MM13, 10-08483-MM13, 2010 Bankr. LEXIS 3184 (Bankr. S.D. Cal. Sep. 13, 2010) ............................................................ 26

*In re PG&E Corp.*, No. 19-30088-DM, 2020 Bankr. LEXIS 535 (Bankr. N.D. Cal. Feb. 25, 2020) ...................................................................................................... 23

*In re R. Brown & Sons, Inc.*, 498 B.R. 425 (Bankr. D. Vt. 2013) ................... 20

*In re Sun Valley Ranches, Inc.*, 38 B.R. 595 (Bankr. D. Idaho 1984) ............. 28

*In re VidAngel, Inc.*, 593 B.R. 340 (Bankr. D. Utah 2018) ............................ 22

*Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer)*, 405 B.R. 915 (B.A.P. 9th Cir. 2009) ............................................................................................... 22

*Midlantic Nat. Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494 (1986) ............. 8

*Peterson v. Islamic Republic of Iran*, 563 F. Supp. 2d 268 (D.D.C. 2008) ..................... 14

*St. Lawrence Valley Dairy v. Saccheri (In re Saccheri)*, 2012 Bankr. LEXIS 6184 (Bankr. E.D. Cal. Apr. 6, 2012) ....................................................................... 14

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 108 S. Ct. 626 (1988) ...................................................................................................... 26

*United States v. Smithfield Estates, Inc. (In re Smithfield Estates, Inc.)*, 48 B.R. 910 (Bankr. D.R.I. 1985) ....................................................................................... 25

*United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S. Ct. 2309 (1983) ................. 6, 7

**Federal Statutes and Rules**

11 U.S.C. § 1121(c) ...................................................................................... 26

11 U.S.C. § 362(d) ........................................................................................ 10

11 U.S.C. § 541(a)(1) .................................................................................... 15

11 U.S.C. § 543 .............................................................................................. 18

11 U.S.C. § 543(a) ......................................................................................... 18

11 U.S.C. § 543(b)(1) ..................................................................................... 18

11 U.S.C. § 543(b)(2) ..................................................................................... 18

11 U.S.C. §362(a) .......................................................................................... 21

11 U.S.C.S. § 101(11) .................................................................................... 18

11 U.S.C.S. § 543(d) ................................................................................................ 19
LBR 4001-1(a)(1) ................................................................................................... 10
LBR R. 4001-1(d) .................................................................................................. 11
LBR R. 4001-5(c) .................................................................................................. 11
LBR Rule 4001-1(d) .............................................................................................. 10

**DEBTOR'S OPPOSITION TO MOTION BY JUDGMENT CREDITORS JOSHUA GRAY AND U.S.A. FANTER FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 361, 362 AND 541**

IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, debtor and debtor-in-possession herein (the "Debtor" or "IPI"), by and through its undersigned counsel, hereby opposes the *Memorandum of Law In Support Of Motion By Judgment Creditors Joshua Gray And U.S.A. Fanter For Entry Of An Order Under 11 U.S.C. §§ 361, 362 and 541* ("Motion"), filed herein on May 13, 2024, as ECF No. 48 and 49 by Joshua Gray ("Gray") and USA Fanter Corp. Ltd. ("Fanter"; with Gray "Movants") seeking (1) a comfort order determining that automatic stay does not apply to the Movants because the Personal Property is not property of the bankruptcy estate, or alternatively (2) an order for relief from the automatic stay, allegedly for cause.

## I.    LIMITED FACTUAL AND PROCEDURAL BACKGROUND

The Debtor is a limited liability company organized under the laws of the Commonwealth of the Northern Mariana Islands (the "Commonwealth").

On or about August 12, 2014, the Debtor, its parent, Best Sunshine International Ltd., and the Commonwealth Lottery Commission entered into an exclusive casino license (the "Casino License") for the island of Saipan which required, among other things, the payment of $15 million in annual Casino License fees.

The Debtor's casino is primarily situated on property leased from the Department of Public Lands ("DPL") under a long-term lease (the "DPL lease"). The casino opened at a temporary site in 2014, then at this location in 2017. The Debtor made $90 million in Casino License fee payments from 2014 to 2019 to the Commonwealth. The Debtor was current on the DPL Lease as of the Petition Date.

1
2
3
4
5
6
7

Notwithstanding the fact that IPI was obligated to pay $15 million per annum in annual Casino License Fees, on December 4, 2015, the Commonwealth enacted Public Law 19-24 which imposed an annual "Casino Regulatory Fee" on the Debtor of $3 million due on or before October 1, 2015.  The Debtor made $15 million in Casino Regulatory Fee payments from 2015 to 2019 to the Commonwealth Casino Commission ("CCC").

8
9
10
11

Unfortunately, the onset of the COVID-19 Pandemic forced the closure of the Debtor's casino operations in March, 2020, and in April, 2021, the Commonwealth Casino Commission (the "CCC") suspended the Casino License for nonpayment of fees and other alleged monetary defaults.

12
13
14
15
16
17

In April 2019, Gray filed a lawsuit against IPI entitled *Gray v. [IPI]*, No. 1:19-cv-00008 (the "Gray Case") in the United States District Court for the District of Northern Mariana Islands (the "District Court").  In July, 2019, Gray filed a second case in the District Court for alleged violations by IPI of Title VII, entitled *Gray v. [the Debtor]*, No. 1:19-cv-00020 which was consolidated with the Gray Case.

18
19
20
21
22
23
24
25

In August of 2020, the Commonwealth Department of Revenue and Taxation ("DRT") recorded the first of several tax liens against IPI.  See **Exhibit 1**.  These tax liens are liens "in favor of the [Commonwealth] on all property and rights to property belonging to the tax payer for the amount of these taxes and any additional penalties, interest and costs that may accrue." The following chart summarizes the four tax liens:[1]

26
27
28

[1] A Notice of Tax lien was also filed with Clerk of District Court for the Northern Mariana Islands in Case No. 1:20-mc-00030 for a total amount of $7,943,060.39. Approximately $7.7 million of that amount is for business taxes for period 2017 through 2021, which are subject of a prior lien recorded as File Nos. 20-111 and 21-0392.

| Recording Date | Document No. | Type of Tax | Period(s) | Original Lien Amount |
|---|---|---|---|---|
| August 20, 2020 | 20-111 | Business Tax | 2017-19 | $9,416.887.09 |
| October 27, 2020 | 20-1498 | Business Tax; Quarterly Withholding | 2020 | $176,880.70 |
| March 4, 2021 | 21-0392 | Business Tax; Quarterly Withholding | 2020 | $812,048.09 |
| March 17, 2022 | 22-410 | Quarterly Withholding | 2021: Q1 / Q2 | $108,475.77 |

On May 30, 2023, the District Court entered its Decision and Order Granting Default Judgment in the amount of $5,686,182.20 (the "Gray Judgment").[2]  *See* ECF 225, Gray Case.

In 2020 and 2021, Fanter sued IPI in the District Court for a mechanics lien and breach of construction contract.[3]  A mechanics' lien was allowed.  In addition, an Amended Judgment in favor of Fanter against IPI of $2,089,345.28 was entered in favor of Fanter.  *See U.S.A. Fanter Corp., Ltd. v. Imperial Pacific International (CNMI), LLC*, 1:20-cv-00003 (D. N. Mar. I.) ("Fanter-I").

In October, 2021, the District Court entered an order authorizing and directing Clear Management Ltd. ("Clear") to sell certain of Debtor's gaming equipment.  *See* ECF 166 (Fanter-1).  From December, 2022 through January, 2024, the District Court entered orders approving seven auctions conducted by Clear of certain of Debtor's gaming equipment.  *See* ECF Nos. 303, 343, 359, 382, 399, and 417 in Fanter-1.

---

[2] The Gray Judgment is currently on appeal to the Ninth Circuit Court of Appeals.  The Debtor has filed a motion for relief from the automatic stay to continue the appeal.

[3] Fanter also brought an action in 2020 for defamation, which was tried on March 1, 2022, and resulted in a judgment in favor of Fanter in the amount of $500,000.  *See U.S.A. Fanter Corp. v. Imperial Pac. Int'l (CNMI), LLC*, Civil Action No. 1:20-cv-00005 ("Fanter-2").

In Fanter-1, a writ of execution on Debtor's casino gaming machines and vehicles was sought, and on August 2, 2021, a motion for limited appointment of receiver to aid in the execution was filed. *See* ECF 112, Fanter-1. Certain other creditors were encouraged to participate in the receivership proceedings in Fanter-1, and around twenty creditors appeared. On October 26, 2021, the Court granted the motion to appoint receiver. *See* ECF 166, Fanter-1. The Court explained:

> In its discussion with IPI and the various creditors on the gaming equipment receivership, the Court acknowledged that the receivership would function like a bankruptcy with the intent of satisfying judgment for the various creditors.

*Fanter-1*, 2022 U.S. Dist. LEXIS 195890, at *5 (D. N. Mar. I. Oct. 27, 2022).

On October 21, 2021, Fanter brought another lawsuit against IPI. *See* Case No. 1:21-cv-00035 ("Fanter-3"). A judgment by default was entered on November 30, 2022. *See* ECF 34, Fanter-3. A writ of execution was entered on June 20, 2023 (ECF 38), but later Fanter stipulated in August 2023 to a joint writ with Civil 20-005. ECF 41 (Fanter-3). Clear was appointed a receiver to sell IPI's vehicles and heavy equipment by order entered on January 12, 2024 (the "Fanter Receivership Order"). ECF 49, Fanter-3. Clear filed an inventory on January 22, 2024. *See* ECF 51, Fanter-3.

On or about December 15, 2022, Century Estate Investments Limited ("Century Estate") filed a UCC-1 Financing Statement ("Century Estate UCC") recorded in the Commonwealth Record's Office for the Northern Mariana Islands as Document No. 202200133 to secure a $9 million loan to the Debtor. *See* **Exhibit 2.** The Century Estate UCC describes, among other collateral, computer hardware, furniture equipment, motor vehicles, tobacco inventory and liquor inventory.

In 2023, Movants obtained writs of execution against certain of the Debtor's

personal property (namely, the Debtor's vehicles, furniture and equipment, computer hardware, liquor inventory, dragons and casino-related and security equipment) collectively, the "Personal Property").  *See e.g.*, ECF 246, Gray Case.

On September 7, 2023, Gray filed a petition to appoint a limited receiver to sell the Personal Property.  *See* ECF 254, Gray Case.

On September 18, 2023, Century Estate filed a motion to intervene in the Gray Case based on its senior lien against the Personal Property.  *See* ECF 261, Gray Case. However, the District Court denied Century Estate's motion to intervene.

On October 23, 2023, the District Court entered an Order Appointing Clear Management as Limited Receiver for the Sale of IPI's Personal Property. *See* ECF 275, Gray Case.  A similar order was entered in Fanter lawsuit. *See* ECF 37 (Order Granting Plaintiff's Application for Writ of Execution), Fanter-3.

In January 2024, in Civil No. 20-005, Fanter and other five other judgment creditors sought a writ of execution on "IPI's vehicles, liquor, dragons, computer hardware, furniture and equipment, and casino-related and security equipment." *Fanter-2,* 2024 U.S. Dist. LEXIS 5725, at *2 (D. N. Mar. I. Jan. 11, 2024).

On January 24, 2024, the District Court confirmed the auction of certain of the Debtor's liquor inventory in the Gray Case.  *See* ECF 287, Gray Case.

On January 20, 2024, the District Court adopted a distribution plan for proceeds from the receivership in Fanter-1.  It called for the pro-rata distribution among around 20 creditors.  ECF 419, Fanter-1.

On April 11, 2024, Clear conducted an auction of 11 of the Debtor's vehicles. The auction results have not been approved by the District Court.

On April 19, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") in the United States District Court for the District of the Northern Mariana Islands, bankruptcy division (the "Bankruptcy Court").[4]

Movants' underlying motivation is underscored in their parting words to this Court: Movants desire "the continued liquidation of the Personal Property to satisfy Movant[s'] judgments." Motion [ECF no. 49] at pdf 30.

However, as set forth below, the Debtor is entitled to an opportunity to reorganize its affairs.  Given the numerous creditors and the various receiverships, and the effect these disparate proceedings have on property of the estate, the bankruptcy, and the rights of all creditors, Movants should not be allowed relief from the stay, let alone relief from stay on shortened notice in the first weeks of a Chapter 11 case to liquidate Personal Property when Movants' interest is junior to the duly recorded Century UCC.

## II.    APPLICABLE LAW AND LEGAL STANDARD

When a debtor files for relief under the Bankruptcy Code, an estate is created. The scope of that estate is determined by the language of Section 541 which states in relevant part that the "commencement of a case . . . creates an estate . . . of all . . . property, wherever located and by whomever held . . including all legal or equitable interests of the debtor in property as of the commencement of the case…"  11 U.S.C. § 541.

The structure of the Bankruptcy Code, the policy behind it and the legislative history all suggest "that § 541(a)(1)'s scope is broad." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S. Ct. 2309, 2313 (1983) (footnote omitted) (holding that

---

[4] Although the Debtor has no operations at this time, it has approximately 15 employees, the majority of whom provide security services.

IRS could be required to return personal property seized pre-petition even though the IRS

held a security interest in the property by virtue of its tax lien).

Section 541 also brings into the estate "any property made available to the estate

by other provisions of the Bankruptcy Code. Several of these provisions bring into the

estate property in which the debtor did not have a possessory interest at the time the

bankruptcy proceedings commenced." *Whiting Pools*, 462 U.S. at 205, 103 S. Ct. at

2313-2314 (citation and footnote omitted). This includes property "in which the debtor

did not have a possessory interest at the time the bankruptcy proceedings commenced."

*See Whiting Pools*, 462 U.S. at 205, 103 S. Ct. at 2313-14.

> In proceedings under the reorganization provisions of the Bankruptcy
> Code, a troubled enterprise may be restructured to enable it to operate
> successfully in the future. . . . By permitting reorganization, Congress
> anticipated that the business would continue to provide jobs, to satisfy
> creditors' claims, and to produce a return for its owners. Congress
> presumed that the assets of the debtor would be more valuable if used
> in a rehabilitated business than if 'sold for scrap.' . . . . Thus, to
> facilitate the rehabilitation of the debtor's business, all the debtor's
> property must be included in the reorganization estate.

*Whiting Pools, Inc.*, 462 U.S. at 203, 103 S. Ct. at 2312-13 (citations omitted).

The Bankruptcy Code defines the term "custodian" to include a receiver

appointed by a state court. *See* 11 U.S.C. § 101(11). Under Section 543(b), property

held by a custodian, such as a state-court appointed receiver, must be turned over to the

debtor, together with an accounting regarding that property:

> (b) A custodian shall--
>> (1) deliver to the trustee any property of the debtor held by or transferred
>> to such custodian, or proceeds, product, offspring, rents, or profits of such
>> property, that is in such custodian's possession, custody, or control on the
>> date that such custodian acquires knowledge of the commencement of the
>> case; and
>> (2) file an accounting of any property of the debtor, or proceeds, product,
>> offspring, rents, or profits of such property, that, at any time, came into the
>> possession, custody, or control of such custodian.

1    The purpose of the automatic stay, which springs into existence upon the filing of

2    a voluntary petition for relief under the Bankruptcy Code, is to halt all actions and to

3    permit the debtor to manage its estate and restructure its obligations.  It "has been

4    described as one of the fundamental debtor protections provided by the bankruptcy laws."

5    

6    *Midlantic Nat. Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494, 503 (1986)

7    (quotation omitted). The purpose of the automatic stay is to **protect both the debtor and**

8    **creditors**.

9            The automatic stay is one of the fundamental debtor protections provided by
10       the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It
         stops all collection efforts, all harassment, and all foreclosure actions. It
11       permits the debtor to attempt a repayment or reorganization plan, or simply to
         be relieved of the financial pressures that drove him into bankruptcy.  . . .
12       The automatic stay also provides creditor protection. Without it, certain
         creditors would be able to pursue their own remedies against the debtor's
13       property. Those who acted first would obtain payment of the claims in
         preference to and to the detriment of other creditors. Bankruptcy is designed
14       to provide an orderly liquidation procedure under which all creditors are
         treated equally. A race of diligence by creditors for the debtor's assets
15       prevents that.

16    *Benedor Corp. v. Conejo Enters. (In re Conejo Enters.)*, 96 F.3d 346, 351-52 (9th Cir.

17    

18    1996) (emphasis added).

19           The automatic stay is fundamental to bankruptcy law.  *It ensures that*
20       *claims against the debtor will be brought in one place, the*
         *bankruptcy court*. The stay protects the debtor by giving it room to
21       breathe and, thereby, hopefully to reorganize. *The stay also protects*
         *creditors as a group from any one creditor who might otherwise seek*
22       *to obtain payment on its claims to the others' detriment*.

23    *See Boucher v. Shaw*, 572 F.3d 1087, 1092 (9th Cir. 2009) (emphasis added) (citations

24    

25    omitted); *In re First Alliance Mortgage Co.*, 264 B.R. 634, 645 (C.D. Cal. 2001)

26    ("purpose of the stay is to centralize all litigation involving the debtor in one court in

27    order to grant the debtor temporary relief from creditors, prevent needless dissipation of

28

the debtor's estate, and allow for reorganization or liquidation to proceed in the most

efficient manner possible").

Movants base their Motion on section 362(d), which provides as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>>> (A) the debtor does not have an equity in such property; and
>>> (B) such property is not necessary to an effective reorganization;

11 U.S.C. § 362(d).

"A motion requesting relief from the automatic stay imposed by § 362(a) must

state the basis under § 362(d) for the relief being sought. Except for related relief from a

codebtor stay under § 1201(a) or 1301(a), the motion **may not** include requests for other

relief." LBR 4001-1(a)(1) (emphasis added).

### III.    <u>ARGUMENT</u>

A.    <u>THE MOTION AND NOTICE OF THE MOTION WERE NOT PROPERLY SERVED</u>

Local Bankruptcy Rule ("LBR") 4001-1(d) governs motions for relief from

automatic stay and requires any relief from stay motion <u>and</u> a notice to be served upon

> (1) **<u>the debtor</u>**;
> (2) the debtor's attorney;
> (3) any trustee appointed in the case;
> (4) **<u>any committee appointed in the case under § 705 or 1102</u>**, or its attorney, or, if no committee of unsecured creditors has been appointed in a chapter 11 case, the creditors included on the list filed pursuant to Bankruptcy Rule 1007(d);
> (5) **<u>if the motion seeks to enforce a lien, all other parties, known to the moving party, who claim an ownership or security interest in the same collateral</u>**;
> (6) if the motion concerns a codebtor stay, the codebtor; and

(7) **if the motion concerns the commencement or continuation of a judicial, administrative, or other action or proceeding, all parties to the action or proceeding**.

LBR 4001-1(d) (emphases added).

Similarly, LBR 4001-5(c) (which governs motions confirming that no automatic stay) provides: "Service. A motion and notice governed by this rule **must be served on the debtor**, the debtor's attorney, **any creditors or parties in interest affected by the motion**, the United States Trustee, **and any trustee or committee appointed in the case.**"   LBR 4001-5(c) (emphasis added).

On May 14, 2024 the Office of the U.S. Trustee filed a Notice of Appointment of Committee of Unsecured Creditors [ECF 54]. The three members of the Committee of Unsecured Creditors (the "Committee"), who assert general unsecured claims totaling approximately $15 million, are as follows:

| Creditor | Representative |
| --- | --- |
| Hughes Hubbard & Reed LLP | Michael E. Salzman, General Counsel<br>Email: michael.salzman@hugheshubbard.com |
| DFK Limited | Liu Shihao<br>Email: elkelvin@aliyun.com |
| Corrado Modica | Corrado Modica<br>Email: m.coreytiling@gmail.com |

Counsel for Hughes Hubbard and Reed received CM/ECF notices, however, there is <u>no</u> indication that DFK Limited and Corrado Modica were properly served with the Motion or notice of the Motion.

Gray is acutely aware that Century Estate asserts a senior secured interest in the Personal Property. *See* ECF 261, Gray Case.  There is no indication that Century Estate was served with the Motion or notice of the Motion.

Also, it is unclear if Movants served the Motion on the Debtor, or any other creditors or parties in interest as Movants have, to date, not filed a certificate of service for service of its Motion, or its notice of thereof. Accordingly, the Motion must be denied (or in the alternative continued) for proper service to give other stakeholders (whose interests conflict with Movants) an opportunity to be heard.

B.  **THESE PIECEMEAL PROCEEDINGS UNDERSCORE WHY THE AUTOMATIC STAY SHOULD STAY IN PLACE**

The instant receivership at issue is just one of the receiverships over the Debtor's property. A brief summary is provided below:

| Fanter-1 (Case 20-003) | Fanter-2 (Case 20-005) | Fanter-3 (Case 21-0035) | Gray Case (Case 19-008 & 19-0020) consolidated |
|---|---|---|---|
| Receiver over Casino equipment | Receiver joined with Case 21-0035<br><br>Later, a writ of execution sought on the Debtor's vehicles, furniture and equipment, computer hardware, liquor inventory, dragons and casino-related and security equipment | Receiver over vehicles and heavy equipment | Receiver over the Debtor's vehicles, furniture and equipment, computer hardware, liquor inventory, dragons and casino-related and security equipment |
| Over 20 creditor and $1.4 million held by Receiver | Joined with the Fanter Receivership Order | "Fanter Receivership Order" | "Gray Receivership Order" |

In Fanter-1, the Court observed that the receivership was like a bankruptcy inasmuch as IPI had numerous claimants, all vying to be paid.:

> In its discussion with IPI and the various creditors on the gaming equipment receivership, the Court acknowledged that the receivership would function like a bankruptcy with the intent of satisfying judgment for the various creditors. (See Tr. 66, ECF No. 250 ("[T]hat's why I keep talking about the receivership[, it] is intended to give everybody

something. It's basically like a bankruptcy, but in equity here. Some—but not everybody is going to get 100 percent.").)

*Fanter-1*, 2022 U.S. Dist. LEXIS 195890, at 5 (D. N. Mar. I. Oct. 27, 2022).  The Court further noted: "Local Rule 63.1(f) also suggests that all creditors—not just named creditors—be contemplated in the receivership." *Id*. at 16.  The Local Rule identified by the Court states as follows:

> Reports by Receiver. Within twenty-eight (28) days of appointment, a permanent receiver must file with the Court a verified report and petition for instructions. The petition will be heard on seven (7) days' notice to all known creditors and parties. The report must contain a summary of the operations of the receiver, an inventory of the assets and their appraised value, a schedule of all receipts and disbursements, and a list of all creditors, their addresses, and the amount of their claims. . . .

LR 63.1(f).

Between two equitable proceedings, the Bankruptcy proceedings should control.

The Court's observation that there needs to be an orderly process of administering multiple claims against the single defendant was correct.  Bankruptcy was designed to provide an orderly process of administering claims.  It was also designed to provide debtors with an opportunity to reorganize.  These two purposes can only be served if these disparate receivership and collection proceedings continue to be stayed, and the debtor is provided with breathing room to propose a plan.  In addition, in bankruptcy the priority of claimants is based on applicable local law and the Bankruptcy Code.

A receivership under the federal rules is equitable.

> "The appointment of a receiver is an equitable remedy of rather drastic nature available at the discretion of the court having jurisdiction of the subject matter and the parties. Mintzer v. Arthur L. Wright & Co., 263 F.2d 823, 824 (3d Cir. 1959); *see also* 12 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2983 (2d ed. 2008) ("[T]he appointment of a receiver is not a matter of positive right but rather lies in the discretion of the court.")."

*Peterson v. Islamic Republic of Iran*, 563 F. Supp. 2d 268, 277 (D.D.C. 2008).

Bankruptcy Courts are courts of equity.  ""The United States Supreme Court has explained that bankruptcy courts "...are courts of equity and 'appl[y] the principles and rules of equity jurisprudence.'" (Young v. United States, 535 US 43, 50, 122 S. Ct. 1036, 152 L. Ed. 2d 79 (2002) (quoting Pepper v. Litton, 308 US 295, 304, 60 S. Ct. 238, 84 L. Ed. 281 (1939); see also Bank of Marin v. England, 385 US 99, 103, 87 S. Ct. 274, 17 L. Ed. 2d 197 (1966).)" *St. Lawrence Valley Dairy v. Saccheri (In re Saccheri)*, 2012 Bankr. LEXIS 6184, at *16 (Bankr. E.D. Cal. Apr. 6, 2012).

Given the similar equitable purposes of receivership and bankruptcy, and the specialized nature of the bankruptcy courts and the Bankruptcy Code, jurisdiction should remain with the Bankruptcy Court.  Piecemeal relief from the stay to pursue a receivership sale and distribution is contrary to the purpose of the Bankruptcy Code.

Given the history of this case, the debtor's right under the code to seek reorganization, and the status of the property and proceeds as property of the estate, the motion for relief from stay should be denied.

C.    THE PERSONAL PROPERTY IS PROPERTY OF THE ESTATE

Section 541 defines property of the bankruptcy estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

Movants have not provided a detailed list of the property they claim the right to proceed against and simply reference an (initial) list filed as ECF 282 in the Gray Case. This list includes the following 19 categories of property:

> (1) Liquor (6,458 items); (2) Art (8 items); (3) Computers (105 items); (4) Décor; (5)Employee Lockers (2,872 items); (6) Lounge equipment (350 items); (7) Food and beverage Accessories, (8) Food and beverage Appliances; (9) Food and

beverage Equipment; (10) Food and beverage Tables and Chairs (140 items); (11) Maintenance and Equipment; (12) Miscellaneous; (13) Office equipment (257 items); (14) Office supplies (900 items); (15) Printers (206 items); (16) Security Equipment; (17) Sewing Equipment; (18) Tools; and (19) Uniform Equipment.

ECF 282 at 3, Gray Case. In addition, there were categories that had not been finalized in

the list. These included the following: Building Spare Materials; Building Spare Parts;

Food and beverage Glasses; Food and beverage Plates; Food and beverage Pots and Pans;

Food and beverage Silverware; and. Food and beverage Storage and Packing. There are

also vehicles, which were the subject of a writ in the Fanter case. ECF 35-4, Fanter-3.

From these broad categories, Movant states that the liquor has been sold, some

vehicles have been sold, and the art and other personal property are still being marketed

(in violation of the stay). It is not clear what is left. What is clear is that all of the

property was used and useful in Debtor's business.

The Order relating to the vehicles contained similar provisions:

(7) Upon this Court's approval as described herein, the winning bidder shall receive from the Receiver a confirmation of the winning bid reflecting the amount of the bid, items purchased, and confirmed receipt of the required deposit;

(8) If the Court does not approve the winning bid, the winning bid shall be returned to the winning bidder within seven (7) days after the Court's disapproval;

(9) After the Court's approval and receipt of full payment, Receiver shall begin preparing all necessary transfer documents and deliver them to the winning bidder. Within seventy-two (72) hours of receiving the necessary documents, the winning bidder shall bear the burden and costs of removing the Properties from IPI's premises.

ECF 49, Fanter-3.

Aside from the first auction sale of liquor inventory, which sale confirmation

order was entered on January 24, 2024, the Personal Property in the possession of Clear

constitutes property of the bankruptcy estate. Proceeds of sale in the possession of Clear

also constitute property of the estate (there has been no accounting provided by Clear of

sales proceeds and/or how it applied or intended to apply the proceeds as to the prior lien

of Century Estates).  The Order appointing the receiver clearly contemplates that the

District Court <u>must</u> confirm any sale of the Personal Property.

> 12. Pursuant to Local Rule 63.1(g)(2), the Limited Receiver shall give all
> interested parties **at least ten (10) days' notice** of the time and place of
> hearings concerning petitions for confirmation of sales of property by filing a
> notice on ECF in this matter, or by any other means ordered by the Court. All
> interested parties shall file any objection to the petition no later than seven (7)
> days after receiving notice. **A hearing shall be held within fourteen (14)
> days of the filing of the Limited Receiver's petition for confirmation of
> sales of property**.
>
> 13. After closing, the Limited Receiver shall file a closing report that sets
> forth the total proceeds received, the Limited Receiver's and any other
> commissions, the resulting net proceeds, and the proposed distributions of the
> monies collected. No funds shall be distributed without prior approval from
> the Court.

*See* ECF 275, Gray Case (emphasis added).

Thus, title to the Personal Property (aside from certain liquor) remained in the

Debtor even though it was in Clear's possession as of the Petition Date.  *See Bennett v.*

*Hunter*, 76 U.S. (9 Wall.) 326, 336-37 (1869) ("upon public sale, became actually vested

in the United States or in any other purchaser; but not before such public sale. It follows

that in the case before us the title remained in the tenant for life with remainder to the

defendant in error, at least until sale; though forfeited, in the sense just stated, to the

United States").

Since the Personal Property remains property of the Debtor's bankruptcy estate, it

is protected by the automatic stay.  The effect of a levy of execution on personal property

has been addressed by numerous courts, sometimes with different conclusions.

> There are cases which have held that a debtor's interest in property seized before that debtor's filing for relief under the Bankruptcy Code is sufficient to render the property 'property of the estate', thus, subject to turnover. . . .
>
> In a second line of cases, the courts have held that a pre-petition levy deprives the debtor of possession and of all substantial rights in the property levied upon; therefore, the seized property is not property of the estate, and not subject to turnover. . . .

*In re Ford*, 24 B.R. 616, 617-18 (Bankr. D.S.C. 1982) (citation omitted) .

Many of the cases cited above were federal tax levies, which is a statutory creation under the Internal Revenue Code.  Here, the levy and execution may have been started under CNMI law, but such proceedings were not completed and were instead referred to an equitable receiver, who took possession under federal law.

    D.      <u>THE PROPERTY IS IN THE POSSESSION OF A SECTION 543 CUSTODIAN.</u>

Movants assert that all the Personal Property at issue is in the possession of Clear (and not property of the Debtor's estate).  However, Clear is merely a "custodian" under the Bankruptcy Code. *See* 11 U.S.C. § 101(11)(A) (defining custodian as "receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title").

In fact, a custodian owes duties to the estate.  First, a custodian "may not … take any action in the administration of…property of the debtor, proceeds, . . . or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property."  11 U.S.C. § 543(a).  Second, "[a] custodian shall—(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, . . . or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case[.]"  11 U.S.C. § 543(b)(1).  Third,

the custodian shall "(2) file an accounting of any property of the debtor, or proceeds, . . . or profits of such property, that, at any time, came into the possession, custody, or control of such custodian." 11 U.S.C. § 543(b)(2).

None of this has been done.

Movants appear to recognize that Section 543 may be an issue, but downplay it by stating in a footnote that "Movants are advised that Clear is reviewing the applicability of Bankruptcy Code §543(d), and its rights or obligations thereunder, and will advise the Court of its intentions in the near future."  Clear is involved in the 20-003 receivership, the Fanter Receivership, and the Gray Receivership.  None of these receiverships have terminated.  No party has sought relief from Section 543, which provides its own procedures for seeking relief from its requirements:

> (d) After notice and hearing, the bankruptcy court—
>
> > (1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property, and
> >
> > (2) shall excuse compliance with subsections (a) and (b)(1) of this section if the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, unless compliance with such subsections is necessary to prevent fraud or injustice.

11 U.S.C.S. § 543(d).

These procedures have been ignored (and the Debtor objects to any *ex parte motion* to shorten time on such motion).  Clear "may not … take any action in the administration" of the property and shall deliver the property to the Debtor, unless motion for relief from Section 543 is filed, noticed for hearing, and granted.  One of the issues is whether continued possession by the custodian is in the interest of creditors.  It is also not

known if Clear has sales proceeds that are required to be disclosed and/or turned over

under Section 543.  In the rush to seek relief from the stay, Movants are bypassing

bankruptcy procedures that are designed to ensure an orderly and fair administration of

the estate.

Clear is a custodian.  There is authority that a party who holds property under a

writ of execution is a custodian:

> Based on an analysis similar, though not identical, to that of the Ohakpo court,
> this Court found that the custodians in this case are the Rutland county Sheriff
> and the Washington county Sheriff **who, acting pursuant to the state court
> writ of execution, seized and took charge of the Debtor's property for the
> purpose of enforcing Rathe's lien against it.** The Court further found that
> the Sheriffs entered into arrangements with EWS and LRT to store the
> Equipment, and that, until it was released, EWS and LRT were responsible for
> the storage of the Equipment. Although the parties later demonstrated that
> Rathe, rather than the Sheriffs, made the arrangements with EWS and LRT,
> this does not change the Court's conclusion that **EWS and LRT are agents of
> the Sheriffs with respect to possession and storage of the Equipment,
> because it was they who effectuated the custodial duties that the state
> statute imposes upon the Sheriffs.**

*In re R. Brown & Sons, Inc.*, 498 B.R. 425, 434 (Bankr. D. Vt. 2013) (emphases added).

Here Clear was specifically appointed as receiver to locate and sell IPI's Personal

Property.  *See* ECF 275, Gray case ("The Court hereby appoints Clear, …, as the Limited

Receiver to take effect on execution of this Order for the purpose of identifying, securing,

and selling IPI's Personal Property.").

Similar language appears with respect to the receivership for IPI's vehicles.  "The

Court hereby appoints Clear, …, as the Receiver to take effect on execution of this Order

for the purpose of identifying, securing, and selling IPI's vehicles and heavy equipment."

ECF 49, Fanter Case.

The property is referred to as IPI's Personal Property, underscoring that Clear is a

receiver of property of the estate. Clear still has proceeds from the sale of Debtor's casino

equipment.

      E.      <u>CENTURY ESTATE'S SECURED CLAIM MUST BE DETERMINED</u>

Century Estate has a lien over its vehicles, liquor inventory, tobacco inventory and furniture & equipment.  Given the size of the Century Estate's lien, Movants are unsecured as to the Personal Property.  Based on the record, Century Estates is a senior secured creditor with priority over Fanter and Gray.  If this status is disputed, it should be resolved in Bankruptcy Court.

      F.      <u>CAUSE UNDER SECTION 362(D)(1) DOES NOT EXIST TO GRANT MOVANTS RELIEF FROM THE AUTOMATIC STAY TO PURSUE COLLECTION EFFORTS.</u>

Movants admit to seeking relief from automatic stay to pursue "the continued liquidation of the Personal Property to satisfy Movant[s'] judgments." Motion [ECF 49] at pdf 30.  In short, Movants seek to continue collection efforts against the Debtor in violation of Section 362(a)(2) which prohibits the "continuation . . . [of an] action . . . against the debtor that was . . . commenced before the [petition date] or to recover a claim against the debtor that arose before the [petition date. . . .]" *See* 11 U.S.C. §362(a) .

As one federal district court stated, a chapter 11 debtor

> has an obligation as a debtor in possession to formulate a plan of reorganization.  Protracted litigation with [plaintiff] in the federal district court …, coupled with the pending appeal between the parties would interfere with [the debtor's] efforts to reorganize and necessarily harm [the debtor's] chances to confirm a plan.

*Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.)*, 311 B.R. at 564 .

Cause does not exist to grant Movants relief from the automatic stay.  Many of the cases cited by Movants are <u>factually distinguishable</u> in that relief from the stay was

1
2

granted to liquidate the claim amount. *See e.g.*, *In re Roger, In re Kronemyer, In re Dennis Meyer Danzik*.

3
4
5
6
7
8
9
10
11
12
13

Movants argue that the Court should apply the Curtis factors and find that cause exists for relief from the automatic stay. However, the Curtis factors are inapplicable in this case because "[t]he *Curtis* factors have long provided guidance in assessing the merits of a motion for relief from stay **to allow the continued prosecution of litigation** pending at the time of the bankruptcy filing." *In re VidAngel, Inc.*, 593 B.R. 340, 345-46 (Bankr. D. Utah 2018) (emphasis added). *See also Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer)*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) ("… the Curtis factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum.").

14
15
16

Indeed, Curtis itself relied heavily on the Congressional Record in developing its factors. The Curtis Court noted that relief from stay would be limited to a fairly narrow category of circumstances:

17
18

> The House Report accompanying H.R. 8200 illustrates several situations in which it might be appropriate to modify the stay to permit litigation in another forum:

19
20
21
22
23
24
25
26
27
28

>> The lack of adequate protection of an interest in property of the party requesting relief from the stay is one cause for relief, but is not the only cause. **As noted above, a desire to permit an action to proceed to completion in another tribunal may provide another cause.** Other causes might include the lack of any connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case. In that case, it should not be stayed. A probate proceeding in which the debtor is the executor or administrator of another's estate usually will not be related to the bankruptcy case, and should not be stayed. Generally, proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors. The facts of each request will determine whether relief is appropriate under the circumstances.

1
2
3
4
5

      H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 343-44 (1977), 1978 U.S.
Code Cong. & Admin. News, p. 6300. See also S. Rep. No. 95-989, 95th
Cong., 2d Sess. 52 (1978), 1978 U.S. Code Cong. & Admin. News, p. 5838.
The legislative history of Section 362(d)(1) thus suggests that Congress
intended to limit relief from the stay to a fairly narrow category of
circumstances bearing little relationship to the bankruptcy case or to the
purpose of the stay.

6

*In re Curtis*, 40 B.R. 795, 799 (Bankr. D. Utah 1984) (emphasis added).  Many of the

7

<u>Curtis</u> factors address the litigation of claims for trial, including the following: "whether a

8
9

specialized tribunal has been established to hear the particular cause of action and that

tribunal has the expertise to hear such cases; the interest of judicial economy and the

10
11

expeditious and economical determination of litigation for the parties; whether the

12

foreign proceedings have progressed to  the point where the parties are prepared for

13
14

trial[.]"  *In re PG&E Corp.*, 2020 Bankr. LEXIS 535, at *4-5 (Bankr. N.D. Cal. Feb. 25,

2020).

15
16

      Here, Movants already obtained judgments against the Debtor and seek relief

17

from the automatic stay to **collect** (from property of the estate) on the judgments.

18

Administration of debts from multiple judgment and/or loan creditors is a matter tailored

19

for bankruptcy courts.  Moreover, as a practical matter, the Gray Judgment is currently on

20
21

appeal to the Ninth Circuit.  Any adverse decision by the Ninth Circuit would require the

unwinding of any collection efforts by Gray.

22
23

      Further, the <u>Curtis</u> factors weigh against any relief from the automatic stay.  The

24

underlying actions have been reduced to judgment.  Granting Movants' relief from the

25

automatic stay to engage in post-judgment collection is contrary to the purpose of the

26

automatic stay, as described by the Curtis Court:

27
28

1
2
3
4
5

> The automatic stay is intended 'to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another.' . . . Stated differently, the policy underlying the automatic stay is to protect the debtor's estate from 'the chaos and wasteful depletion resulting from multifold, uncoordinated and possibly conflicting litigation.'

6    *In re Curtis*, 40 B.R. at 798-99 (citations omitted).

7    Even if the Curtis factors apply, many of the Curtis factors are neutral and in fact

8    factors 1, 7 and 12 weigh heavily against relief from the stay.

9
10    *Factor 1: Whether the relief will result in a partial or complete resolution of the*

11    *issues.*  The relief requested will not result in a partial or complete resolution of the

12    issues.  In fact, the Gray Judgment is on currently appeal before the Ninth Circuit.  If the

13    Gray Judgment is overturned, then collection efforts by Gray are for naught.

14    *Factors 7 and 12: Whether litigation in another forum would prejudice the*

15
16    *interests of other creditors, the creditors' committee and other interested parties; and the*

17    *impact of the stay on the parties and the "balance of hurt*.  The automatic stay preserves

18    the status quo.  Century Estate would be **severely prejudiced** from the Movant's

19    liquidation of any of the Personal Property.  The liquidation would deplete the collateral

20    base on which Century Estate holds a senior secured lien and would also prevent the

21
22    DRT from its senior secured status based on its recorded tax liens.  *See* 4 CMC § 1865.

23    G.    THE RELIEF FROM THE AUTOMATIC STAY CANNOT BE
      GRANTED UNDER 362(D)(2) BECAUSE THE PERSONAL
24    PROPERTY IS NECESSARY FOR AN EFFECTIVE
      REORGANIZATION.

25
26    The Debtor concedes that it does not have equity in the Personal Property, but by

27    the same token, Movants are unsecured as to the Personal Property given the liens of

28    Century Estates and DRT.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lack of equity in the Personal Property alone is insufficient to grant relief from the automatic stay under 362(d)(2) of the Bankruptcy Code.  *See, e.g., United States v. Smithfield Estates, Inc. (In re Smithfield Estates, Inc.)*, 48 B.R. 910, 913 (Bankr. D.R.I. 1985) ("Furthermore, lack of equity alone does not warrant relief from the stay, unless it is also shown that the property is not necessary to an effective reorganization.  Section 362(d)(2) is phrased in the conjunctive . . . .").

Movants further argue that cause exists to because the Personal Property is "not needed for a reorganization."  *See* Motion [ECF 49] at pdf 7.  This conclusory argument ignores the fact that the Debtor's income was almost exclusively derived from the operation of a casino.  The Personal Property is **<u>necessary</u>** for an effective reorganization. The Debtor intends to file a plan of reorganization to reinstate its exclusive casino license, re-opening of its casino and complete the construction of the hotel.  Casino operations will necessarily require the use of the Personal Property.

The fact that Debtor has not yet filed its plan of reorganization (during the first month of the case!) does not mean that the Personal Property is not needed for a reorganization.  In fact, the Debtor has the exclusive right to file a plan of reorganization on or before August 27, 2024.  *See* 11 U.S.C. § 1121(c).  The Debtor believes its plan will have sufficient detail and support to show that the plan has "a reasonable possibility for a successful reorganization within a reasonable time" as required by the Supreme Court in *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 108 S. Ct. 626 (1988).

     H.     <u>MOVANTS CANNOT BE AWARDED ADEQUATE PROTECTION PAYMENTS FOR THE ALLEGED DIMINUTION IN VALUE OF THE VEHICLES AND OTHER PERSONAL PROPERTY</u>

Movants claim the right to adequate protection.  Movants have writs of execution, but an execution sale will not extinguish an existing secured interest.  Movants may dispute the extent or validity of the prior interest, but in doing so they simply underscore the importance of avoiding piecemeal collection efforts.

In fact, given the amounts of the DRT tax liens and Century's secured loan, Movants are wholly unsecured, and thus are not entitled to adequate protection payments. Indeed, a "[l]ender's right to adequate protection is **limited** to the amount of the secured claim." *In re Malamatos*, 2010 Bankr. LEXIS 3184, at *11-12 (Bankr. S.D. Cal. Sep. 13, 2010) (junior mortgagee against chapter 13 debtor's residence found to be unsecured because the amount owed to the senior mortgage exceeded the value of the collateral). Accordingly, the Movants are not entitled to adequate protection payments.

Even if Movants were entitled to adequate protection payments, aside from mere conjecture, Movants have not proffered admissible evidence as to the current value of the property, the value of their interest by reason of the writs, or on the decline in value of the Personal Property.  While an undersecured creditor may be entitled to adequate protection, a junior lienor who is neither fully secured nor undersecured is not entitled to adequate protection.

> One question that arises is whether, if the collateral is not declining in value, the second lienor is entitled to adequate protection because the amount of the senior claim is increasing regularly by the accrual of interest permitted under section 506(b). This relates to the question of what exactly is being protected. The Supreme Court in *Timbers of Inwood Forest* held that the creditor was entitled to protection of the value of the collateral, not of other rights that the creditor might have. This suggests that a junior lien holder should not be entitled to compensation for the decrease in its interest caused by an increase in the senior creditor's interest. Indeed, the junior creditor subjected itself to the senior interest and was always in the position of seeing the value of its interest decrease as the senior obligation increased. Without serious analysis, a number of lower courts have held to the contrary, however. These courts have looked not to the value of

the collateral, but rather to the value of the creditor's interest in that collateral. Under these cases, the junior creditor is entitled to perpetuation of its ratio of collateral to debt, contrary to *Timbers*.

*In re 1604 Sunset Plaza, LLC*, No. 2:21-bk-19157-ER, 2022 Bankr. LEXIS 981, at *17-18 (Bankr. C.D. Cal. Apr. 8, 2022) (citing to Alan N. Resnick & Henry J. Sommer, 3 *Collier on Bankruptcy* ¶ 362.07 (16th rev'd ed. 2022) (footnotes omitted)). Movants have not established a positive value of their claim under Section 506(a).  They have not established a right to protection.  *See e.g. In re Sun Valley Ranches, Inc.*, 38 B.R. 595, 598-99 (Bankr. D. Idaho 1984) (The SIPCA is undersecured. Under § 506(a), the value of SIPCA's secured claim is approximately $921,000.00. …. it seems probable that depreciation has occurred and may continue during the pendency of this proceeding. Further, the accrual of interest under § 506(b) on the secured debts of Equitable Life and the Farmers Home Administration, both of whom are in a priority position to SIPCA on the real estate and irrigation equipment and who have "value cushions," will reduce the value of SIPCA's secured interest in the real estate available to satisfy its debt. SIPCA is entitled to adequate protection for this depletion.").  Movants' request for adequate protection payments should be denied.

**IV.    CONCLUSION**

For the foregoing reasons, the Debtor respectfully requests that the Motion be denied.

DATED: Honolulu, Hawaii, May 23, 2024.

/s/ Chuck C. Choi
CHUCK C. CHOI
ALLISON A. ITO
CHARLES H. McDONALD II (F0494)
Attorneys for Debtor and
Debtor-in-Possession