**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**
**BANKRUPTCY DIVISION**

| | |
|---|---|
| IN RE: § | |
| § | **CASE NO. 24-00002** |
| **IMPERIAL PACIFIC** § | **CHAPTER 11** |
| **INTERNATIONAL (CNMI), LLC** § | |
| § | Hearing Date: August 14, 2024 |
| **DEBTOR.** § | Hearing Time: 8:30 AM |
| § | Judge: Chief Judge Manglona |

**COMMONWEALTH OF NORTHERN MARIANA ISLANDS'**
**MOTION TO CONVERT CASE TO CHAPTER 7**

TO:   THE HONORABLE RAMONA V. MANGLONA,
      UNITED STATES CHIEF DISTRICT JUDGE

The Commonwealth of Northern Mariana Islands (the "Commonwealth"), through its undersigned counsel, hereby files its *Motion to Convert Case to Chapter 7* (the "Motion"), pursuant to Bankruptcy Code § 1112(b), 11 U.S.C. § 1112(b).

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 3

II. JURISDICTION AND VENUE.......................................................................................... 5

III. BACKGROUND ................................................................................................................. 6

IV. REQUESTED RELIEF ....................................................................................................... 9

V. ARGUMENTS AND AUTHORITIES............................................................................... 9

   A. SECTION 1112(B) OF THE BANKRUPTCY CODE................................................................ 9

   B. CAUSE EXISTS TO CONVERT THE CASE UNDER SECTION 1112(B) OF THE BANKRUPTCY CODE................................................................................................................................. 10

      a. Continuing Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation ................................................................................................................ 10

      b. Failure to Maintain Appropriate Insurance ................................................................. 14

VI. CONCLUSION.................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*In re Baroni*,
   36 F.4th 958 (9th Cir.) ............................................................................................................ 10

*In re Bay Area Material Handling, Inc.*,
   76 F.3d 384 (9th Cir. 1996) .................................................................................................... 10

*In re Delta AG Group*, *LLC*,
   596 B.R. 186 (Bankr. W. D. La. 2019) ............................................................................ 14, 15

*In re Green Jane, Inc.*,
   2017 WL 2312851 (Bankr. C.D. Cal., 2017) ......................................................................... 14

*In re Green*,
   No. BR 14-15981-ABL, 2016 WL 6699311 (B.A.P. 9th Cir. Nov. 9, 2016) .......................... 10

*In re M.A.R. Designs & Construction, Inc.*,
   653 B.R. 843 (Bankr. S. D. Tex. 2023) .................................................................................. 14

*In re Orienta Co-Op Ass'n*,
   256 B.R. 508 (Bankr. W. D. Okla. 2000) ............................................................................... 11

*In re Qual Lake Estates Associates*, *L.P.*,
   2009 WL 5064538 (9th Cir. Dec. 2009) ................................................................................ 14

*In re Red Door Lounge, Inc.*,
   559 B.R. 728 (Bankr. D. Mont. 2016) ................................................................................... 12

*In re Renewable Energy, Inc.*,
   2016 WL 7188656 (9th Cir. Dec, 2016) .................................................................................. 14
*In re Van Eck*,
   425 B.R. 54 (Bankr. D. Conn. 2010) ...................................................................................... 15
*Pryor*,
   2016 WL 6835372 (9th Cir. Nov. 2016) ................................................................................. 14
*United States Bakery v. Svenhard's Swedish Bakery*,
   632 B.R. 312 (E.D. Cal. 2021) ................................................................................................. 9

**Statutes**

11 U.S.C. § 1112(b)(1) ....................................................................................................................... 9
11 U.S.C. §§ 1112(b)(4)(A)&(C) ...................................................................................................... 9
28 U.S.C. § 157(b)(2) ........................................................................................................................ 5
28 U.S.C. §§ 157 and 1334 ............................................................................................................... 5
28 U.S.C. §§ 1408 and 1409 ............................................................................................................. 5
Bankruptcy Code § 365(d)(3) ......................................................................................................... 11
Section 1112 of the Bankruptcy Code ..................................................................................... passim
Section 105 Bankruptcy Code .......................................................................................................... 5
Sections 1107(a) and 1108 of the Bankruptcy Code ....................................................................... 6

**Other Authorities**

Public Law 19-24 .............................................................................................................................. 6

## I. INTRODUCTION

1.     The Chapter 11 bankruptcy case filed by Imperial Pacific International (CNMI), LLC (the "Debtor") should be converted to a case under Chapter 7 of the Bankruptcy Code.

2.     The Commonwealth represents $87,573,315, or 52.8%, of the Debtor's largest unsecured claims by creditors who are not insiders (ECF 3). This debt has accumulated due to Debtor's failure to make payments to several Commonwealth agencies since 2020. Its $62,010,280.00 in debt owed to the Commonwealth is for the Debtor's non-payment of the Annual

License Fees due August 12, 2020; August 12, 2021; August 12, 2022; and August 12, 2023.[1] Its $17,620,000.00 debt owed to the Commonwealth Casino Commission (the "Commission") is for the Debtor's non-payment of the Casino Regulatory Fees due October 1, 2020; October 1, 2021; October 1, 2022; and October 1, 2023, including associated penalties.[2] And its $7,943,035.39 debt owed to the Commonwealth Department of Finance Division of Taxation and Revenue is for the Debtor's non-payment of its taxes, including penalties and interest.

3.   In addition, Debtor has not operated since 2020 and, thus, it has no income and is unable to pay post-petition obligations that continue to accrue — like its rent due April 28, 2024, that has not yet been paid, *see* Ex. A, Declaration of Greg Deleon Guerrero at ¶¶4-5, and the pending Annual Casino License Fee that will be due August 12, 2024. Debtor has no ability to generate revenue; its hotel building is unfinished and has never been operational. In addition, Debtor has no ability to operate as a casino; its casino gaming license is currently suspended and, until they were stayed by the filing of this case, two proceedings seeking revocation of the license were pending due to Debtor's failure to pay significant fees to the Commission and for its failure to comply with an order of the Commission requiring a payroll reserve. *See* Ex. A, Declaration of Edward Deleon Guerrero at ¶5. Other complaints have also been filed by the Executive Director that also seek revocation of Debtor's casino license. *Id*.

4.   The Debtor has also failed to maintain appropriate fire and damage insurance and general liability insurance as required by its Lease Agreement LA 15-002S for its lease of public

---

[1] The 2024 Annual Casino License payment in the amount of $15,502,570.00 will be due August 12, 2024.

[2] The 2024 Casino Regulatory Fee payment in the amount of $3,150,000.00 will be due October 1, 2024.

lands from the Commonwealth (the "Lease"), posing a significant risk to the Debtor's bankruptcy estate (the "Estate") and the public.[3]

5. Overall, based on the public information available, the Debtor does not have the financial wherewithal to successfully proceed under Chapter 11 of the Bankruptcy Code.

6. The Debtor has no business to reorganize, cannot show that there is a reasonable likelihood of rehabilitation, and has failed to maintain insurance. At the same time, the Debtor seeks to encumber the bankruptcy estate with $7,000,000 in post-petition financing ($400,000.00 of which was allowed by this Court's interim order, ECF 98, with the remaining amount to be decided at the final orders for First Day Motion's hearing on June 21, 2024), putting the creditor body at a distinct disadvantage in the case. Neither the interests of the Debtor's creditors nor its Estate would be served by having the Debtor continue to unnecessarily incur the expenses associated with a Chapter 11 reorganization. Accordingly, there is "cause" under section 1112(b) of the Bankruptcy Code for the Court to convert the above-styled case (the "Case") to a case under Chapter 7 of the Bankruptcy Code.

## II. JURISDICTION AND VENUE

7. The Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

8. This is a core proceeding under 28 U.S.C. § 157(b)(2). Since this is a core proceeding, the Bankruptcy Court has constitutional authority to enter final orders regarding the

---

[3] Although Debtor has sought post-petition financing that "shall be used to pay post-petition administrative expenses of the Chapter 11 Case, including, but not limited to, payment for maintenance and preservation of the property of the Debtor's estate, rent, insurance, utility services, operating expenses, and court-approved professional fees," (ECF 12), there is no evidence that Debtor has used its interim financing for such purpose.

relief requested in this Motion. Moreover, the Commonwealth consents to the Bankruptcy Court's entry of final orders on this Motion.

9. The predicates for the requested relief are sections 105 and 1112 of the Bankruptcy Code and rules 1017, 1019, 2002, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (individually, a "Bankruptcy Rule" and collectively, the "Bankruptcy Rules").

### III. BACKGROUND

10. On April 19, 2024 (the "Petition Date"), the Debtor commenced the above-captioned Chapter 11 case by filing a voluntary petition for relief under Chapter 11. The Debtor is acting as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date of this filing, no request for a trustee or examiner has been made. A committee of unsecured creditors was appointed on May 14, 2024 (ECF 54).

11. The Debtor entered its Casino License Agreement on August 12, 2014. The Casino License Agreement obligated it to pay an Annual License Fee in the amount of $15,000,000.00. On December 4, 2014, the Commonwealth promulgated Public Law 19-24, obligating the Debtor to pay an annual Casino regulatory Fee of $3,000,000.

12. IPI closed in 2020 during the COVID-19 pandemic. Although IPI could have reopened in compliance with the Commonwealth's Executive Directives regulating business operations to protect the community against the spread of COVID-19, the Debtor determined that it would not be profitable for it to do so and chose to remain closed. It failed to pay its Annual License Fee when it came due on August 12, 2020, and failed to pay its Casino Regulatory Fee when it came due on October 1, 2020.

13. The Executive Director of the CCC initiated five complaints against IPI in 2020 for violations including IPI's failure to make Community Benefit Contributions; failure to pay the

2020 Annual License fee; violation of Commission Order 2020-003 requiring IPI to maintain a payroll reserve; violation of Commission Order 2020-004 requiring IPI to pay accounts payable over 89 days; and failure to pay the 2020 Casino Regulatory Fee. On April 22, 2021, the Commission found violations for each complaint and suspended IPI's gaming license, ordered payment of the outstanding fees, and imposed $6.6 million in penalties. Although IPI appealed the order to the NMI Superior Court, that court affirmed the suspension order on March 15, 2022. Similarly, on September 25, 2022, the NMI Supreme Court affirmed the Superior Court's ruling in part, reversing the Commission's decision with respect to the Community Benefit Fund and vacating the penalties associated with failure to pay into that Fund but upholding the remaining violations. With respect to the Casino Regulatory Fee, the NMI Supreme Court found that the Debtor had failed to present any defense and the fees were owed when due in 2020. With respect to the Annual License Fee, the NMI Supreme Court agreed with the Debtor that the *force majeure* provision of the Casino License Agreement excused the Debtor's failure to pay during the *force majeure* event but found that the fees remained due, and remanded to the Commission to determine a reasonable time for the Debtor to pay. On November 30, 2023, the Commission issued a "Notice of Payment Deadline" requiring payment within 30 days, but no payment was made.[4]

14. The Executive Director filed five complaints for revocation of the casino license in 2022. The complaints seek revocation for failure to pay the 2020 and 2021 Casino Regulatory Fee and the 2020 and 2021 Annual License Fee, and for failure to comply with Commission Order

---

[4] Many of the background facts are set forth in pleadings filed by the Debtor in other actions or in orders of this Court. *See, e.g., Imperial Pacific International (CNMI), LLC v. Commonwealth Casino Commission*, Civil Case No. 1:22-cv-00007 (D. N. Mar. I. Sept. 26, 2022) (ECF 32) (Memorandum Decision Granting Plaintiff's Motion for Preliminary Injunction and Motion to Compel Arbitration).

2020-003 requiring IPI to maintain a payroll reserve. The Executive Director (or the Commission Chairman, when no Executive Director is in place) has been diligently pursuing revocation since that time. Ex. B at ¶5. The Debtor attempted to force the revocation proceedings into arbitration pursuant to the Casino License Agreement, obtaining a preliminary injunction against the revocation proceedings from the U.S. District Court that was ultimately overturned on appeal by the Ninth Circuit. *See Best Sunshine Int'l, Ltd. (BVI) v. Commonwealth Casino Comm'n*, No. 22-16630 (9th Cir. June 28, 2023) (Memorandum).[5] The Commission held evidentiary hearings on the two complaints relating to failure to pay the 2020 Casino Regulatory Fee and failure to maintain a payroll reserve, and was scheduled to meet to deliberate and decide on the revocation days after this Case was filed. Ex. A at ¶5.

15. Debtor has also filed complaints against the Commonwealth and the Commission, as well as the Governor, Executive Director, and Commissioners in their official and personal capacities, pleading various violations relating to the supposed self-interest of the Commissioners and the alleged unconstitutionality of the Casino Regulatory Fee and even the Commission's exercise of authority. *See Imperial Pacific International (CNMI), LLC* v. Commonwealth, Case No. 24-00001 (D. N. Mar. I.) (challenging the Commission's authority); *Imperial Pacific International (CNMI), LLC v. Commonwealth*, Case No. 24-00002 (D. N. Mar. I.) (challenging the constitutionality of the Casino Regulatory Fee). The actions have been filed, dismissed, refiled, subject to motions to dismiss, amended, subjected again to motions to dismiss, and sought to be

---

[5] Debtor sought certiorari from the United States Supreme Court, but the petition was denied. *See, e.g., Imperial Pacific International (CNMI), LLC v. Commonwealth Casino Commission*, Civil Case No. 1:22-cv-00007 (D. N. Mar. I. Sept. 26, 2022) (ECF 60) (letter from Supreme Court of the United States Office of the Clerk dated January 8, 2024 documenting the Court's entry of the denial order).

amended again. The volume of Commonwealth resources expended in trying to enforce the terms of the Casino License Agreement and its applicable laws and regulations over the past four years is significant, and unsustainable. Settlement discussions have been ongoing in earnest for *over two years*, *see* Ex. A at ¶6 & Ex. C, Declaration of J. Robert Glass, Jr., at ¶4, and the Commonwealth is tired of waiting for the Debtor to locate the funds necessary to meet its financial obligations to the Commonwealth. *See* Ex. C at ¶6. As a result of the efforts, time, and money expended to date, the Commonwealth is no longer interested in settlement and seeks conversion of this bankruptcy proceeding to Chapter 7 and liquidation of the Estate. *Id*. at ¶6.

## IV. REQUESTED RELIEF

16. For the reasons set forth in detail below, the Commonwealth seeks the entry of an order converting the Case from one under Chapter 11 of the Bankruptcy Code to a case under Chapter 7 of the Bankruptcy Code. The instant facts demonstrate that the requested relief is proper and in the best interests of the Debtor, its creditors, and the Estate. Accordingly, the Motion should be granted.

## V. ARGUMENTS AND AUTHORITIES

**A.    Section 1112(b) of the Bankruptcy Code**

17. Section 1112(b) of the Bankruptcy Code provides, in pertinent part:

> (b)
>
> (1) . . . [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).

18. Section 1112(b)(4) contains a non-exhaustive list of examples of cause meriting conversion or dismissal. Under section 1112(b)(4), "cause" includes, in pertinent part, (1) "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," and (2) "failure to maintain appropriate insurance that poses a risk to the estate or to the public." 11 U.S.C. §§ 1112(b)(4)(A)&(C).

19. Section 1112 of the Bankruptcy Code "is intended to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *United States Bakery v. Svenhard's Swedish Bakery*, 632 B.R. 312, 317 (E.D. Cal. 2021). The inquiry under section 1112 is case-specific, focusing on the circumstances of each debtor. Each debtor's viability and prospects must be evaluated in light of the best interest of creditors and the estate. *See In re Baroni*, 36 F.4th 958, 966 (9th Cir.), *cert. denied sub nom. Baroni v. Seror*, 143 S. Ct. 424 (2022); *see also In re Green*, No. BR 14-15981-ABL, 2016 WL 6699311, *7 (B.A.P. 9th Cir. Nov. 9, 2016). Moreover, the party seeking dismissal or conversion bears the burden of proving cause by a preponderance of the evidence. *In re Baroni*, 36 F.4th at 966.

**B.   Cause Exists to Convert the Case Under Section 1112(b) of the Bankruptcy Code**

   *a. Continuing Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation*

20. Cause exists to convert the Case under section 1112(b)(4)(A) of the Bankruptcy Code because of substantial or continuing loss to or diminution of the Estate and the absence of a reasonable likelihood of rehabilitation. As the Ninth Circuit has stated, diminution of an estate exists "where, for example, the debtor's business has ceased, . . . or the debtor's liabilities outstrip its assets." *In re Bay Area Material Handling, Inc.*, 76 F.3d 384, *2 (9th Cir. 1996). Further, a

debtor lacks a reasonable likelihood of rehabilitation "where, for example, it lacks income, . . . lacks operating funds, . . .or lacks employees, capital, or continuing revenue generating activity." *Id.* (internal citations omitted). "Where a court finds 'no reasonable possibility of reorganization,' it need not delay conversion." *Id.*

21. Here, the Debtor ceased operating its business in 2020 and has not resumed operations since. In addition, the Debtor's liabilities outstrip its assets. Debtor has identified $284,353,211.16 in total liabilities, but only $6,474,768.71 in assets. *Id.* Upon information and belief, the Debtor thus lacks any income, operating funds, and any continuing revenue-generating activity, and will need to rely entirely on recovery from pending lawsuits and on significant loans in order to finish construction of its hotel/casino building; to repurchase the gaming equipment, chips, and other property necessary to operate; and to pay all post-petition rental obligations and license fees. This is cause to convert to Chapter 7. *See In re Orienta Co-Op Ass'n*, 256 B.R. 508, 511 (Bankr. W. D. Okla. 2000) (finding cause to convert a Chapter 11 case to Chapter 7 where the debtor had no business assets to recommence its business and did not have sufficient funds to acquire such assets; its ability to reorganize was solely dependent on its recovery of a substantial sum from pending lawsuits; and its ability to obtain the money needed to reorganize within any reasonable time frame was purely speculative).

22. The Debtor's complete lack of available funds is demonstrated by the fact that the Debtor has failed to pay rent to the Department of Public Lands as required by Lease Agreement LA 15-002S. *See* Bankruptcy Code § 365(d)(3) (requiring commercial real estate leases to be timely paid during pendency of bankruptcy case). The Debtor leases space on public land, with rent due on an annual basis, yet it has been unable to meet its rent obligation due May 1, 2024, for the second five-year period from May 1, 2024 to April 30, 2025. *Id.* The total amount outstanding

is $207,000. Ex. A at ¶¶4-5. Failure to pay rent is a default under Article 27(A) of the Lease and is grounds for termination of the Lease. *Id.* at ¶6. And, as discussed below, in addition to the Debtor/Lessee's violation for failure to pay rent, DPL has grounds to seek termination for the Debtor's failure to maintain insurance.

23.     Additionally, even if the Debtor had the funds to meet it current obligations, complete construction, open its hotel business, and resume casino operations, it has no present ability to do so. The Debtor therefore has no reasonable likelihood of rehabilitation. The issue of rehabilitation for purposes of determining whether to convert a Chapter 11 case to one under Chapter 7 is whether the debtor's business prospects justify continuance of the reorganization effort. *In re Red Door Lounge, Inc.*, 559 B.R. 728 (Bankr. D. Mont. 2016). Here, the Debtor has no business prospects.

24.     The Debtor is years away from generating hotel revenue. The Debtor has been ordered to stop work on its hotel and casino building, and thus the building sits unfinished and inoperable. *See Acosta v. Imperial Pacific International (CNMI), LLC,* Civil Case No. 1:19-cv-0007 (D. N. Mar. I. Jan. 21, 2021) (ECF 37). Debtor has estimated that approximately $150 million will be required to complete construction of its hotel and casino building. Ex. B at ¶7. In addition, it is unclear where Debtor will locate sufficient labor; Debtor has reported to the Commission that the U.S. Department of Labor barred it from hiring certain foreign workers. *Id.* at ¶8. Moreover, as noted above, Debtor is not in compliance with the terms and conditions of its Lease, and DPL intends to ask this Court for relief from the automatic stay so it can pursue enforcement of the numerous Lease violations. Ex. A at ¶10.

25.     The Debtor is also years away from generating casino revenue. Even if it were able to open again in a temporary gaming facility, it does not have the current ability to generate revenue

from gaming. It has already liquidated most of its casino assets. Due to its numerous violations upheld by the NMI Supreme Court, the Debtor's casino license has been suspended since April 2021. Moreover, five complaints seeking revocation are pending. Evidentiary hearings have concluded in two of those actions, with deliberations stayed by the filing of this Case. Yet other violations exist for which complaints have not yet been filed (for example, its failure to appoint a Chief Executive Officer), and the Commission intends to ask this Court for relief from the automatic stay so it can pursue enforcement of the other regulatory violations not addressed by the pending actions. Ex. B at ¶9. Debtor's proposal to settle with the Commission has not been accepted, and the Commission does not intend to agree to a settlement. Ex. C at ¶6. In any event, even if its suspension were lifted, numerous administrative requirements would need to be met in order for Debtor to resume operations; Debtor would need to, among other requirements, present to the Commission a report from Gaming Laboratories International auditing and certifying the proper working of the casino gaming machines; a staffing plan; a complete and comprehensive "go-live" plan for casino operations and surveillance coverages for thorough monitoring; a certificate of occupancy for the physical casino facility; and copies of all U.S. and Commonwealth permits and approvals required for operation; a casino closure plan/standard operating procedure. Ex. B at ¶10.

26.     By remaining in Chapter 11, the Debtor continues to unnecessarily incur the fees and expenses associated with a Chapter 11 reorganization, including, but not limited to, those associated with the preparation and filing of monthly operating reports, incurring quarterly UST Fees, and requirements related to the preparation and solicitation of a disclosure statement and plan of reorganization, all of which only serve to diminish the Estate. Debtor also continues to employ individuals and otherwise continues to spend money that could be used to satisfy its

creditors. In addition, it will continue to accrue significant fees well before it can begin operating. Its Annual License Fee to be paid to the Commonwealth in the amount of $15,502,570.00 will come due August 12, 2024, and its annual Casino Regulatory Fee to be paid to the Commonwealth Casino Commission in the amount of $3,150,000.00 will come due October 1, 2024. The Debtor has represented to the Commission that it believes the CNMI tourist industry does not have a present volume to support its operations.

27. Overall, the Debtor does not have the financial viability to successfully complete a Chapter 11 case, leaving no reasonable possibility of reorganization. Given the state of Debtor's business operations—or lack thereof—there is no justification to continue efforts to reorganize the Debtor's business because there is no business to reorganize. "In the absence of an operating business to reorganize, it makes more sense for the case to proceed under Chapter 7 than under Chapter 11." *In re Green Jane, Inc.*, 2017 WL 2312851, *6 (Bankr. C.D. Cal., 2017) (holding that conversion to Chapter 7 is preferable to appointment of a Chapter 11 trustee, in part, because the debtor had no operating business). The Debtor's affairs can best be resolved in a Chapter 7 case. Thus, cause exists to convert the Case due to the continuing diminution of the Estate and the absence of a reasonable likelihood of rehabilitation.

   b. *Failure to Maintain Appropriate Insurance*

28. Cause exists to convert the Case under section 1112(b)(4)(C) of the Bankruptcy Code because of the Debtor's failure to maintain appropriate insurance that poses a risk to its Estate and to the public.

29. When a Chapter 11 debtor owns real property with structures, the debtor must maintain casualty and liability insurance to protect the estate and the public. *In re Delta AG Group, LLC*, 596 B.R. 186, 196 (Bankr. W. D. La. 2019); *In re M.A.R. Designs & Construction, Inc.*, 653

B.R. 843, 861 (Bankr. S. D. Tex. 2023).[6] The debtor's failure to maintain property and liability insurance in order to protect the estate constitutes "cause" for dismissal or conversion of the case. *In re Delta AG Group*, *LLC*, 596 B.R. at 196; *see also In re Van Eck*, 425 B.R. 54, 60-61 (Bankr. D. Conn. 2010).

30.     Insurance coverage is expressly required by the Lease. Pursuant to Article 19 of the Lease, the Debtor must, upon completion of construction of the Initial Gaming Facility, maintain in force during the entire term of the Lease "fire and damage insurance for the Premises" through "a company or companies authorized to do business in the Northern Mariana Islands." Ex. A at ¶7. Article 19 of the Lease also requires the Debtor/Lessee to reconstruct any damaged permanent improvement on the leased premises. *Id*. Without insurance, the Debtor/Lessee would likely be unable to meet this reconstruction requirement. This poses a risk to the Estate. In addition, because DPL is responsible for the administration of public lands, 1 CMC § 2803(a), and all moneys from the public lands are transferred to the Marianas Public Land Trust ("MPLT") for investment to generate interest for transfer to the Commonwealth (except the reasonable expenses of administration for DPL and MPLT, respectively), NMI. Const. art. XI §§ 5(g) & 6(d), any diminution in the value of public lands poses a risk to the public.

31.     In addition, pursuant to Article 20 of the Lease, the Debtor must, from the commencement date of the Lease, procure and maintain in force during the entire term of the Lease

---

[6] The Commonwealth notes that these cases may not be binding upon the Court, but a search for Ninth Circuit precedent turned up numerous unpublished decisions which support the rationale that failure to maintain insurance is "cause" for conversion to Chapter 7. *See In re Renewable Energy*, *Inc.*, 2016 WL 7188656 (9th Cir. Dec, 2016); *In re Qual Lake Estates Associates*, *L.P.*, 2009 WL 5064538 (9th Cir. Dec. 2009); and *Pryor*, 2016 WL 6835372 (9th Cir. Nov. 2016); *see also* 7 Collier on Bankruptcy ¶ 1112.04 [6][c] (16th ed. 2015) (stating that 1112(b)(4)(C) requires the chapter 11 debtor to maintain the types of insurance necessary to mitigate the risks to the estate and the public arising from the debtor's continued operations).

commercial general liability insurance for the leased premises and its operation. Ex. A at ¶8. The Lease requires a minimum coverage of $50,000.00 for wrongful death, $100,000.00 per person for other tortious occurrence, and $200,000.00 per occurrence. *Id.* Without insurance, the Debtor/Lessee would likely be unable to compensate injured members of the public for wrongful death or other tortious occurrence. This poses a risk to the Estate. In addition, the current hotel/casino building is left unfinished and in disrepair. This makes an injury to the public more likely every day that passes.

32. Notwithstanding these express requirements of the Lease, the leased premises is without any fire and damage insurance coverage and is without any liability insurance coverage. Ex. A at ¶9. In fact, the Debtor/Lessee has not complied with the requirement to maintain insurance since its policy expired on July 5, 2019. *Id*. DPL has notified the Debtor/Lessee that it is in violation of the Lease for its failure to maintain insurance coverage, yet Debtor/Lessee has not cured the violation. *Id*.

33. Thus, cause exists to convert the Case due to the Debtor's failure to maintain appropriate insurance, posing a risk to its Estate and to the public.

## VI. CONCLUSION

34. For the reasons set forth herein, the Commonwealth submits that converting the Debtor's case to Chapter 7 is in the best interests of the Debtor, its creditors, and the Estate and, thus, respectfully requests that this Court enter an order converting the Case to a case under Chapter 7 of the Bankruptcy Code, and for any and all further relief, both at law and in equity, to which the Commonwealth may justly be entitled.

SIGNED June 20, 2024                                Respectfully Submitted,

/s/ _____

Lynn Hamilton Butler (Pro Hac Vice)
Texas Bar No. 03527350
**Husch Blackwell LLP**
111 Congress Ave., Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 226-7318 (Fax)
lynn.butler@huschblackwell.com

EDWARD MANIBUSAN
ATTORNEY GENERAL

By: /s/ *J. Robert Glass, Jr.*
J. Robert Glass, Jr. (F0523)
Chief Solicitor
**Office of the Attorney General**
Caller Box 10007
Saipan, MP 96950
robby_glass@cnmioag.org

**Attorneys for The Commonwealth of the Northern Mariana Islands**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic means via ECF transmission to all Pacer System participants in this bankruptcy case or via United States first-class mail on non-ECF participants per the attached service list, at the time of filing on June 20, 2024.

/s/ *J. Robert Glass, Jr.*
J. Robert Glass, Jr.