1   CHOI & ITO
    Attorneys at Law
2   CHUCK C. CHOI
    ALLISON A. ITO
3   700 Bishop Street, Suite 1107
    Honolulu, Hawaii 96813
4   Telephone: (808) 533-1877
    Fax: (808) 566-6900
5   Email: cchoi@hibklaw.com; aito@hibklaw.com

6   MCDONALD LAW OFFICE
    CHARLES H. MCDONALD II (F0494)
7   2nd Floor ICC, Room 203
    Gualo Rai, Saipan, MP 96950
8   Telephone: (866) 967-7567
    E-Mail: charles@mcdonald.law
9

10  Attorneys for Debtor and Debtor-in-Possession

11                  UNITED STATES DISTRICT COURT
          DISTRICT OF THE NORTHERN MARIANA ISLANDS
12                    BANKRUPTCY DIVISION

13

14  In re                          Case No.  24-00002

15  IMPERIAL PACIFIC              (Chapter 11)
    INTERNATIONAL (CNMI), LLC,
16                                DEBTOR'S COMBINED OPPOSITION TO
               Debtor and         MOTION FOR ORDER APPROVING REPORT
17             Debtor-in-possession.  AND ACCOUNTING [ECF 107] AND
                                  MOTION TO EXCUSE COMPLIANCE WITH
18                                11 U.S.C. §543(B)(1) [ECF 108] FILED BY
19                                CLEAR MANAGEMENT, LTD.

20

21                                Hearing

22                                Date:   July 18, 2024
                                  Time:   8:30 a.m. (ChST)
23                                Judge:  Hon. Ramona V. Manglona

24                                [Relates to ECF 107, 108]

25

26

27

28

1

TABLE OF CONTENTS

I.     LIMITED FACTUAL AND PROCEDURAL BACKGROUND ...........................2
II.    APPLICABLE LAW AND LEGAL STANDARD................................................5
III.   ARGUMENT.....................................................................................................7
       A.     THE PERSONAL PROPERTY (INCLUDING THE VEHICLES) IS
              PROPERTY OF THE ESTATE .................................................................7
       B.     THE MOTION TO APPROVE VEHICLE AUCTION MUST BE
              DENIED....................................................................................................8
       C.     THE MOTION TO EXCUSE COMPLIANCE MUST BE DENIED.........9
              1.     Clear is a Receiver of the Debtor and its compliance with Section
                     543 of the Bankruptcy Code cannot be excused under section 543(d)(2). ..9
              2.     The return of the personal property to the Debtor would better
                     serve the interests of the creditors............................................................10
IV.    CONCLUSION.................................................................................................13

i

**TABLE OF AUTHORITIES**

**Federal Cases**

*Bennett v. Hunter*, 76 U.S. (9 Wall.) 326 (1869) ................................................................ 8

*Dill v. Dime Sav. Bank, FSB (In re Dill)*, 163 B.R. 221 (E.D.N.Y. 1994) ...................... 13

*In re Hydratech Utils., Inc.*, 384 B.R. 612 (Bankr. M.D. Fla. 2008) ............................... 10

*In re Northgate Terrace Apartments, Ltd.*, 117 B.R. 328 (Bankr. S.D. Ohio 1990) ......... 9

*In re Orchards Vill. Invs., LLC*, 405 B.R. 341 (Bankr. D. Or. 2009) ............................. 12

*In re Picacho Hills Util. Co.*, No. 11-13-10742 TL, 2013 Bankr. LEXIS 1733 (Bankr.
   D.N.M. Apr. 26, 2013) ............................................................................................ 11, 13

*In re Sundance, Corp.*, 83 B.R. 746 (Bankr. D. Mont. 1988) ......................................... 10

*In re U.S.A. Parts Supply*, 619 B.R. 619 (Bankr. N.D.W. Va. 2020) .......................... 9, 10

*United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S. Ct. 2309 (1983) ..................... 5

**Federal Statutes and Rules**

11 U.S.C. § 101(11) ........................................................................................................... 7

11 U.S.C. § 541 .................................................................................................................. 5

11 U.S.C. § 541(a)(1) ......................................................................................................... 7

11 U.S.C. § 543(b) .............................................................................................................. 6

11 U.S.C. § 543(d)(1) ....................................................................................................... 10

11 U.S.C. § 543(d)(2) .......................................................................................................... 9

1

2  **DEBTOR'S COMBINED OPPOSITION TO MOTION FOR ORDER
   APPROVING REPORT AND ACCOUNTING [ECF 107] AND MOTION
   TO EXCUSE COMPLIANCE WITH 11 U.S.C. §543(B)(1) [ECF 108]
   FILED BY CLEAR MANAGEMENT, LTD.**

3

4       IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, debtor and debtor-in-

5  possession herein (the "Debtor" or "IPI"), by and through its undersigned counsel, hereby

6  opposes the *Motion for Order Approving Report and Accounting*, filed herein on June 7,

7
   2024, as ECF No. 108 ("Motion to Approve Vehicle Auction") and the *Motion to Excuse*
8
   *Compliance With 11 U.S.C. § 543(b)(1)*, filed herein on June 7, 2024, as ECF No. 108
9
10 ("Motion to Excuse Compliance", and with the Motion to Approve Vehicle Auction, the

11 "Motions) by Clear Management, Ltd. ("Clear").  The Motions stem from the

12
   receivership orders issued in Fanter-3 (Case No. 1:21-cv-00035) and Gray Case (Case
13
   Nos. 1:19-cv-00008 and 1:19-cv-00020), and a prepetition vehicle auction held pursuant
14
15 to the receivership orders which had not been confirmed by the District Court as of the

16 bankruptcy petition date.

17       In the Motion to Approve Vehicle Auction, Clear seeks an order approving the

18
   report and accounting attached to the motion, "confirming" the April 11, 2024 auction of
19
20 eleven vehicles, and authorizing Clear to retain the sale proceeds in escrow, and the keys

21 and documents for unsold vehicles.  *See* ECF 107, at pdf 1.

22       In the Motion to Excuse Compliance, Clear seeks an order excusing it from

23 complying with Section 543(b) of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) and

24 excusing Clear from turning over Personal Property of the Debtor in Clear's possession

25
   ("consisting of keys and documentation relating to vehicles…") to the Debtor.  Clear
26
27 argues that there are two alternative bases to excuse compliance (1) "Clear functions as

28 an assignee for the benefit of creditors," appointed more than 120 days before the Petition

Date; or alternatively (2) excusing Clear from turning over the Personal Property to the Debtor because it would better serve the interests of the creditors under Section 543(d)(1) of the Bankruptcy Code.

I.      **LIMITED FACTUAL AND PROCEDURAL BACKGROUND**

The Debtor is a limited liability company organized under the laws of the Commonwealth of the Northern Mariana Islands (the "Commonwealth").  The Debtor operated a casino for approximately four years, until the COVID-19 Pandemic forced the closure of the casino in March, 2020.

In April 2019, Gray filed a lawsuit against IPI entitled *Gray v. [IPI]*, No. 1:19-cv-00008 (the "Gray Case") in the United States District Court for the District of Northern Mariana Islands (the "District Court").  In July, 2019, Gray filed a second case in the District Court for alleged violations by IPI of Title VII, entitled *Gray v.IPI]*, No. 1:19-cv-00020 which was consolidated with the Gray Case.

On May 30, 2023, the District Court entered its Decision and Order Granting Default Judgment in the amount of $5,686,182.20 (the "Gray Judgment").[1]  *See* ECF 225, Gray Case.

In 2020 and 2021, USA Fanter Corp. Ltd. ("Fanter") sued IPI in the District Court for a mechanics lien and breach of construction contract.[2]  A mechanics' lien was allowed.  In addition, an Amended Judgment in favor of Fanter against IPI of

---

[1] The Gray Judgment is currently on appeal to the Ninth Circuit Court of Appeals.  The Debtor has filed a motion for relief from the automatic stay to continue the appeal.

[2] Fanter also brought an action in 2020 for defamation, which was tried on March 1, 2022, and resulted in a judgment in favor of Fanter in the amount of $500,000.  *See US.A. Fanter Corp. v. Imperial Pac. Int'l (CNMI), LLC*, Civil Action No. 1:20-cv-00005 ("Fanter-2").

$2,089,345.28 was entered.  *See U.S.A. Fanter Corp., Ltd. v. Imperial Pacific International (CNMI), LLC*, 1:20-cv-00003 (D. N. Mar. I.) ("Fanter-I").

      In October, 2021, the District Court entered an order authorizing and directing Clear to sell certain of Debtor's gaming equipment.  *See* ECF 166 (Fanter-1).  From December, 2022 through January, 2024, the District Court entered orders approving seven auctions conducted by Clear of certain of Debtor's gaming equipment.  *See* ECF Nos. 303, 343, 359, 382, 399, and 417 in Fanter-1.

      In Fanter-1, a writ of execution on Debtor's casino gaming machines and vehicles was sought, and on August 2, 2021, a motion for limited appointment of receiver to aid in the execution was filed.  *See* ECF 112, Fanter-1.

      On October 21, 2021, Fanter brought another lawsuit against IPI.  *See* Case No. 1:21-cv-00035 ("Fanter-3").  A judgment by default was entered on November 30, 2022.  *See* ECF 34, Fanter-3.  A writ of execution was entered on June 20, 2023 (ECF 38), but later Fanter stipulated in August 2023 to a joint writ with Civil 20-005.  ECF 41 (Fanter-3).  Clear was appointed a receiver to sell IPI's vehicles and heavy equipment by order entered on January 12, 2024 (the "Fanter Receivership Order").  ECF 49, Fanter-3.  Clear filed an inventory on January 22, 2024.  *See* ECF 51, Fanter-3.

      In 2023, Fanter and Gray obtained writs of execution against certain of the Debtor's personal property (namely, the Debtor's vehicles, furniture and equipment, computer hardware, liquor inventory, dragons and casino-related and security equipment) collectively, the "Personal Property").  *See e.g.*, ECF 246, Gray Case.

      On September 7, 2023, Gray filed a petition to appoint a limited receiver to sell the Personal Property.  *See* ECF 254, Gray Case.

On October 23, 2023, the District Court entered an Order Appointing Clear Management as Limited Receiver for the Sale of IPI's Personal Property. *See* ECF 275, Gray Case.  A similar order was entered in Fanter lawsuit. *See* ECF 37 (Order Granting Plaintiff's Application for Writ of Execution), Fanter-3.

On April 11, 2024, Clear conducted an auction of 11 of the Debtor's vehicles. The auction results have not been approved by the District Court.

On April 19, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") in the United States District Court for the District of the Northern Mariana Islands, bankruptcy division (the "Bankruptcy Court").[3]

On May 13, 2024, Gray and Fanter filed a motion for relief from automatic stay (the "Gray/Fanter Motion for Relief from Stay") to pursue collection efforts against the Debtor.  *See* dkt. # 48

On May 24, 2024, the Debtor filed an opposition to the Gray/Fanter Motion for Relief from Stay (the "Opposition to the Stay Motion"). *See* dkt. #78.

On May 30, 2024, the Bankruptcy Court denied the Gray/Fanter Motion for Relief from Stay.  *See* dkt. # 98 (minutes).

On May 31, 2024, the Court issued an order, which, amongst other things, required Clear to file a motion to show why it should be excused from compliance under Section 543 of the Bankruptcy Code.  *See* dkt. # 101.

---

[3] Although the Debtor has no operations at this time, it has approximately 15 employees, the majority of whom provide security services.

## II.    APPLICABLE LAW AND LEGAL STANDARD

When a debtor files for relief under the Bankruptcy Code, an estate is created. The scope of that estate is determined by the language of Section 541 which states in relevant part that the "commencement of a case . . . creates an estate . . . of all . . . property, wherever located and by whomever held . . . including all legal or equitable interests of the debtor in property as of the commencement of the case…"  11 U.S.C. § 541.

The structure of the Bankruptcy Code, the policy behind it and the legislative history all suggest "that § 541(a)(1)'s scope is broad." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S. Ct. 2309, 2313 (1983) (footnote omitted) (holding that IRS could be required to return personal property seized pre-petition even though the IRS held a security interest in the property by virtue of its tax lien).

Section 541 also brings into the estate "any property made available to the estate by other provisions of the Bankruptcy Code.  Several of these provisions bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced."  *Whiting Pools*, 462 U.S. at 205, 103 S. Ct. at 2313-2314 (citation and footnote omitted).  This includes property "in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced." *See Whiting Pools*, 462 U.S. at 205, 103 S. Ct. at 2313-14.

> Congress presumed that **the assets of the debtor would be more valuable if used in a rehabilitated business** than if 'sold for scrap.' . . . . Thus, to facilitate the rehabilitation of the debtor's business, all the debtor's property must be included in the reorganization estate.

*Whiting Pools, Inc.*, 462 U.S. at 203, 103 S. Ct. at 2312-13 (citations omitted) (emphasis added).

Under Section 543(b), property held by a custodian, such as a state-court appointed receiver, must be turned over to the debtor, together with an accounting regarding that property:

(a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.

(b)A custodian shall—

    (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and

    (2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.

(c)The court, after notice and a hearing, shall—

    (1) protect all entities to which a custodian has become obligated with respect to such property or proceeds, product, offspring, rents, or profits of such property;

    (2) provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian; and

    (3) surcharge such custodian, other than an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, for any improper or excessive disbursement, other than a disbursement that has been made in accordance with applicable law or that has been approved, after notice and a hearing, by a court of competent jurisdiction before the commencement of the case under this title.

(d)After notice and hearing, the bankruptcy court—

    (1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property, and

    (2) shall excuse compliance with subsections (a) and (b)(1) of this section if the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days

before the date of the filing of the petition, unless compliance with such subsections is necessary to prevent fraud or injustice.

The Bankruptcy Code defines a "custodian" as

**(A)** receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
**(B)** assignee under a general assignment for the benefit of the debtor's creditors; or
**(C)** trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

*See* 11 U.S.C. § 101(11).

**III.   ARGUMENT**

A.   THE PERSONAL PROPERTY (INCLUDING THE VEHICLES) IS PROPERTY OF THE ESTATE

Section 541 defines property of the bankruptcy estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

The Debtor's estate includes, without limitation, the vehicles, which were the subject of a writ in the Fanter case.  ECF 35-4, Fanter-3.

The Order relating to the vehicles contained the following provisions:

(7) Upon this Court's approval as described herein, the winning bidder shall receive from the Receiver a confirmation of the winning bid reflecting the amount of the bid, items purchased, and confirmed receipt of the required deposit;

(8) If the Court does not approve the winning bid, the winning bid shall be returned to the winning bidder within seven (7) days after the Court's disapproval;

(9) After the Court's approval and receipt of full payment, Receiver shall begin preparing all necessary transfer documents and deliver them to the

winning bidder. Within seventy-two (72) hours of receiving the necessary documents, the winning bidder shall bear the burden and costs of removing the Properties from IPI's premises.

ECF 49, Fanter-3.

Aside from the first auction sale of liquor inventory, which sale confirmation order was entered on January 24, 2024, the Personal Property (including the vehicles) in the possession of Clear constitutes property of the bankruptcy estate.

As the District Court did not confirm the sale of the eleven vehicles (which received bids in the April 11, 2024 auction) before the Petition Date, these eleven vehicles plus the Debtor's other vehicles in Clear's possession remain property of the estate, along with the keys and documentation to such vehicles.  Proceeds of sale in the possession of Clear with respect to the prior auctions which were confirmed but not previously distributed also constitute property of the estate.

Thus, title to the Personal Property (aside from certain liquor) remained in the Debtor even though it was in Clear's custody as of the Petition Date.  *See Bennett v. Hunter*, 76 U.S. (9 Wall.) 326, 336-37 (1869) ("upon public sale, became actually vested in the United States or in any other purchaser; but not before such public sale. It follows that in the case before us the title remained in the tenant for life with remainder to the defendant in error, at least until sale; though forfeited, in the sense just stated, to the United States").

B.      THE MOTION TO APPROVE VEHICLE AUCTION MUST BE DENIED

Since the Personal Property remains property of the Debtor's bankruptcy estate, it is protected by the automatic stay.  At the May 30, 2024 hearing, the Bankruptcy Court denied the Gray/Fanter Motion for Relief from Stay (without prejudice).  *See* ECF 98.

As such, the automatic stay remains in place <u>and</u> any disposition of the Debtor's personal property (including the relief sought in the Motion to Approve Vehicle Auction) violates the automatic stay.  However, Clear has not bothered to seek relief from the automatic stay to approve the vehicle auction sale.  Accordingly, the Motion to Approve Vehicle Auction must be denied.

## C.   <u>THE MOTION TO EXCUSE COMPLIANCE MUST BE DENIED.</u>

**1.   Clear is a Receiver of the Debtor and its compliance with Section 543 of the Bankruptcy Code cannot be excused under section 543(d)(2).**

Clear cannot dispute that it is a receiver of the Debtor and must comply with Section 543 of the Bankruptcy Code.  However, Clear is not a "functional equivalent of an assignee", and compliance cannot be excused under Section 543(d)(2) of the Bankruptcy Code.  *See* Motion to Excuse Compliance (ECF 108) at pdf 2; 11 U.S.C. § 543(d)(2).

As one bankruptcy court explained, the stark difference between a "receiver" and an "assignee for the benefit of the debtor's creditors" is that an assignee is a person / entity to whom the entire debtor's estate is **voluntarily** transferred for the benefit of creditors." *In re U.S.A. Parts Supply*, 619 B.R. 619, 625 (Bankr. N.D.W. Va. 2020); *see also In re Northgate Terrace Apartments, Ltd.*, 117 B.R. 328 (Bankr. S.D. Ohio 1990).

> Under § 543(d)(2) Congress specifically elected to place an assignee for the benefit of creditors in a different position than a state court receiver, obviously recognizing that the trust relationship reposed in the assignee warranted continual possession of the [d]ebtor's property in that person.

*In re U.S.A. Parts Supply*, 619 B.R. at 625 (citation omitted).

Here, the Debtor did **not voluntarily** assign its personal property to Clear "to be administered for the benefit of its creditors." *See id.; see e.g.*, *In re Sundance, Corp.*, 83 B.R. 746, 747-48 (Bankr. D. Mont. 1988) ("A plain reading of § 101(10) with § 543(d)(2) convinces this court that [§ 543(d)(2)] is not applicable to the facts here, where a state court receiver is placed in possession of the [d]ebtor's property through judicial process . . . ."). Pursuant to the Receivership Orders entered in the Gray and Fanter proceedings, Clear took possession of certain of Debtor's personal property. Thus, by definition, Clear cannot be an assignee for the benefit of creditors.

Clear cites to *In re Hydratech Utils., Inc.*, 384 B.R. 612 (Bankr. M.D. Fla. 2008) for the proposition that a court receiver may be a functional equivalent of an assignee for the benefit of creditors. *See* Motion to Excuse Compliance at pdf 2. However, the debtor in the *Hydratech* case had only <u>one outside creditor</u> and two other creditors who were insiders of the debtor. Here, the Debtor's Schedules identifies thousands of actual and potential creditors, and Clear should not be allowed to make disbursements to a very small subset of the Debtor's creditors, specifically, only to two of those creditors who obtained federal court judgments against the Debtor.

As Clear is not an assignee for the benefit of all (or even most) the Debtor's creditors, its compliance with Section 543(b) of the Bankruptcy Code <u>cannot</u> be excused under Section 543(d)(2) and the Motion to Excuse Compliance must be <u>denied</u>.

### 2. The return of the personal property to the Debtor would better serve the interests of the creditors.

The return of the personal property to the Debtor would better serve the interests of the creditors. *See* 11 U.S.C. § 543(d)(1). In addition to the three factors identified in

the Motion to Excuse Compliance (i.e., whether there will be sufficient income to fund a successful reorganization; whether the debtor will use the property for the benefit of its creditors; and (3) whether there has been mismanagement by the debtor), the courts weigh several factors in determining whether it would better serve the interests of creditors for a custodian to return of debtor's property, including:

> (1) The likelihood of reorganization, and whether funds held by the receiver are required for reorganization;
> (2) Whether the debtor mismanaged the property;
> (3) Whether turnover would injure the creditors;
> (4) Whether the debtor would use the property for the creditors' benefit;
> (5) Whether there are avoidance issues raised with respect to property retained by a receiver, because a receiver does not possess avoiding powers for the benefit of the estate; and
> (6) The fact that the automatic stay has deactivated the state court Receiver Action.

*In re Picacho Hills Util. Co.*, No. 11-13-10742 TL, 2013 Bankr. LEXIS 1733, at *20-21 (Bankr. D.N.M. Apr. 26, 2013).

The Debtor submits that *Picacho* Factors 1, 2, 3, 4, and 6 weigh in favor of requiring the Clear, as receiver, to comply with Section 543 of the Bankruptcy Code and turnover the personal property to the Debtor.  The Debtor commenced the bankruptcy case so that it could pay its creditors in an orderly fashion and in accordance with the Bankruptcy Code's priority scheme.  The bankruptcy case is necessary to reach a just and equitable distribution to the entire creditor base, as the pre-petition receiverships only benefits approximately 2 of the over 1,200 creditors.

It is early in the bankruptcy proceeding, but the amounts being held by Clear should be made available to all creditors based upon their order of priority.

More importantly, as noted above, the automatic stay remains in place. *See In re Constable Plaza Assocs. L.P.*, 125 B.R. at 104 ("if the basic action in which the state court receiver was appointed is no longer active, there is no reason to excuse the receiver's compliance with 11 U.S.C. § 543(b)(1) in order to activate a state court receiver whose appointment was ancillary to the enjoined foreclosure action."). Unless and until the Bankruptcy Court grants relief from the automatic stay, the personal property should be turned over to the Debtor.

The Court's observation that there needs to be an orderly process of administering multiple claims against the single defendant was correct. Bankruptcy was designed to provide an orderly process of administering claims and to ensure the same treatment of similarly situated creditors. Piecemeal relief to pursue a receivership sale and distribution is contrary to the purpose of the Bankruptcy Code.

This case is factually distinguishable from the *Orchards Village, Dill*, and *Picacho* cases cited by Clear. For example, the debtor in *Orchards Village* owned property which was leased to another entity who operated an independent living, assisted living and memory care services to approximately 80 elderly residents. In that case, the payments from the residents were going to the debtor, but the debtor was not paying its bills. *See In re Orchards Vill. Invs., LLC*, 405 B.R. 341 (Bankr. D. Or. 2009). The Debtor submits that there is no evidence of mismanagement by the Debtor. IPI was forced to shut down due to the pandemic. It has had no cash flow for the past four years.

In *Dill*, the debtor owned two residential properties, which were foreclosed upon and a receiver appointed prepetition. However, the properties had several maintenance and construction deficiencies, and the debtor failed to, amongst other things, obtain

certificates of occupancy, and had expired building permits. *See Dill v. Dime Sav. Bank, FSB (In re Dill)*, 163 B.R. 221, 222 (E.D.N.Y. 1994). The Debtor concedes that nearly all of the vehicles have sat idle in the past four years because tourism came to a halt due to COVID-19 pandemic travel restrictions, and the casino license was suspended. Contrary to Clear's allegations, the Debtor is aware of only one (very old) vehicle being stolen.

In *Picacho Hills*, the receiver was selling all of the debtor's assets (e.g., water tank, pumps, sewage treatment system and water rights). Unlike the debtor in *Picacho Hills* case cited by Clear, the receiver in this case is trying to sell an important component of equipment used in the Debtor's operations. *See In re Picacho Hills Util. Co.*, No. 11-13-10742 TL, 2013 Bankr. LEXIS 1733 (Bankr. D.N.M. Apr. 26, 2013). While the vehicles individually might have a greater tangible dollar value, when put into service, it increases the value of the casino operations as a whole, and the overall cashflow. Another distinguishable fact is that the Debtor has obtained interim debtor-in-possession financing to allow it funds to operate during the chapter 11 proceeding. The chapter 11 case is still in its nascent stage, however,

Given the posture of this case, the Debtor's right under the Bankruptcy Code as debtor-in-possession, and the status of the property and proceeds as property of the estate, Clear's request to be excused from compliance with 543 of the Bankruptcy Code should be denied.

## IV.    CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that Clear's Motions be denied.

13

1     DATED: Honolulu, Hawaii, June 20, 2024.

2

3                         /s/ Chuck C. Choi

CHUCK C. CHOI

ALLISON A. ITO

4                         CHARLES H. McDONALD II (F0494)

Attorneys for Debtor and

5                         Debtor-in-Possession

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14