Bruce Berline
LAW OFFICE OF BRUCE BERLINE, LLC
Security Title Building
Isa Drive, Capitol Hill
PO Box 5682 CHRB
Saipan, MP 96950
Tel.: (670) 233-3663
Fax:  (670) 233-5262
Email: bberline@gmail.com

Aaron Halegua
AARON HALEGUA, PLLC
524 Broadway, 11th Floor
New York, New York 10012
Tel.: (646) 854-9061
Email: ah@aaronhalegua.com

Attorneys for Joshua Gray

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS
## BANKRUPTCY DIVISION

| | |
|---|---|
| In re<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,<br><br>Debtor and<br>Debtor-in-Possession. | Case No. 1:24-bk-00002<br><br>**NOTICE CONCERNING $20 MILLION TRANSFER TO DEBTOR IPI**<br><br>Hearing Date: June 27, 2024<br>Hearing Time: 8:30 a.m.<br>Judge: Hon. Ramona V. Manglona |

Joshua Gray, in his opposition to the Debtor's motion for a final approval of the DIP financing ("DIP Loan Motion"), filed on June 17, 2024 (ECF No. 117), stated the following:

Gray also seeks to point out another important fact to be considered in evaluating the DIP Loan Motion. Previously, the Debtor noted that it received $20 million from Kyosei Bank…. **Indeed, in his declaration in support of the Debtor's request for a TRO to stop the revocation of its license, Howyo Chi stated that Kyosei had made $300 million available to the Debtor and "made the first $20 Million available to IPI" in August 2023. (*See IPI*

*v. CNMI, et al.*, **No. 24-cv-0001, ECF No. 3 at 13-14, ECF No. 3-2 ¶¶ 32-34).** Now, the Debtor and Howyo Chi make no mention of this loan offer or the $20 million that was already loaned. Nor does the Debtor account for the $20 million that was already loaned on the schedules that it filed. (ECF No. 74). Why does the Debtor need Mr. SIT if Kyosei already committed $300 million? What happened to the $20 million already loaned? What were the terms of that loan? These are just more questions that must be answered before the DIP loan can be seriously considered. (ECF No. 117 at 2–3) (emphasis added).

During a hearing on the DIP Loan Motion on June 21, 2024, the Court ordered the Debtor to be prepared to address the status of these $20 million in funds at the next hearing. (ECF No. 134). In order to ensure there is no confusion, Gray is now filing as appendices to this notice those documents that were cited or referenced in his opposition and to which the Debtor has been ordered to respond.

Specifically, attached as **Appendix A** is the sworn declaration by Howyo Chi, dated February 26, 2024, filed in the proceeding *IPI v. CNMI, et al.*, No. 24-cv-0001 as ECF No. 3-2. Paragraph 34 of that declaration reads: "On August 1, 2023, and August 2, 2023, through its wholly owned subsidiary, Toshisouken Invest Bank Co., Ltd, Kyosei made the first $20 Million **available to IPI to cover its urgent needs for capital**. See Exhibit 14 (Wiretransfer record and Shareholder Record)." (*IPI v. CNMI, et al.*, No. 24-cv-0001, ECF No. 3-2 ¶ 34) (emphasis added). In paragraph 2 of Mr. Chi's declaration, the term "IPI" is defined as the Debtor entity, Imperial Pacific International (CNMI), LLC. Hence, the money is intended for the Debtor's use (not for the parent company's use or Mr. Ji's personal use) and thus should have been listed on IPI's schedules.

Attached as **Appendix B** is the document originally filed as Exhibit 14 to Mr. Chi's declaration, which he described as the "Wiretransfer record and Shareholder Record." (*IPI v. CNMI, et al.*, No. 24-cv-0001, ECF No. 3-17).

Attached as **Appendix C** is the "Memorandum of Understanding" concerning the investment by Kyosei Bank Group, which was originally filed as Exhibit 12 to Mr. Chi's declaration. (*IPI v. CNMI, et al.*, No. 24-cv-0001, ECF No. 3-15).

Dated: June 24, 2024

Respectfully submitted,

_____/s/_____
Aaron Halegua
Bruce Berline

Attorneys for Joshua Gray

# APPENDIX A

Stephen J. Nutting
Law Office of Stephen J. Nutting
6th Floor Marianas Business Plaza
P.O. Box 5093 Saipan, MP 96950
Michael Chen
Michael Chen Law Offices
7330 Edna Ave.
Las Vegas, NV 89117
(*Pro Hac Vice* Pending)

*Attorneys for Plaintiff IPI (CNMI) LLC*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| Imperial Pacific International (CNMI) LLC, <br><br> Plaintiff, <br><br> Vs. <br><br> Commonwealth of the Northern Mariana Islands, Arnold Palacios, governor of CNMI, in his official and personal capacities; Edward C. Deleon Guerrero, Chairman of CCC, in his official and personal capacities; Rafael S. Demapan, Vice Chairman of CCC, in his official and personal capacities; Mariano Taitano, Commissioner of CCC, in his official and personal capacities; Martin Mendiola, Commissioner of CCC, in his official and personal capacities; Ramon M. Dela Cruz, Commissioner of CCC, in his official and personal capacities; Andrew Yeom, Executive Director of CCC, in his official and personal capacities; <br><br> Defendants. | Case No.  1:24-cv-00001 <br><br> **DECLARATION OF HOWYO CHI IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTARAINING ORDER** |

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com | Call: 626.249.2002x

I, Howyo Chi, hereby declare:

1.   I am over the age of eighteen, competent to make this declaration, and all statements made in this declaration are based on my personal knowledge unless specifically indicated otherwise.

2.   At all times relevant to this matter, I was and still is employed by IPI (CNMI) LLC. (hereinafter referred to as "IPI"). I currently serve as the executive director of IPI.

3.   I submit this declaration in support of IPI (CNMI) LLC's Emergency Motion for Temporary Restraining Order.

4.   In March 2014, the Commonwealth of Northern Mariana Islands ("CNMI") announced that it would hold a competitive bidding process for the first ever casino license to be issued by the CNMI. On July 8, 2014, the CNMI enacted Public Law 18-56 to allow for the issuance of an exclusive gaming license for the operation of a Casino in the Commonwealth.

5.   The CNMI decided to issue such a license because it "was faced with significant economic challenges including a significant reduction of government revenues, unfunded government retirement obligations, reduction of the economy, and lack of economic opportunity for residents" and it determined that "the issuance of an exclusive casino license on the island of Saipan with specific development requires that are meant to provide immediate economic stimulus and long-term benefits to the community" was necessary to address the economic challenges facing the CNMI. The CNMI's authority to issue the license derived from Public Law 18-56.

6.   IPI, through one of its directors, Ms. Cai Ling Li, executed the CLA on 12 August 2014. The Lottery Commission executed the CLA for the CNMI. The Acting Attorney General of the CNMI, Mr. Gilbert Bimbrich, signed the CLA as well. See **Exhibit 1.** (CLA).

7.   Under Article 33 of the CLA, "[t]his License Agreement is to be interpreted under the laws of the Commonwealth of the Northern Mariana Islands and the exclusive jurisdiction of the courts thereof."

8.   Paragraph 2 of the CLA provided that "[u]pon issuance of the Casino License the authority of the Lottery Commission over this License shall cease and the Office of the Governor shall have authority for enforcement of the terms and conditions of this License Agreement except for

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com | Call: 626.249.2002x

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com | Call: 626.249.2002x

enforcement of the terms and conditions of this License Agreement except for the elements specifically identified for control by the Casino Commission, as identified in section 3 below." Section 3 identifies the "Commonwealth Casino Commission" (or "CCC") as a commission established pursuant to the Act that "shall have authority for the approval of all casino operations and gaming activities conducted under the Casino License... The authority of the Casino Commission includes the ability to suspend or revoke the Casino License, in accordance with the requirements of the Commonwealth Administrative Procedure Act, for violation of the Rules."

9.    Paragraph 6 of the CLA required IPI to pay an Annual License Fee of $15,000,000. IPI dutifully paid the Annual License Fee each year from 2015 and 2019.

10.  The CLA does not require IPI to pay any other fees to CNMI in addition to the Annual License fee.

11.  On December 4, 2015, the CNMI promulgated Public Law 19-24, which imposed an obligation on IPI to pay an annual "Casino Regulatory Fee" of $3,000,000 on or before October 1 of each year beginning October 1, 2015.

12.  Under Public Law 19-24, the fee is due to CCC "regardless of the actual costs incurred by the [CCC]."

13.  IPI paid the Casino Regulatory Fee each year from 2016 through 2019.

14.  CCC itself is entirely funded from this annual regulatory fee collected from IPI and its affiliates. See **Exhibit 2** (CCC Annual Reports).

15.  On October 28, 2016, CCC issued the Commonwealth Casino Commission Rules and Regulation, which are codified as NMIAC § 175 -10.1.

16.  In January 2020, to try and contain the spread of COVID-19 on CNMI, Governor Ralph Deleon Guerrero Torres issued Executive Order 2020-01, which based on my understanding placed CNMI under a state of emergency to combat the growing pandemic. The emergency measures included banning all visitors from mainland China from entering the CNMI. Over the course of 2020, the CNMI renewed its state of emergency four times and adopted numerous other restrictions on inbound tourism and on activities on the islands. On March 7, 2020, I understand that the government imposed a 14-day government quarantine on travelers entering

the CNMI and restricted all gatherings of more than 25 people in a single room. On March 30, 2020, I understand that the government extended these measures by creating a curfew from 7:00pm to 5:00am. I also understand that the CNMI's largest airline, Star Marianas Air, suspended all inter-island flights between Rota, Saipan and Tinian islands. As a result of these measures, it is my understanding that CNMI had little to no tourists entering the CNMI beginning in January 2020 and CNMI was considered in "lockdown" beginning in March 2020, essentially cutting off all nonessential economic activity.

17.  Under these conditions, IPI was ultimately forced to close its premises and cease all operations in the casino on March 17, 2020. The COVID-19 pandemic and protective measures resulted in IPI earning almost no revenue for the vast majority of 2020. The loss of almost all revenue in 2020, combined with the impact of the prior unexpected natural disasters and labor law changes, placed the company in dire financial straits. In particular, IPI's revenue decreased from approximately $412 million in 2018, to approximately $68 million in 2019, to approximately $3.1 million in 2020.

18.  The Executive Director of the CCC initiated five complaints against IPI in 2020, later consolidated into Enforcement Action 2020-001 (encompassing actions 2020-001 and 2020-002) and Enforcement Action 2020-003 (encompassing actions 2020-003, 2020-004 and 2020-005), as follows:

a)  Complaint 2020-001 included claims for violations of the CLA based on IPI's failure to make Community Benefit Contributions in certain years;

b)  Compliant 2020-002 included claims for violations of Commonwealth law and the CLA based on IPI's failure to pay the Annual License Fee for 2020;

c)  Complaint 2020-003 included claims for violation of a prior CCC order (2020-003) requiring IPI to maintain at least $4.2 million in cash or cash equivalents in a bank in the CNMI or United States and for IPI's executives to detail the means by which they would comply with that order;

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com | Call: 626.249.2002x

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com | Call: 626.249.2002x

d) Complaint 2020-004 included claims for violations of a prior CCC order (2020-004) requiring IPI to pay accounts payable over 89 days old and to certify compliance with that order;

e) Complaint 2020-005 included claims for violation of Commonwealth law and the CLA for IPI's failure to pay the Casino Regulatory Fee of $3,150,000.00 for 2020

19. Based on information provided to me by counsel, I understand that on February 25 and March 2, 2021, the CCC held evidentiary hearings to address the charges against IPI. I understand that the CCC only heard from one witness, the CCC's Audit Manager, who testified that the auditors who prepared IPTs financial statement had raised concerns regarding its ability to operate as a going concern and that IPTs operations had halted and its financial position had worsened due to the COVID-19 pandemic.

20. Based on information provided to me by counsel. I understand that on April 22, 2021, the CCC held a hearing on these enforcement actions and issued Order No: 2021-002. The Order suspended IPI's gaming license, ordering IPI to pay a total of $18.65 million that it found was due under the CLA's Annual License Fee and Annual Regulatory Fee, and imposing a total of $6.6 million in penalties against IPI. The Order also required IPI to comply with previous Orders issued by the CCC. See **Exhibit 3** (Commission Order No. 2021-002).

21. On Nov. 5, 2021, IPI appealed the CCC's Order in the Superior Court for the Commonwealth of the Northern Mariana Islands, arguing that the CCC's Order was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law and unwarranted by the facts. IPI's primary argument was that the CCC failed to recognize the doctrine of *force majeure* despite the presence of the *force majeure* provision in the CLA and the clear, severe impact of a *force majeure* event, the COVID-19 pandemic, on IPI's ability to comply with its obligations.

22. On March 15, 2022, the Superior Court of CNMI affirmed the CCC's order.

23. On April 11, 2022, IPI appealed the Order issued by the Superior Court of CNMI to the Supreme Court of CNMI.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com | Call: 626.249.2002x

24.  On September 25, 2023, the CNMI Supreme Court affirmed the trial court's ruling in part and reversed it in part, and asked CCC to "decide on a reasonable deadline for IPI to pay" the annual license fees for 2020 and the following years. The CNMI Supreme Court remanded the matter back to the Commission for further proceedings consistent with the opinion.

25.  On October 16, 2023, CNMI Superior Court thus issued its order "return[ing] this matter to CCC for proceedings consistent with the CNMI Supreme Court's" order. See **Exhibit 4.** (CNMI Superior Court Order).

26.  On November 30, 2023, without any further hearing or proceedings, CCC issued a "Notice of Payment Deadline" and unilaterally determined that a "reasonable deadline" for IPI to pay the $62,010.280.00 is "30 days from receipt of this notice." See **Exhibit 5.** (Notice of Payment Deadline).

27. On September 17, 2021, Andrew Yeom, in his official capacity as Executive Director of CCC, filed five complaints against IPI with CCC.

a)  Complaint No. 2021-001 alleges breach of the CLA by IPI for its failure to pay the annual license fee for year 2020 under the CLA.

b)  Complaint No. 2021-002 alleges that IPI failed to maintain minimum capital requirements set by CCC. See **Exhibit 6.** (Complaint 2021-002).

c)  Complaint No. 2021-003 alleges that IPI failed to pay the annual regulatory fee for year 2020. **Exhibit 7.** (Complaint 2021-003).

d)  Complaint No. 2021-004 alleges breach of the CLA by IPI for its failure to pay the annual license fee for year 2021 under the CLA.

e)  Complaint No. 2021-005 alleges that IPI failed to pay the annual regulatory fee for year 2021.

28.  On December 13, 2023, Andrew Yeom, in his official capacity as Executive Director of CCC filed a motion with CCC and requested CCC to issue an order setting a Revocation Hearing for Complaints No. 2021-002 and 2021-003. See **Exhibit 8.** (Motion to Set Revocation Hearing).

29. On December 27, 2023, IPI filed an action before this Court against CCC, with Case No. 1:23-cv-00016. The 1:23-cv-00016 case is similar to the instant action with respect to the factual and legal issues presented.

30. On January 26, 2024, IPI and CCC stipulated to dismiss the case No. 1:23-cv-00016 without prejudice. IPI and CCC have been engaged in active settlement negotiations which have been the subject of press coverage, and as a result the parties stipulated to postpone the revocation hearing until February 28, 2024. See **Exhibit 9.** (Joint Stipulation to Postpone Revocation Hearing)

31. However, despite these ongoing settlement discussions, see **Exhibit 10**, CCC plans to proceed with the revocation hearing on February 28, 2024. **Exhibit 11**. (Email from CNMI Assistant Attorney General Ms. Blaise).

32. IPI has been actively seeking additional funding sources. On July 28, 2023, the parent company of IPI, Imperial Pacific Holdings Ltd. ("IPIH"), entered into a "Memorandum of Understanding on Investment and Cooperation" with Kyosei Bank Corp, where Kyosei agreed to invest a total of $300M in order to resume the operation of IPI in Saipan. See **Exhibit 12.** (MOU between IPIH and Kyosei)

33. Based upon information provided by Kyosei, Kyosei is a large Japanese conglomerate established in 1998 and has strong interest in developing tourism industry in Saipan. See **Exhibit 13** (Presentation Material Prepared by Kyosei).

34. On August 1, 2023, and August 2, 2023, through its wholly owned subsidiary, Toshisouken Invest Bank Co., Ltd, Kyosei made the first $20 Million available to IPI to cover its urgent needs for capital. See **Exhibit 14** (Wiretransfer record and Shareholder Record).

35. Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and execute this declaration in Saipan, CNMI, on February 26, 2024.

By:  _/s/ Howyo Chi_
Howyo Chi

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

# APPENDIX B

# EXHIBIT
# 14

ZK20200401

申請日： 令和5年8月1日

## 関係会社　振込・振替・支払申請書

| 本部長 | 副本部長 | 確認者 |
|---|---|---|
|  | 芳賀 | |

会社名：都市綜研インベストバンク株式会社

事業部名： 財務戦略本部

氏名： 中野　洋子　印
※支払依頼書はコピー保管のこと
※請求書原本を添付のこと
※関連会社の場合は、本部長の押印欄を社長と読み替えること

### ■支払先情報

| 支払先名 | JI XIAOBO | | | 振込手数料 | 当社負担 |
|---|---|---|---|---|---|
| 振込先銀行 | 三井住友銀行 | | 支店名 | 渋谷支店 | |
| 口座情報 | 普通 | 口座番号 | 9795762 | (カナ)※必須 | ジ　シヨウボ |
| | | | | 口座名義 | JI XIAOBO |
| 支払期日 | 令和5年8月1日 | 支払方法 | 銀行振込 | 備考(その他の場合記載) | |
| 出金指定口座※ある場合のみ右記載 | | | 銀行 | 本・支店 | NO. |

| 有無選択 | 稟議書有無 | 金　額 | 証票 | 内　　容 |
|---|---|---|---|---|
| 有 | No. | 1,426,900,000 円 | ☑ | 手付金およびサービス契約に基づく手付金(1/2回目)<br>手付金額USD20,000　半金USD10,000 X 142.69円 |
| 無 | No. | 円 | ☐ | |
| 有 | No. | 円 | ☐ | |
| 有 | No. | 円 | ☐ | |
| 有 | No. | 円 | ☐ | |
| 合　　計 | | 1,426,900,000 円 | ※5件以上になる場合は、別申請書にて申請してください。<br>(備考) | |

【当社支払条件以外になる理由(当社支払条件：当月末〆　翌月末支払)】

(理由)

| 現金受領 |
|---|
| |

| 財務部長 | 財務担当 | 経理担当 |
|---|---|---|
| 芳賀 | | |

ZK20200401                                    Application Date:    August 1, 2023

## Affiliated Company: Application for Transfer and Payment

| General Manager | Deputy General Manager | Verifier |
|---|---|---|
| | Haga | / |

Company Name: Toshisouken Investbank Co., Ltd.
Division Name: Financial Strategy Division
Name:        Yoko Nakano                                    Seal
*Please keep a copy of the payment request form.
*Please attach the original invoice.
*In the case of an affiliated company, the seal of the general manager should be read as that of the president.

■Payee information

| Name of payee | JI XIAO BO | | | | Bank transfer fee | Paid by our company |
|---|---|---|---|---|---|---|
| Payee Bank | Sumitomo Mitsui Banking Corporation | | | Branch name | Shibuya branch | |
| Account information | Ordinary | Account No. | 9795762 | (Kana)*Required Account name | JI XIAO BO JI XIAO BO | |
| Payment date | August 1, 2023 | Payment method | | Bank transfer | Remarks (if other, please specify) | |
| Designated account for withdrawal * (*Write on the right only if available) | | | | Bank | Headquarters/Branch Office | NO. |

| Yes or No selection ↓ | With or without a written request for approval | Amount | Voucher | Contents |
|---|---|---|---|---|
| Yes | NO. | 1,426,900,000 yen | ☑ | Deposit under deposit and service agreement (1/2nd) Deposit amount USD20,000 Half price USD10,000X142.69 yen |
| NO | NO. | yen | ☐ | |
| Yes | NO. | yen | ☐ | |
| Yes | NO. | yen | ☐ | |
| Yes | NO. | yen | ☐ | |
| Total | | 1,426,900,000 yen | *If there are more than 5 applications, please apply with a separate application form. (Remarks) | |

[Reason for being outside our payment terms (our payment terms: closing at the end of the month, payment at the end of the following month)
（Reason)

| Receipt of cash |
|---|
| |

| Finance director | Treasurer | Accounting |
|---|---|---|
| Haga | Nakano | |

# CERTIFICATE OF TRANSLATION

I,  Luo Qingrong                                    , am competent to translate from
        (name of translator)

      Japanese                              into English, and certify that the translation of
        (language)

      $10M Payment to Ji on August 1, 2023                                    
        (name of document)

is true and accurate to the best of my abilities.

_____          _____Luo Qingrong_____
    (signature of translator)                    (typed/printed name of translator)

**Room 707, Building 11, Oak Bay, Cangshan District, Fuzhou City, Fujian Province, China**
        (address of translator)


        (address of translator)

      13960957932                    
        (telephone number of translator)

ZK20200401

申請日： 令和5年8月2日

## 関係会社　振込・振替・支払申請書

| 本部長 | 副本部長 | 確認者 |
|---|---|---|

会社名：都市綜研インベストバンク株式会社

事業部名：　財務戦略本部

氏名：　　依田　麻友美　　　㊞

※支払依頼書はコピー保管のこと
※請求書原本を添付のこと
※関連会社の場合は、本部長の押印欄を社長と読み替えること

### ■支払先情報

| 支払先名 | | JI XIAOBO | | | 振込手数料 | 当社負担 |
|---|---|---|---|---|---|---|
| 振込先銀行 | | 三井住友銀行 | | 支店名 | | 渋谷支店 |
| 口座情報 | 普通 | 口座番号 | 9795762 | (カナ)※必須 | | ジ ショウボ |
| | | | | 口座名義 | | JI XIAOBO |
| 支払期日 | 令和5年8月3日 | 支払方法 | 銀行振込 | 備考(その他の場合記載) | | |
| 出金指定口座※ある場合のみ右記載 | | | 銀行 | | 本・支店 | NO. |

| 有無選択↓ | 稟議書有無 | 金　額 | 証票 | 内　　容 |
|---|---|---|---|---|
| 有 | No. | ~~1,431,000,000~~ 円 ☑ | | 手付金およびサービス契約に基づく手付金(2/2回目)<br>手付金額USD20,000　半金USD10,000 X ~~143.1~~円 |
| 無 | No. | 1,430,600,000 円 ☐ | | 143.06 |
| 有 | No. | 円 ☐ | | |
| 有 | No. | 円 ☐ | | |
| 有 | No. | 1,430,600,000 円 ☐ | | |
| 合　　計 | | ~~1,431,000,000~~ 円 | | ※5件以上になる場合は、別申請書にて申請してください。<br>(備考) |

### 【当社支払条件以外になる理由(当社支払条件：当月末〆　翌月末支払)】

(理由)

| 現金受領 |
|---|
| |

| 財務部長 | 財務担当 | 経理担当 |
|---|---|---|



ZK20200401                                        Application Date:    August 2, 2023

**Affiliated Company: Application for Transfer and Payment**

| General Manager | Deputy General Manager | Verifier |
|---|---|---|
| | Haga | / |

Company Name: Toshisouken Investbank Co., Ltd.
Division Name: Financial Strategy Division
Name: Mayumi Yoda      Seal
*Please keep a copy of the payment request form.
*Please attach the original invoice.
*In the case of an affiliated company, the seal of the general manager should be read as that of the president.

■Payee information

| Name of payee | JI XIAO BO | | | | Bank transfer fee | Paid by our company |
|---|---|---|---|---|---|---|
| Payee Bank | Sumitomo Mitsui Banking Corporation | | | Branch name | Shibuya branch | |
| Account information | Ordinary | Account No. | 9795 762 | (Kana)*Required Account name | JI XIAO BO | |
| | | | | | JI XIAO BO | |
| Payment date | August 2, 2023 | Payment method | | Bank transfer | Remarks (if other, please specify) | |
| Designated account for withdrawal * (*Write on the right only if available) | | | | Bank | Headquarters/Branch Office | NO. |

| Yes or No selection ↓ | With or without a written request for approval | Amount | Voucher | Contents |
|---|---|---|---|---|
| Yes | NO. | 1,430,600,000 yen | ☑ | Deposit under deposit and service agreement (2/2nd) Deposit amount USD20,000 Half price USD10,000 X 143.06 yen |
| NO | NO. | yen | □ | |
| Yes | NO. | yen | □ | |
| Yes | NO. | yen | □ | |
| Yes | NO. | yen | □ | |
| Total | | 1,430,600,000 yen | *If there are more than 5 applications, please apply with a separate application form. (Remarks) | |

[Reason for being outside our payment terms (our payment terms: closing at the end of the month, payment at the end of the following month)

(Reason)

| Receipt of cash |
|---|
| |

| Finance director | Treasurer | Accounting |
|---|---|---|
| Haga | Nakano | |

Yoda

# CERTIFICATE OF TRANSLATION

I,  Luo Qingrong                                              , am competent to translate from
       (name of translator)

       Japanese                                    into English, and certify that the translation of
       (language)

       $10M Payment to Ji on August 2, 2023                                              
       (name of document)

is true and accurate to the best of my abilities.



_____                    _____
       (signature of translator)                    Luo Qingrong
                                                      (typed/printed name of translator)

Room 707, Building 11, Oak Bay, Cangshan District, Fuzhou City, Fujian Province, China
       (address of translator)


       (address of translator)

       13960957932                                    
       (telephone number of translator)

# 株主名簿

都市綜研インベストバンク株式会社

代表取締役　柳瀬　健一

令和 5 年 8 月 30 日現在

| 株　主　名 | 住　所 | 株数 | 議決権数 | 割合 |
|---|---|---|---|---|
| 共生バンク株式会社 | 東京都千代田区麹町 5-3 | 400 株 | 400 個 | 100.0％ |
| 合　計 | | 400 株 | 400 個 | 100.0％ |

本株主名簿は、原本と相違ありません。

令和 5 年 8 月 30 日

東京都千代田区麹町五丁目 3 番地
都市綜研インベストバンク株式会社
代表取締役　柳瀬　健一

List of Shareholders

Toshisouken Investbank Co., Ltd.
Representative Director Kenichi Yanase

As of August 30, 2023

| Name of Shareholder | Address | Number of shares | Number of voting rights | Percentage |
|---|---|---|---|---|
| **KYOSEI-BANK CO., LTD.** | **5-3 Kojimachi, Chiyoda-ku, Tokyo** | 400 shares | 400 pieces | 100.0% |
| Total | | 400 shares | 400 pieces | 100.0% |

This list of shareholders does not differ from the original.

August 30, 2023

5-3 Kojimachi, Chiyoda-ku, Tokyo
Toshisouken Investbank Co., Ltd.
Representative Director Kenichi Yanase



# CERTIFICATE OF TRANSLATION

I, __Luo Qingrong_____, am competent to translate from
      **(name of translator)**

__Japanese_____ into English, and certify that the translation of
      **(language)**

__Shareholder Info of Toshisouken Investment Bank_____
      **(name of document)**

is true and accurate to the best of my abilities.



_____      __Luo Qingrong_____
**(signature of translator)**      **(typed/printed name of translator)**

**Room 707, Building 11, Oak Bay, Cangshan District, Fuzhou City, Fujian Province, China**
      **(address of translator)**

      **(address of translator)**

__13960957932_____
      **(telephone number of translator)**

# APPENDIX C

# EXHIBIT
# 12

# Memorandum of Understanding on Investment and Cooperation

This Memorandum of Understanding (MOU) is entered into on 18 July 2023 between

Party A: Imperial Pacific International Holdings Limited (hereinafter referred to a "Party A") at Level 22, On Hong Commercial Building, 145 Hennessy Road, Wanchai, Hong Kong, and

Party B: Kyosei Bank Group (hereinafter referred to as "Party B") at 5-3, Kojimachi Dainanaakiyama Building, 5 F, Chiyoda-Ku, Yokyo, 102-0083.

**WHEREAS**
A. The Parties are interested in working together for the purpose described in this MOU.
B. The MOU sets out the relationship between the Parties as well as the respective rights and obligations of each Party.
C. The Parties agree to act in good faith in accordance with the MOU.

**NOW THEREFORE IN CONSIDERATION OF** the undertakings set forth therein and for other good and valuable consideration, the Parties hereto agree as follows:

1. **Project and Purpose**
   1) The Parties agree to cooperate in future development of Imperial Pacific International Holdings Limited and in particular its sole subsidiary, Imperial Pacific International (CNMI) LLC (hereinafter referred to as the "Project).
   2) The purpose of the Project is set out in the MOU.

2. **Obligations of the Parties**
   1) Party B undertakes, subject to the conditions set out in the MOU, to invest a total of $300 million USD in the Project. The details of the investment are as follow:
      a) $150 million USD will be used to pay the debts of Imperial Pacific International Holdings Limited;
      b) $100 million USD will be used by Imperial Pacific International (CNMI) LLC to finish the construction of hotel in Saipan and operation of the casino;
      c) $50 million USD will be used to settle disputes of Imperial Pacific International (CNMI) LLC.
   2) Party B will, subject to the conditions set out in Clause 3 of the MOU, make an initial investment of $150 million after the suspension of IPI gaming license has been lifted. The remaining amount will be paid through Party B's fund, if needed. The total investment will be completed, within one year after the initial investment has been made, totaling $300 million USD.
   3) Party A undertakes to make the best efforts in performing its obligations under the MOU, in particular:
      a) To provide all necessary information and documents as requested by Party B to understand and monitor the present state and development of the Project;
      b) To seek necessary approval and relevant legislative changes from the

1

relevant authorities for the purpose of satisfying the conditions for Party B's investment as stipulated in the MOU.

3. **Conditions for Party B's Investment**
   1) Party B takes over management of the casino for 3 years after the signing of formal investment agreement. After 3 years, the parties will discuss and mutually agree on the future plan.
   2) Subject to approval of CNMI Government, both parties hold an equal share of 50% each in Imperial Pacific International (CNMI) LLC.
   3) Subject to approval of the relevant Hong Kong Authority and CNMI Government, the majority shareholder of Party A (Ms Cui Lijie) will transfer 50% of her shares to Party B.
   4) Imperial Pacific International (CNMI) LLC holds a valid exclusive and sole gaming license in CNMI.

4. **Commitments of both Parties**
   1) Party A undertakes to honor the terms of this MOU at the request of Party B, when Party B decides that the conditions for investment are satisfied or likely to be satisfied.
   2) Party B undertakes to make the promised investment once it decides that the conditions for investment are satisfied or likely to be satisfied.

5. **Amendment to the MOU**
   1) The MOU may be amended any time by the Parties.
   2) Any amendment to the MOU must be made in writing.

6. **Confidentiality**
   1) The Parties agree and undertake to maintain confidentiality of the information and documents received from each other for the purpose of the MOU.
   2) The terms and conditions of the MOU are confidential except for the purpose of seeking approval and support from the relevant authorities in CNMI and Hong Kong.

7. **Costs**
   The Parties are responsible for their own costs for the performance of the MOU.

8. **Dispute Resolution**
   1) Parties endeavor to settle all disputes arising from interpretation and implementation of this MOU by friendly consultation.
   2) If Parties cannot resolve a dispute by consultation, the dispute shall be referred to and finally resolved by arbitration administered by the Hong Kong International Arbitration Centre (HKIAC) under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted.

9. **Governing Law**
   This MOU is governed by law of Hong Kong.

10. **Other Provisions**
    1) The MOU is signed by the Representatives of both Parties via means of electronic communications from Hong Kong and Tokyo respectively.

2

2) The MOU takes effect when both Parties have signed it.
3) All other issues will be settled by Parties under the spirit of cooperation and mutual benefit.

(End of MOU)

(Signature Page)

Representative of Party A

Xu Zhongxiang

Representative of Party B

Witnessed By:

Witnessed By: