Aram Ordubegian (admitted *pro hac vice*)
Christopher K.S. Wong (admitted *pro hac vice*)
**ARENTFOX SCHIFF LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401
aram.ordubegian@afslaw.com
christopher.wong@afslaw.com

Keith Chambers II (F0528)
**CHAMBERS LAW LLC**
Marianas Business Plaza, Suite 409
PMB 919 Box 10000
Saipan, MP 96950
Telephone: 670.234.9005/06
Facsimile: 670.235.9007
keith.chambers@chamberslawcnmi.com

*Proposed* Attorneys for the Official Committee of General Unsecured Creditors

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN MARIANA ISLANDS**

**BANKRUPTCY DIVISION**

| In re:<br><br>**IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC,**<br><br>Debtor and Debtor in Possession. | Case No. 1:24-bk-00002<br><br>Chapter 11<br><br>**COMMITTEE'S OPPOSITION TO COMMONWEALTH OF NORTHERN MARIANA ISLANDS' MOTION TO CONVERT CASE TO CHAPTER 7**<br><br>Hearing Date, Time and Location (ChST):<br>Date: August 14, 2024<br>Time: 8:30 a.m.<br>Location: 3rd Floor Courtroom<br>1671 Gualo Rai Rd., Gualo Rai<br>Saipan, MP 96950<br><br>**Judge:** Hon. Ramona V. Manglona |
|---|---|

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 5
II. BACKGROUND .......... 7
III. ARGUMENT .......... 9
A. Movant Bears the Burden on Demonstrating Conversion is in the Best Interest of the Estate. .......... 9
B. The Commonwealth Has Not Established Cause under Section 1112(b)(4)(A). .......... 10
C. It Is Premature to Convert or Dismiss the Case under Section 1112(b)(4)(C). .......... 11
D. Neither Conversion nor Dismissal Is in the Best Interest of the Estate or Creditors. .......... 12
1. Conversion to Chapter 7 Is Not in the Best Interest of the Estate and Creditors. .......... 12
2. Dismissal of the Case Is Not in the Best Interest of the Estate and Creditors. .......... 13
E. A Chapter 11 Trustee Should be Appointed If the Debtor Cannot Demonstrate Significant Progress by the Hearing on the Motion. .......... 14
IV. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Colorado-Ute Electric Assoc., Inc.*, 120 B.R. 164 (Bankr. D. Col. 1990) .......... 14

*In re Consol. Pioneer Mortg. Entities*, 248 B.R. 368 (B.A.P. 9th Cir. 2000), *aff'd*, 264 F.3d 803 (9th Cir. 2001).......... 9

*In re Corona Care Convalescent Corp.*, 527 B.R. 379 (Bankr. C.D. Cal. 2015).......... 15

*In re Integrated Pet Foods, Inc.*, 2004 WL 2252119 (Bankr. E.D. Pa. Sept. 17, 2004).......... 12

*In re Ionsphere Clubs, Inc.*, 113 B.R. 164 (Bankr. S.D.N.Y. 1990.) .......... 14

*In re Johnston*, 149 B.R. 158 (B.A.P. 9th Cir. 1992).......... 9

*In re Midwest Properties of Shawano, LLC*, 442 B.R. 278 (Bankr. D. Del. 2010) .......... 10

*In re Oklahoma Refining Co.*, 838 F.2d 1133 .......... 14

*In re Orange Cnty. Bail Bonds, Inc.*, 638 B.R. 137 (B.A.P. 9th Cir. 2022).......... 10

*In re Rosenblum*, 608 B.R. 529 (Bankr. D. Nev. 2019) .......... 9

*In re Smith*, 77 B.R. 496 (Bankr. E.D. Pa. 1987).......... 10

*In re Staff Inv. Co.*, 146 B.R. 256 (E.D. Cal. 1992).......... 12

*StellarOne Bank v. Lakewatch, LLC* (*In re Park*), 436 B.R. 811 (Bankr. W.D. Va. 2010).......... 9

*Sullivan v. Harnisch* (*In re Sullivan*), 522 B.R. 604 (B.A.P. 9th Cir. 2014).......... 9

*Tradex Corp. v. Phoebe Morse*, 339 B.R. 823 (D. Mass. 2006) .......... 14

*United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983) .......... 13

**Statutes**

11 U.S.C. § 1104(a) .......... 6, 9

11 U.S.C. § 1104(a)(2) .......... 14

11 U.S.C. § 1112(b) .......... 12

11 U.S.C. § 1112(b)(1) .......... 9, 12

11 U.S.C. § 1112(b)(2) .......... 9

11 U.S.C. § 1112(b)(4) .......... 9

11 U.S.C. § 1112(b)(4)(A) .......... 8, 10, 11

11 U.S.C. § 1112(b)(4)(C) .......... 8, 11

**Other Authorities**

1987 U.S. Code Cong. & Adm. News 5787 .......... 13

H.R. Rep. No. 95–595, p. 220 (1977) .......... 13

The Official Committee of General Unsecured Creditors (the "Committee"), duly appointed in the bankruptcy case of Imperial Pacific International (CNMI) LLC, the debtor and debtor in possession ("Debtor"), by and through its proposed counsel, hereby respectfully submits this opposition (the "Opposition") to the *Motion to Convert Case to Chapter 7* [Dkt. No. 129] (the "Motion") filed by the Commonwealth of Northern Mariana Islands (the "Commonwealth"). In support of the Opposition, the Committee respectfully represents as follows:

## I. INTRODUCTION

The Commonwealth's Motion seeks conversion to chapter 7. The Office of the United States Trustee (the "UST") recognizes conversion does not benefit creditors and is therefore not appropriate but cites its concern over the Debtor's failure to maintain insurance and suggests dismissal of the case as punishment for that failure.

Neither conversion nor dismissal is appropriate here. Conversion virtually assures a fire sale of the Debtor's only asset, leaving creditors empty-handed, and dismissal would punish the creditors and benefit the Debtor. Instead, the Motion should be denied, and the Debtor should remain in chapter 11, closely supervised by the Committee. As previewed at the final debtor-in-possession financing hearing on June 27, 2024, after numerous rounds of negotiation, the Debtor has agreed, subject to written confirmation, to undertake a comprehensive court-supervised marketing process. Before any sale can occur, creditors of this estate must have the assurance that the Debtor's assets and business have been thoroughly marketed and valued by an investment banker, so as to maximize recovery to general unsecured creditors, rather than being sold to insiders at a low-ball price.

To ensure the Debtor honors its commitment, the Committee will have consultation and approval rights at every step of the entire marketing and sale process, including selecting and retaining an investment banker, establishing bidding procedures, reviewing and selecting bids, and closing a sale. The Debtor and the Committee have begun the process of interviewing investment bankers with proven track records in selling distressed hotel and casino assets and the wherewithal to reach regional and international hotel investors and developers. Since then, the Debtor and the Committee have been conferring on the various proposals, comparing the compensation terms, and

reviewing marketing plans. Before the hearing on the Motion, the Debtor, with the Committee's approval, will seek to retain an investment banker with the requisite experience and qualifications to run a robust marketing process. The Debtor should provide a binding letter of intent or term sheet from a stalking horse bidder to the Committee when it becomes available. This should not impede the ongoing efforts to identify additional overbidders, ensuring a competitive bidding process and maximizing the value of the assets.

The Committee's representatives have been led by the Debtor's counsel to believe that the Debtor is buying into the proposed marketing and sale process, but again there have been no written commitments to date from the Debtor regarding this process. Given the Debtor's track record, the Committee understands and acknowledges the Commonwealth's concern regarding the diminution of the estate if an exit is not consummated in the near term. Therefore, the Committee proposes a more pragmatic alternative to conversion/dismissal that advances this case towards an exit: unless the Debtor satisfies the Sale Milestones (defined below) by the August 14th hearing on this Motion, the Committee will request that a chapter 11 trustee be appointed under Section 1104(a) of the Bankruptcy Code at the hearing. If the Debtor does not adequately advance towards a sale as prescribed by the Sale Milestones, an independent fiduciary will stand ready to work with the Committee to consummate a sale of the Debtor's assets.

Given the protective measures established by the Committee, and the availability of debtor-in-possession financing to consummate a sale, the facts and circumstances of this case simply do not warrant conversion or dismissal. Indeed, conversion would nullify the progress made thus far by the Committee, including the crucial negotiation and approval of the DIP credit facility and the progress of the sale process, and would increase administrative expenses. The result would be a fire sale conducted by a chapter 7 trustee without the oversight of the Committee. If conversion to chapter 7 becomes necessary, it should be a chapter 11 trustee who makes that decision. Similarly, dismissal would be ruinous for creditors and run counter to the purpose of chapter 11 of maximizing the estate's value and protecting creditor interests, as it would leave each creditor to its own devices to chase down the Debtor outside of the Bankruptcy Court.

## II. BACKGROUND

This chapter 11 case was filed on April 19, 2024. The Debtor is a limited liability company organized under the laws of the Commonwealth. The Debtor obtained its exclusive casino license (the "Casino License") for the island of Saipan and began operations in 2014. However, the COVID-19 pandemic forced the closure of its operations in March 2020. In April 2021, the Debtor's Casino License was suspended by the Commonwealth Casino Commission (the "CCC") due to nonpayment of fees and other alleged monetary defaults. Although the Debtor engaged in settlement discussions with the Commonwealth to lift the suspension, no settlement could be reached.

The Debtor has a casino hotel under construction, along with certain construction materials, the value of which is unknown and subject to professional appraisal. Additionally, the Debtor owns personal property, including food and beverage equipment, furniture in the casino and associated villas, vehicles, and liquor inventory. The Debtor's schedule lists the value of its assets at approximately $6.4 million, however, this valuation does not include the casino hotel under construction.

Immediately after commencing this bankruptcy case, the Debtor filed several first-day motions in this case, including Debtor's motion for authority to obtain post-petition financing [Dkt. No. 12] (the "DIP Financing Motion"). Originally, the Debtor requested for approval of a DIP credit facility of up to $7 million which was based on the expectation that the Debtor could reach a settlement with the Commonwealth. Thus, the initial exit plan appears to be that the Debtor restates the Casino License and resumes operations and formulates a plan on this basis. However, when it became clear that no settlement could be reached, the Committee worked diligently and collaboratively with the Debtor to reevaluate and adjust the case exit strategy. Accordingly, the DIP credit facility request was reduced to $1.4 million. At the final hearing held on June 27, 2024, the Court approved a DIP credit facility totaling $1.4 million which contains a budget negotiated by the Committee and the UST to pay for only the estate's essential expenses through December 2024. The order approving the DIP credit facility earmarks funds for the Debtor purchase the required insurance policy. *See* Minute Entry for Proceedings Held on June 27, 2024, Dkt. 144.

On June 20, 2024, the Commonwealth filed the Motion requesting the Court to convert the case to chapter 7 arguing that under Section 1112(b)(4)(A) and (C) for the continuing diminution of the estate and the lack of reasonable likelihood of rehabilitation and failure to maintain appropriate insurance. On June 25, 2024, the UST filed its statement regarding the Motion (the "UST Statement") in which the UST correctly points out that conversion is not appropriate because it would not result in a benefit to the general unsecured creditor but requests the Court dismiss the case due to the Debtor's failure to maintain fire casualty insurance.

After the Commonwealth filed the Motion, significant progress has been made in this case. Through the efforts of and negotiations with the Committee, the Debtor has agreed, subject to confirmation in writing, to commence a fully marketed sale process to sell the Debtor's business and assets, with the Committee being consulted at every step, including selecting and retaining a qualified investment banker, establishing bidding procedures, reviewing and selecting bids, and closing a sale. This process will ensure that the Debtor's assets will be sold to the highest and best bidder at a bankruptcy auction, preventing them from being sold to insiders at a low-ball price. During the final hearing on June 27, 2024, the Debtor's counsel indicated a sale motion will be filed within the next month or so. However, the Committee believes that adequately marketing the Debtor's assets may require more time to attract qualified buyers and overbidders. The Committee contends that the Debtor should provide a binding letter of intent or term sheet from a stalking horse bidder to the Committee when it becomes available. This should not impede the ongoing efforts to identify additional overbidders, ensuring a competitive bidding process and maximizing the value of the assets.

In the meantime, to ensure the Debtor to expeditiously and fully market and sell its assets, the Committee submits that unless the Debtor abides by the following milestones by the August 14th hearing date (collectively, the "Sale Milestones"), the Committee will seek the appointment of a chapter 11 trustee:

1. select and retain an investment banker, acceptable to the Committee, with an international reach and experience in selling distressed hotel and casino assets, that has no prior connections to the Debtor's principals;

2. file a motion to retain said investment banker in the form approved by the Committee; and
3. provide draft bidding procedures and sale motion to the Committee for its comments and approval.

## III. ARGUMENT

### A. Movant Bears the Burden on Demonstrating Conversion is in the Best Interest of the Estate.

Section 1112(b)(1) provides:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

Section 1112(b)(4) sets forth a non-exhaustive list of what constitutes "cause" to convert or dismiss a case under § 1112(b)(1). *In re Consol. Pioneer Mortg. Entities*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000), *aff'd*, 264 F.3d 803 (9th Cir. 2001). In addition, "the [c]ourt should 'consider other factors as they arise, and use its equitable powers to reach the appropriate result in individual cases.'" *In re Consol. Pioneer Mortg. Entities*, 248 B.R. at 375. Moreover, the court has "wide discretion in determining what constitutes such cause," and may consider additional circumstances not explicitly articulated under Section 1112(b)(4). *In re Johnston*, 149 B.R. 158, 160 (B.A.P. 9th Cir. 1992). "The movant bears the burden of establishing by preponderance of the evidence that cause exists." *Sullivan v. Harnisch* (*In re Sullivan*), 522 B.R. 604, 614 (B.A.P. 9th Cir. 2014) (citing *StellarOne Bank v. Lakewatch, LLC* (*In re Park*), 436 B.R. 811, 815 (Bankr. W.D. Va. 2010)).

Conversion or dismissal is not warranted if the following requirements are met: (1) the court identifies unusual circumstances establishing that such relief is not in the best interests of creditors and the estate; (2) there is a reasonable likelihood of confirming a plan in a reasonable amount of time; (3) the grounds for relief include an act or omission of the debtor for which there is a reasonable justification; and (4) the act or omission can be cured within a reasonable time. *See* 11 U.S.C. § 1112(b)(2); *see also In re Rosenblum*, 608 B.R. 529, 537 (Bankr. D. Nev. 2019).

**B. The Commonwealth Has Not Established Cause under Section 1112(b)(4)(A).**

The Commonwealth argument that there is cause to convert under Section 1112(b)(4)(A) is unavailing. To succeed under § 1112(b)(4)(A), a movant must "establish *both* (1) a substantial and continuing loss to or diminution of the estate and (2) absence of a reasonable likelihood of rehabilitation." *In re Orange Cnty. Bail Bonds, Inc.*, 638 B.R. 137, 146 (B.A.P. 9th Cir. 2022) (internal citation omitted) (emphasis added).

Regarding the second element, likelihood of rehabilitation, courts must find that there is no reasonable possibility of a successful reorganization within a reasonable time frame. "In almost every case, the debtor's prospects will depend on whether the debtor has formulated, or can formulate within a reasonable amount of time, a reasonably detailed business plan." *In re Orange Cnty. Bail Bonds, Inc.*, 638 B.R. at 146; *see also In re Smith*, 77 B.R. 496, 502 (Bankr. E.D. Pa. 1987) ("The 'likelihood of rehabilitation' criterion . . . is largely a function of how long the debtor has been about trying to formulate a plan without success.")

Here, the case has been only ongoing for less than two and a half months. During this short period, it has progressed expeditiously, and the exit strategy was swiftly adjusted when the settlement discussion between the Debtor and the Commonwealth to restate the Casino License stalled. However, with the Court's approval of $1.4 million in DIP credit facility, the Debtor anticipates exiting bankruptcy through a Section 363 sale and represented that it will file a sale motion within the next month or so. *See* Minute Entry for Proceedings Held on June 27, 2024, Dkt. 144. This clear exit strategy undermines the Commonwealth's assertion and supports the continuation of the chapter 11 case.

In the Motion, the Commonwealth argues that the Debtor lacks a reasonable likelihood of rehabilitation because (1) the Debtor lacks income to complete the casino hotel construction and acquire necessary assets to resume operations, and (2) the Debtor is years away from generating casino revenue due to numerous regulatory violations. However, this argument narrowly limits the Debtor's options to resuming operations, and completely leaves unaddressed the possibility of a Section 363 sale of liquidating plan. *In re Midwest Properties of Shawano, LLC*, 442 B.R. 278, 286 (Bankr. D. Del. 2010) ("there is no requirement that the plan contemplate reorganization, as a

liquidating plan is an acceptable alternative in a chapter 11 case, and thus a liquidation is a form of rehabilitation.").

While resuming casino operations was initially the Debtor's exit strategy, its inability to reach a settlement with the Commonwealth prompted the Debtor to adjust its approach. The Committee has worked diligently and collaboratively with the Debtor to reevaluate and adjust the exit strategy. Now, the Debtor has agreed, subject to written confirmation, to undertake a comprehensive court-supervised marketing process to sell its assets and business to a third party, subject to the protective measures negotiated by the Committee with respect to market testing the value of the assets. By selling its assets through a fully marketed, genuine sale process to the highest and best bidder at a bankruptcy auction under the supervision of the Court, the UST, and the Committee, the Debtor can maximize the value of its estate for the benefit of the creditors.

Based on the foregoing, the Committee submits that the request to convert the case to chapter 7 must be denied, as the Commonwealth fails to meet its initial burden to establish cause under Section 1112(b)(4)(A).

**C. <u>It Is Premature to Convert or Dismiss the Case under Section 1112(b)(4)(C).</u>**

Section 1112(b)(4)(C) states that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" constitutes cause to convert or dismiss a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). The Commonwealth argues in its Motion that the case should be converted to chapter 7 due to the Debtor's failure to maintain property damage casualty insurance. Similarly, the UST contends that the case should be dismissed on the same grounds. However, the Debtor has represented that it is diligently working to meet this insurance requirement. The Debtor has already provided the certificate of insurance for public liability coverage. Additionally, funds have been earmarked to purchase property damage casualty insurance, and the Debtor again has indicated that it is taking diligent efforts to secure this coverage. *See* Minute Entry for Proceedings Held on June 27, 2024, Dkt. 144.

Given these measures, it is premature to convert the case to chapter 7 or dismiss it on this basis. The Debtor's ongoing efforts demonstrate a strong commitment to compliance and mitigating any risks to the estate or the public, thus negating the need for conversion or dismissal

at this time.

**D. <u>Neither Conversion nor Dismissal Is in the Best Interest of the Estate or Creditors.</u>**

Section 1112(b) which provides that the bankruptcy court shall convert or dismiss a case, whichever is *in the best interests of creditors and the estate*, for cause. 11 U.S.C. § 1112(b)(1) (emphasis added). The standard "implies a balancing test to be applied through case-by-case analysis." *In re Staff Inv. Co.*, 146 B.R. 256, 260 (E.D. Cal. 1992) ("The element of the best interest of the estate focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy.") Both conversion and dismissal are harsh remedies, and bankruptcy courts should not be precipitous in granting them. *See In re Integrated Pet Foods, Inc.*, 2004 WL 2252119, at *6 (Bankr. E.D. Pa. Sept. 17, 2004) ("Bankruptcy courts should proceed in a deliberate manner when confronted with a motion under Section 1112(b) and should not precipitously sound the death knell for a chapter 11 debtor by prematurely converting or dismissing the case.") (internal citation omitted).

In this case, the interests of the estate and creditors will be best served through a fully marketed sale of the Debtor's business and assets within the chapter 11 proceeding. Under the supervision of the Court, the UST, and the Committee, this process will be transparent, ensuring that the Debtor's assets are sold to the highest and best bidder.

Further, the Committee has conditioned its support of the Debtor and its management upon the Debtor's good faith and best efforts to conduct the court-supervised sale process, subject to its written confirmation, and satisfaction of the Sale Milestones by the August 14th hearing date on this Motion. Faced with these conditions, the sale process will be conducted efficiently and effectively, ensuring that the Debtor's assets are marketed robustly to international investors and buyers and sold for a price that is the highest and best. This approach will optimize the recovery for creditors and preserve the value of the estate, making it the most advantageous path forward.

**1. Conversion to Chapter 7 Is Not in the Best Interest of the Estate and Creditors.**

In contrast, converting this case to chapter 7 is not in the best interest of the estate or the creditors. All the progress and efforts made to date, including crucial negotiation and approval of the DIP credit facility, will be rendered futile. The DIP credit facility, essential for funding the

Debtor's operations and facilitating the sale process, will be unavailable in a chapter 7 scenario. Consequently, the current sale process, designed to maximize the value of the Debtor's assets, will come to a halt. A chapter 7 trustee and their professionals would need to start from scratch to familiarize themselves with the complexities of the case, incurring substantial administrative expenses and further depleting the estate's limited resources.

Given the intricate background of this case, the additional administrative burden and inevitable delays will not preserve the estate's value nor provide any meaningful benefit to the general unsecured creditors. Instead, it will disrupt the progress made thus far, jeopardizing the entire restructuring effort. The unnecessary expenses and delays introduced by a chapter 7 conversion will erode the potential value that could be realized through the ongoing chapter 11 process. Therefore, maintaining the case under chapter 11 is crucial for maximizing creditor recoveries and ensuring an efficient resolution.

**2. Dismissal of the Case Is Not in the Best Interest of the Estate and Creditors.**

Similarly, dismissing the case is not in the best interest of the estate or the creditors. Not only would dismissal waste all the progress and efforts made to date, but the economic value of the estate is likely to be significantly higher within bankruptcy. Outside of bankruptcy, the Debtor's assets would likely be liquidated piecemeal, diminishing their overall value. The structured process and protections of chapter 11 are specifically designed to maximize the value of the estate as a whole, rather than through fragmented sales. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983), *citing* H.R. Rep. No. 95–595, p. 220 (1977), *reprinted in* 1987 U.S. Code Cong. & Adm. News 5787, 6179 ("By permitting reorganization, … Congress presumed that the assets of the debtor would be more valuable if used in a rehabilitated business than if 'sold for scrap.'")

Furthermore, the oversight provided by the UST and the Committee within the bankruptcy process is crucial for protecting the interests of the creditor body. Outside of bankruptcy, this essential oversight would be lost, leaving no assurance that the Debtor will act in the creditors' best interests as the disclosure requirements of chapter 11 no longer exist (*e.g.,* filing monthly operating reports to show receipts and expenditures, amending schedules to disclose newly discovered asset

and liabilities, etc.). The Debtor would be unlikely to maintain and preserve the assets without chapter 11's structured oversight. Dismissing the case would be detriment to creditor interest, jeopardizing the preservation and maximization of the estate's value.

Based on the foregoing, the Committee submits that the UST's request for dismissal must be denied, as the continuation of this chapter 11 case is essential for ensuring the creditors' interests are protected, and the value of the estate is maximized.

**E. A Chapter 11 Trustee Should be Appointed If the Debtor Cannot Demonstrate Significant Progress by the Hearing on the Motion.**

A court need not find "cause" in order to appoint a trustee. The appointment of a chapter 11 trustee is also warranted if it is in the best interest of the creditors and the estate pursuant to 11 U.S.C. § 1104(a)(2). This standard is generally more flexible and the court has wider discretion to appoint a trustee under this section even when "cause" thereunder is not shown. *In re Ionsphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990.); *see e.g., Tradex Corp. v. Phoebe Morse*, 339 B.R. 823, 829 (D. Mass. 2006) ("The bankruptcy court appears to enjoy even more sweeping discretion under subsection (a)(2)"); *In re Oklahoma Refining Co.*, 838 F.2d 1133, 1136 ("It is clear, both from the language of the stated and established case law, that the court need not find any of the enumerated wrongs in order to find cause for appointing a trustee.").

In applying the discretion to authorize the appointment of a chapter 11 trustee, some courts have considered the following factors:

> (a) The trustworthiness of the debtor;
> (b) The debtors' past and present performance and prospects for rehabilitation;
> (c) The confidence, or lack thereof, of the business community and creditors in present management; and
> (d) The benefits derived by appointment of a trustee, balanced against the costs of appointment.

*In re Colorado-Ute Electric Assoc., Inc.*, 120 B.R. 164, 176 (Bankr. D. Col. 1990).

A chapter 11 trustee should be appointed if the Debtor fails to abide by the Sale Milestones by the hearing scheduled for August 14, 2024. The Debtor's trustworthiness would be highly questionable due to its failure to advance the sale and marketing process as previously committed. Despite having a DIP credit facility and plans for a Section 363 sale, the Debtor's lack of progress

would suggest a lack of good faith. This would erode the confidence of creditors in the current management due to ongoing failures and a lack of transparency.

Appointing a chapter 11 trustee would restore confidence by placing a neutral and experienced party in charge, focused on maximizing the estate's value. A chapter 11 trustee would expedite the sale process, prevent further delays, and minimize administrative expenses, ultimately preserving more value for the estate. Unlike conversion or dismissal, where the Committee would be disbanded, the appointment of a chapter 11 trustee would allow the Committee to continue its collaborative efforts to work hand-in-hand with a chapter 11 trustee to complete the initiatives the Committee has already begun. *See In re Corona Care Convalescent Corp.*, 527 B.R. 379 (Bankr. C.D. Cal. 2015) (the court determined that appointing a chapter 11 trustee was in the best interest of the creditors to facilitate the asset sale process moving forward.) Maintaining a chapter 11 structure can leverage the expertise and oversight of the Committee in conjunction with a chapter 11 trustee's authority to ensure that the sale process is executed efficiently and effectively. This continuity is crucial for maximizing the value of the estate and achieving the best possible outcome for all creditors involved. Therefore, if the Debtor cannot demonstrate significant progress and meet the Sale Milestones by the August 14th hearing date, the Committee respectfully requests that a chapter 11 trustee be appointed to protect creditors' interests and ensure effective estate management.

## IV. CONCLUSION

Based on the foregoing, the Committee respectfully requests that the Court deny the Motion, and as an alternative, appoint a chapter 11 trustee if the Debtor does not satisfy the Sale Milestones by the August 14th hearing date.

Dated: July 3, 2024

Respectfully submitted,

**ARENTFOX SCHIFF LLP**

By: */s/ Aram Ordubegian*
Aram Ordubegian
Christopher K.S. Wong
*Proposed* Attorneys for the Official Committee of General Unsecured Creditors

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2024, I caused the forgoing document to be filed with the Clerk of Court for the United States District Court for the Northern Mariana Islands, Bankruptcy Division, using the CM/ECF System. A true and correct copy of the said pleading has been served on all counsel of record via the Court's CM/ECF System.

Executed this 3rd day of July, 2024.

*/s/ Aram Ordubegian*
ARAM ORDUBEGIAN