F I L E D
Clerk
District Court

JUL 10 2024

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS
BANKRUPTCY DIVISION**

| | |
|---|---|
| In re<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,<br><br>          Debtor and<br>          Debtor-in-Possession. | Case No. 1:24-bk-00002<br><br>**MEMORANDUM DECISION DENYING WITHOUT PREJUDICE JOSHUA GRAY AND U.S.A. FANTER CORP., LTD.'S MOTION FOR RELIEF FROM STAY** |

      Judgment creditors Joshua Gray ("Gray") and U.S.A. Fanter Corp., Ltd. ("Fanter") (collectively "Movants") filed a motion for relief from stay (ECF No. 48) supported with a memorandum of law ("Motion for Relief from Stay," ECF No. 49) seeking an order declaring the Personal Property levied upon by the Movants pre-petition as not "property of the estate"; alternatively, for an order modifying and lifting the automatic stay to allow Movants to exercise their rights and remedies under prior orders of the District Court and other relief. The motion was supported by the Declaration of Aaron Halegua (ECF No. 50), and Declaration of Tim Shepherd (ECF No. 51). Debtor and Debtor-in-Possession Imperial Pacific International (CNMI), LLC ("IPI" and "Debtor") filed an opposition ("Debtor Opposition," ECF No. 78) along with Declaration of Howyo Chi (ECF No. 79). The Official Committee of Unsecured Creditors ("Committee") also filed an opposition ("Committee Opposition," ECF No. 81-1). Movants filed a reply in support of their Motion for Relief from Stay ("Reply," ECF No. 85). Creditor Dotts Law Office ("Dotts") filed a statement of non-opposition to

the Motion for Relief from Stay. (ECF No. 96.) After the Court held a hearing on the matter on May 30, 2024, the undersigned DENIED without prejudice Movants' Motion for Relief from Stay. (Mins., ECF No. 98.) The Court issues this memorandum decision detailing its rationale.

I.     **PROCEDURAL HISTORY**

In November 2022, default judgment was entered in favor of Fanter and against the Debtor in the amount of $226,127.05 plus post-judgment interest. (Fanter Order Granting Writ Execution 1-2, *U.S.A. Fanter Corp. v. Imperial Pac. Int'l (CNMI), LLC*, No. 1:21-cv-00035 ("*Fanter*") (D. N. Mar. I. June 16, 2023) ECF No. 37.) In June 2023, the Court granted Fanter's motion for a writ of execution against Debtor's motor vehicles and heavy equipment pursuant to 7 CMC § 4204. (*Id.* at 5.) The U.S. Marshals Service executed the writ the next month. (Fanter Receivership Order 1, *Fanter* (D. N. Mar. I. Jan. 12, 2024) ECF No. 49.) In October 2023, the Court granted Fanter's motion to appoint a limited receiver to liquidate the motor vehicles and heavy equipment, and appointed Clear Management, Ltd. ("Clear") as the limited receiver. (*Id.*)

In May 2023, judgment was entered in favor of Gray against Debtor in the amount of $5,686,182.20 plus attorneys' fees and costs. (Gray D&O Granting Writ Execution 1, *Gray v. Imperial Pac. Int'l (CNMI), LLC*, No. 1:19-cv-00008 ("*Gray*") (D. N. Mar. I. Aug. 16, 2023) ECF No. 247.) In August 2023, the Court granted Gray's motion for a writ of execution against Debtor's Personal Property[1] pursuant to 7 CMC § 4204. (*Id.* at 7-8.) The U.S. Marshals Service executed the writ that same month. (Gray Receivership Order 1, *Gray* (D. N. Mar. I. Oct. 23, 2023) ECF No. 275.) In October

---

[1] Debtor's Personal Property includes "IPI's Vehicles, IPI's Liquor, IPI's Dragons, IPI's Computer Hardware, IPI's Furniture and Equipment, and IPI's Casino-Related and Security Equipment, as those terms are defined in the Halegua Declaration [ECF No. 231-3]," and "any other non-exempt personal property that are identified by Plaintiff, sold in an auction in order to pay Plaintiff and satisfy the Judgment." (Gray D&O Granting Writ Execution 6.)

2023, the Court granted Gray's motion to appoint a limited receiver to liquidate Debtor's Personal Property and appointed Clear as the limited receiver. (*Id.* at 1-2.)

Debtor filed its voluntary Chapter 11 bankruptcy petition on April 19, 2024. (ECF No. 1.)

## II. LEGAL STANDARD

### A. Property of the Bankruptcy Estate

Generally, filing a bankruptcy petition automatically institutes a stay of

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the *debtor or against property of the estate*, of a judgment obtained before the commencement of the case under this title[.]

11 U.S.C. § 362(a) (emphasis added). As Congress recognized,

> [t]he automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his [or her] creditors. *It stops all collection efforts, all harassment, and all foreclosure actions*. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6296–97). "The stay protects the debtor by allowing it breathing space and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others." *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993) (citations omitted). Further, the stay "assures that the debtor's other creditors are not racing to various courthouses to pursue independent remedies that would drain the estate's assets." *In re Aquarius Disk Servs.*, 254 B.R. 253, 259 (Bankr. N.D. Cal. 2000) (citations omitted).

Here, Debtor filed a voluntary Chapter 11 bankruptcy petition under 11 U.S.C. § 301. The commencement of a case pursuant to § 301 creates an estate, which "is comprised of all the following property, wherever located and by whomever held: . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

### B.  "For Cause" Per 11 U.S.C. § 362(d)(1)

Section 362(d) of Title 11 of the U.S. Code dictates that "the court shall grant relief from the [automatic bankruptcy] stay . . . such as by terminating, annulling, modifying, or conditioning such stay-- (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]"[2] The party seeking relief from an automatic stay "must first establish a prima facie case that 'cause' exists for relief under § 362(d)(1)." *In re Am. Spectrum Realty, Inc.*, 540 B.R. 730, 737 (Bankr. C.D. Cal. 2015) (citation omitted). "Once a prima facie case has been established, the burden shifts to the debtor to show that relief from the stay is unwarranted. The decision whether to grant or deny stay relief is within the broad discretion of the bankruptcy court." *Id.* (citations omitted). Bankruptcy courts within the Ninth Circuit apply the following twelve *Curtis*[3] factors—not all will be relevant and some may carry more weight—to determine if cause exists to warrant an entity to continue pending litigation in a non-bankruptcy forum against a debtor:

   1. Whether the relief will result in a partial or complete resolution of the issues;

   2. The lack of any connection with or interference with the bankruptcy case;

   3. Whether the foreign proceeding involves the debtor as a fiduciary;

   4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

---

[2]  Gray and Fanter are unsecured creditors; thus, they are not entitled to relief from stay on the basis of lack of adequate protection. *See Aquarius Disk Servs.*, 254 B.R. at 260 (citing *In re Microwave Prods. of Am., Inc.*, 94 B.R. 967, 970 n.10 (Bankr. W.D. Tenn. 1989)).

[3]  *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984).

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

12. The impact of the stay on the parties and the "balance of hurt."

*Id.* (citations omitted).

### C. Necessary for Effective Organization Per 11 U.S.C. § 362(d)(2)

Section 362(d)(2) provides that "the court shall grant relief from the stay . . . (2) with respect to a stay of an act against property under subsection (a) of this section, if-- (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization[.]" While "the party requesting such relief has the burden of proof on the issue of the debtor's equity in property[,] . . . the party opposing such relief has the burden of proof on all other issues." 11 U.S.C. § 362(g). Thus, reading these two subsections of § 362 in conjunction, the party opposing the relief from a stay—generally the debtor—bears the burden to demonstrate that such property is necessary to an effective reorganization. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375 (1988) ("Once the movant under § 362(d)(2) establishes that he is an undersecured

creditor, it is the burden of the *debtor* to establish that the collateral at issue is 'necessary to an effective reorganization.'" (citing § 362(g))).

To demonstrate that the collateral is necessary for an effective reorganization requires more than "a showing that if there is conceivably to be an effective reorganization, this property will be needed for it;" the debtor must show "that the property is essential for an effective reorganization *that is in prospect*. This means . . . that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *Id.* at 375-76 (citations omitted). If, during the four months that the debtor has the exclusive right to put together a plan pursuant to 11 U.S.C. § 1121, there is a "lack of any realistic prospect of effective reorganization[,]" relief pursuant to §362(d)(2) is required. *Id.* at 376. The burden of proof for motions pursuant to § 362(d)(2)(B) "is a 'moving target which is more difficult to attain as the Chapter 11 case progresses.'" *In re Sun Valley Newspapers, Inc.*, 171 B.R. 71, 75 (B.A.P. 9th Cir. 1994) (citation omitted). To clarify,

> [i]n the early stage of the case, "the burden of proof . . . is satisfied if the debtor can offer sufficient evidence to indicate that a successful reorganization within a reasonable time is 'plausible.'" Near the expiration of the exclusivity period, "the debtor must demonstrate that a successful reorganization within a reasonable time is 'probable.'" After the expiration of the exclusivity period, "the debtor must offer sufficient evidence to indicate that a successful reorganization within a reasonable time is 'assured.'"

*Id.* (citations omitted).

### III. ANALYSIS

Movants requested an order finding that the "Personal Property" subject to Gray and Fanter's writs is not property of the estate pursuant to 11 U.S.C. § 541. (Mot. Relief Stay 7.) If the Court found that the Personal Property is property of the estate, Movants requested an order lifting the stay. (*Id.*) If the stay is not lifted, Movants requested that Debtor make monthly cash payments to Movants for adequate protection. (*Id.* ¶ 78.) The Court addresses each argument in turn.

6

### A. Property of Bankruptcy Estate

First, the Court concluded that the Personal Property is property of the estate. "In the absence of a controlling federal rule, [courts] generally assume that Congress has 'left the determination of property rights in the assets of a bankrupt's estate to state law,' since such '[p]roperty interests are created and defined by state law.'" *Nobelman v. Am. Savs. Bank*, 508 U.S. 324, 329 (1993) (citations omitted). Here, the writs of execution were issued pursuant to 7 CMC § 4204. (Fanter Order Granting Writ Execution 5; Gray D&O Granting Writ Execution 7-8.) Section 4204 of Title 7 of the Commonwealth Code provides that a "person duly authorized receiving a writ of execution issued by any court, shall . . . levy execution as follows:"

> (a) Demand of Payment; Seizure of Property. He or she shall demand of the person against whom the execution is issued, if the person may be found on the island where the levy is being attempted, that the person pay the execution or exhibit sufficient property subject to execution. . . . *If the person against whom the execution is issued does not pay the execution in full*, including interest and costs and expenses thereof, the person making the levy *shall take into his or her possession property* of the person against whom the execution is issued, not exempt from execution, sufficient in his or her opinion to cover the amount of the execution . . . .
>
> (c) Sale: Procedure; Disposition of Proceeds. The person making the levy on the day and at the place set for the sale, *unless payment has been made of the amount of the judgment and interest and the costs and expenses in connection with the levy*, shall sell the property levied upon at public auction to the highest bidder. That person shall deduct from the proceeds of the sale sufficient money for the full payment of his or her fees and expenses, and shall then pay the person in whose favor the execution was issued, or his counsel, any balance that remains up to the amount due on the execution. *If there are any proceeds of the sale left after the deduction and payment directed above, the remaining proceeds shall be paid over to the person against whom the execution was issued.*

7 CMC § 4204 (emphasis added).

Movants conflate possession and ownership, which are distinct. *Saipan Achugao Resort Members' Ass'n v. Wan Jin Yoon*, 2011 MP 12, ¶ 17 (noting that the trial court conflated possession with ownership); *see ownership*, Black's Law Dictionary (11th ed. 2019) ("Possession is the *de facto*

7

exercise of a claim; ownership is the *de jure* recognition of one." (citation omitted)). Thus, when the U.S. Marshals Service levied the writs of execution, they merely took *possession* of the property pursuant to 7 CMC § 4204.[4] Debtor still retains interests over the Personal Property. First, if Fanter's and Gray's judgments were satisfied and the costs and expenses of the sale were paid, the sale of the Personal Property would cease pursuant to 7 CMC § 4204(c) and Debtor could retake possession—assuming the Personal Property is not subject to other writs of execution.[5] Second, if the Personal Property is sold and funds disbursed such that there is excess, such excess shall be returned to Debtor. *See* 7 CMC § 4204(c). Because, at the time the bankruptcy estate was created, Debtor retained *interests* in the Personal Property after the execution of the writs, and the Court did not approve any sales, the Personal Property *is part of the bankruptcy estate* pursuant to § 541(a)(1).[6] Therefore, the bankruptcy stay applies to the Gray and Fanter proceedings because these two actions are post-judgment and only active to the extent that there are limited receiverships instated pursuant to the writs of execution on the Personal Property. *See* § 362(a)(2).

/ / /

---

[4] At the hearing, Movants argued that *In re Thena, Inc.*, 190 B.R. 407 (D. Or. 1995) supported a finding that the Personal Property is not part of the bankruptcy estate; however, as Debtor correctly recognized, that case involved 21 U.S.C. § 853, a *criminal forfeiture* statute, which is quite distinguishable from 7 CMC § 4204, a civil statute. Section 853 does not reserve any interest in the property for the convicted criminal defendant whose property was forfeited. In fact, § 853 dictates that a convicted defendant shall forfeit to the United States any property constituting proceeds from the crime and any property used to facilitate the crime and defines property to include "rights, privileges, interest, claims, and securities." *Id.* § 853(a)-(b). Conversely, 7 CMC § 4204 does not strip the person who the writ of execution is levied against of all interests in the levied property.

[5] The Court recognizes that Kan Pacific Saipan, Ltd. ("Kan Pacific") has a writ of execution against the Personal Property. (Order Granting Appl. Writ Execution, *Kan Pac. Saipan, Ltd. v. Imperial Pac. Int'l (CNMI), LLC*, No. 1:21-cv-00034 (D. N. Mar. I. Oct. 20, 2023) ECF No. 64.) If Debtor satisfied Gray, Fanter, and Kan Pacific's judgments, it would be entitled to retake possession of the Personal Property.

[6] The Personal Property does not include Debtor's liquor as the Court has already approved the sale of the liquor as well as the distribution of the proceeds. (Order Granting Joint Pet. To Approve Sale of Liquor, *Gray* (D. N. Mar. I. Jan. 24, 2024) ECF No. 287; *see also* Mot. Relief Stay ¶ 25 ("As of the Petition Date, Clear has liquidated the Debtor's liquor inventory that was part of the Personal Property.").)

### B. "For Cause" Per § 362(d)(1)

At the outset, the Committee asserts that Movants lacked standing to seek relief from the stay as unsecured creditors (Committee Opp'n to Mot. Relief Stay 12), yet provided no authority. "[A]n unsecured creditor may seek relief from the automatic stay" pursuant to § 362(d)(1) as "[t]here is nothing in the Code which provides that only secured creditors may seek relief from the automatic stay." *In re Westwood Broad., Inc.*, 35 B.R. 47, 48 (Bankr. D. Haw. 1983) (citing *In Re Holtkamp Farms, Inc.*, 669 F.2d 505 (7th Cir. 1982)). Thus, Movants are not precluded from seeking relief pursuant to § 362(d)(1).

Nevertheless, the *Curtis* factors weigh in favor of denying Movants' request for relief. Because Movants concede that the third, fifth, ninth, and eleventh *Curtis* factors do not apply (Mot. Relief Stay ¶ 56), the Court addresses the remaining factors below.

### a. First Factor: Whether relief will result in a partial or complete resolution of the issues

Granting Gray and Fanter relief will not result in resolution of the issues as the Gray judgment is currently on appeal to the United States Court of Appeals for the Ninth Circuit. (Notice of Appeal, *Gray* (D. N. Mar. I. June 29, 2023) ECF No. 230.) Moreover, Debtor maintains that Century Estate Investment Ltd. ("Century") has a secured[7] claim superior to Gray's claim to Debtor's Personal Property, which is the subject of Gray's case.[8] (Debtor Opp'n 23.) Gray has disputed the validity of Century's security interest. (*See* Reply 7; *see also* Pl.'s Opp'n Century Mot. Intervene 3, *Gray* (D. N.

---

[7] Debtor listed Century as one of the creditors who has the twenty largest unsecured claims and are not insiders. (ECF No. 3.)

[8] The Court previously denied Century's motion to intervene in the *Gray* case. (Mins., *Gray* (D. N. Mar. I. Oct. 19, 2023) ECF No. 274.)

Mar. I. Oct. 2, 2023) ECF No. 268.) Thus, there is a dispute over some of the Personal Property. Therefore, granting Movants relief from the stay would not resolve the issues and this factor weighs against lifting the stay.

> b. *Second Factor: Lack of connection with or interference with the bankruptcy case*

The second factor supports relief from stay if the litigation in the other forum is unrelated to the bankruptcy case—such as with state court adjudication of divorce, child custody and probate. *Curtis*, 40 B.R. at 804-05 (citation omitted). Here, the *Gray* and *Fanter* proceedings, which are post-judgment limited receiverships, do bear on the bankruptcy estate because, as discussed above, the Personal Property subject to those receiverships are part of the bankruptcy estate. Therefore, this factor supports maintaining the automatic stay.

> c. *Fourth Factor: Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases*

Here, a specialized tribunal was not established to handle the *Gray* or *Fanter* matters. Additionally, the handling of the Personal Property is appropriately before the Bankruptcy Court as the Personal Property is subject to Debtor's bankruptcy estate. Therefore, this factor does not warrant lifting the stay.

> d. *Sixth Factor: Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question*

Movants assert that this liquidation request involves third parties, Clear, and potential buyers of the Personal Property, and that Debtor is merely a conduit for the Personal Property. (Mot. Relief Stay 22.) Neither Debtor nor the Committee has argued to the contrary. The Court finds that because there are third parties involved, this factor supports lifting the stay.

> e. *Seventh Factor: Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties*

Century, a listed creditor, would be prejudiced from the Movants' liquidation of any of the Personal Property as Debtor asserts Century has a secured priority lien. Further, the proceeds of the most recent sale of the liquor in the *Gray* receivership were only disbursed to one of Debtor's judgment creditors, Gray. (Order Granting Joint Pet. To Approve Sale of Liquor 2-3.) Presuming that the future liquidation follows similar lines, the Committee would be prejudiced. Dotts seems to implicitly recognize this as he requested that future disbursements be made on a pro rata basis to the judgment creditors. (ECF No. 96 at 2.) Therefore, this factor weighs heavily against lifting the stay.

> f. *Eighth Factor: Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c)*

"[E]quitable subordination involves the question of a debtor's equity and may be properly asserted as a defense to a motion seeking relief from the automatic stay." *In re Palmdale Hills Prop., LLC*, 423 B.R. 655, 664 (B.A.P. 9th Cir. 2009) (citation omitted). Here, there are no allegations of equitable subordination. (*See* Mot. Relief Stay 22-23.) Thus, this factor slightly weighs in favor of lifting the stay.

> g. *Tenth Factor: The interests of judicial economy and the expeditious and economical determination of litigation for the parties*

Judicial economy is not particularly relevant here when the undersigned is presiding over the *Gray* and *Fanter* cases as well as this bankruptcy case.

> h. *Twelfth Factor: The impact of the stay on the parties and the "balance of hurt"*

Here, the stay is preventing Gray and Fanter from collecting on their judgments. The Court is cognizant that Clear has expended time and money as the Limited Receiver, but it may possibly recover such expenses pursuant to 11 U.S.C. § 543(c)(2), which "provide[s] for payment of reasonable

compensation for services rendered and costs and expenses incurred by such custodian[.]" The Bankruptcy Code defines custodian as a "receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title[.]" 11 U.S.C. § 101(11)(A). Debtor would be prejudiced if the stay were lifted to allow the liquidation of the Personal Property, which is part of its bankruptcy estate. Moreover, granting the Motion for Relief from the stay to allow Gray and Fanter to pursue their collective judgments totaling approximately $6 million, would trigger default of the debtor-in-possession ("DIP") financing, (*see* ECF No. 47-1 at 3 ("granting of relief from automatic stay to any creditor with a claim in excess of $250,000 relief" is an event of default)), which the Court has just approved on an interim basis. (Mins. 2). A default of the DIP financing when the Court just approved on an interim basis would be detrimental, if not fatal, to Debtor's Chapter 11 petition. Bearing in mind the aforementioned policy considerations of the stay providing the debtor breathing space to avail itself to the benefits of bankruptcy, the Court concluded that the *Curtis* factors weigh in favor of denying Movants' motion for relief from the stay.

### C. Necessary to an Effective Reorganization Per § 362(d)(2)

Movants' alternative argument for lifting the stay pursuant to § 362(d)(2) was also unpersuasive. Because Debtor "concedes that it does not have equity in the Personal Property" (Debtor Opp'n 26), the only issue for determining whether the stay should be lifted pursuant to § 362(d)(2) is whether Debtor proved that the Personal Property is necessary to an effective reorganization. Section 1121 explains that the debtor has the exclusive right to file a plan within 120 days from the filing of the petition. Because the petition was filed on April 19, 2024, Debtor's exclusive right to file a plan pursuant to § 1121 lapses on August 17, 2024. Thus, the instant case is still in the early stages such

/ / /

that Debtor can meet its burden if it can offer sufficient evidence to indicate that a successful reorganization within a reasonable time is "plausible." *See Sun Valley Newspapers, Inc.*, 171 B.R. at 75. As the Committee recognized, the Personal Property, which consists of heavy machinery, automobiles, décor, furniture, equipment, casino-related and security equipment, is "integral not just for the resumption of day-to-day casino operations but [is] also critical for sustaining the Debtor's business viability and for the successful formulation of a Chapter 11 reorganization plan." (Committee Opp'n 16.) Debtor affirmed that it "intends to file a plan of reorganization to reinstate its exclusive casino license, re-opening of its casino and complete the construction of the hotel" and such operations would "necessarily require the use of the Personal Property." (Debtor Opp'n 27.) Furthermore, the interim DIP financing order enables Debtor to file such a plan as its interim operations are now funded. Therefore, the Court concluded that Debtor has met its burden to demonstrate that a successful reorganization within a reasonable time is *plausible*.

### D. Monthly Cash Payments

In the event that the Court denied their request for relief from stay, Movants requested monthly cash payments for adequate protection. (Mot. Relief Stay ¶ 78.) "[U]nsecured creditor[s], [are] not entitled to adequate protection." *Love v. Wiseman*, 614 B.R. 573, 587 (N.D. Cal. 2020) (first citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207 (1983); and then citing *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 90 (2d Cir. 2003)). Because Movants are unsecured creditors, the Court denied their request for adequate protection via monthly cash payments.

### IV. CONCLUSION

Based on the foregoing, the Court DENIED without prejudice Movants' Motion for Relief from Stay because the Personal Property is part of Debtor's bankruptcy estate. Moreover, the relevant

*Curtis* factors and the plausibility of a successful reorganization within a reasonable time warrant against lifting the stay.

IT IS SO ORDERED this 10th day of July 2024.

                                                         _____
                                                         RAMONA V. MANGLONA
                                                         Chief Judge