CHOI & ITO
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com; aito@hibklaw.com

MCDONALD LAW OFFICE

CHARLES H. MCDONALD II (F0494)
2nd Floor ICC, Room 203
Gualo Rai, Saipan, MP 96950
Telephone: (866) 967-7567
E-Mail: charles@mcdonald.law

Attorneys for Debtor and Debtor-in-Possession

UNITED STATES DISTRICT COURT
DISTRICT OF THE NORTHERN MARIANA ISLANDS
BANKRUPTCY DIVISION

| | |
|---|---|
| In re<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,<br><br>　　　　Debtor and<br>　　　　Debtor-in-possession. | Case No. 24-00002<br><br>(Chapter 11)<br><br>DEBTOR'S SUPPLEMENTAL REPLY TO OPPOSITION BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S MOTION TO APPROVE BID PROCEDURES FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS AND RELATED RELIEF; DECLARATION OF HAROLD J. BORDWIN<br><br><u>Hearing</u><br><br>Date:　September 19, 2024<br>Time:　8:30 a.m.<br>Judge:　Hon. Ramona V. Manglona<br><br>[Relates to ECF 182, 219] |

1

**DEBTOR'S SUPPLEMENTAL REPLY TO OPPOSITION BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION TO APPROVE BID PROCEDURES FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS AND RELATED RELIEF; DECLARATION OF HAROLD J. BORDWIN**

IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, debtor and debtor-in-possession herein (the "Debtor"), by and through its undersigned counsel, hereby files its Supplemental Reply to the *Opposition* filed by the Official Committee of Unsecured Creditors (the "Committee"), on September 5, 2024, to the Debtor's *Motion to Approve Bid Procedures for Sale of Substantially All of the Debtor's Assets and Related Relief* (the "Bid Procedures Motion").[1]

Although the Committee had substantial input in the Bid Procedures Motion[2], it now opposes it and claims the Debtor has failed to engage in a "strategic marketing process to bring it to an operating casino and hotel . . . ." *See* Opposition at 2. Specifically, the Committee alleges that as there has been no marketing of the assets being sold, the $10 million stalking horse bid is inadequate and will "chill" the bidding; (2) the procedures unfairly favor an alleged insider bidder (Mr. Sit) by allowing a credit bid despite his lack of secured status; (3) since the Commonwealth Casino Commission (the "CCC") has indicated that it is willing to "work with disinterested bidders for granting a casino license" the Casino License should be marketed for sale; (4) "the Committee has identified an investment banker to facilitate a **going-concern sale** of the Debtor's assets." *Id*. at 4 (emphasis added).

---

[1] Capitalized terms not herein defined shall have the meaning set forth in the Bid Procedures Motion.

[2] The Committee's input is evidenced by the requirement that "the Debtor and the Committee shall jointly (i) determine the winning bidder . . ." *See* Bid Procedures Motion at pdf 9.

1

A.     <u>NO "GOING-CONCERN" VALUE EXISTS, BUT THE $10 MILLION BID WILL BE MARKETED TO CASINO AND HOTEL OPERATORS, AMONG OTHERS.</u>

The Debtor ceased business operations in March, 2020, four and half years ago. The hotel roof is not closed; it has been open to the elements since 2021. It is estimated that approximately $100 million must be spent before the hotel can be opened. Given these facts, it is fantasy to suggest the Debtor is a "going concern."

As for the Casino License, it cannot be readily assumed and assigned. The CCC suspended the Casino License for nonpayment of the Casino Regulatory Fee in August, 2021. The CCC asserts that the Debtor owes Casino Regulatory Fees totaling approximately $12.6 million as of the Petition Date. Similarly, the CNMI asserts that the Debtor owes Annual License Fees totaling approximately $60 million as of the Petition Date. The holder of the Casino License must also pay an additional $18.65 million for the 2024 annual license and regulatory fees. For these reasons, the Stalking Horse Purchaser passed on the Casino License.

Nevertheless, as set forth in the attached Declaration of Harold J. Bordwin ("Bordwin Dec."), Co-President of Keen-Summit Capital Partners LLC ("Keen"),[3] if employed, Keen intends to market the assets to "owners, operators and investors in the casino, hospitality and real estate industries. **casino operators** as well as hotel operators." *See* Bordwin Dec. at ¶ 10 (emphasis added).

---

[3] This Court has set a hearing date of September 26, 2024, on the Debtor's *Application to Employ Keen-Summit Capital Partners LLC as Real Estate Brokers to Debtor* ("Keen Employment Application"). *See* ECF 228.

B. <u>THE ESTATE CANNOT AFFORD AN INVESTMENT BANKER</u>

The Committee claims that the Debtor made a "commitment to the Committee to engage an investment banker to properly market the assets . . . ." Opposition at 3.

This is not true. As noted in its *Omnibus Reply*, filed herein as ECF 217, counsel for the Debtor and Committee initially agreed to jointly employ Keen to market the Stalking Horse offer. However, in early August, Committee counsel proposed having an investment banker market the assets for 45 days followed by 45 days of marketing by Keen. The Debtor did not agree to the proposal due to the limits of the DIP financing.[4]

C. <u>THE BID IS NEITHER PREMATURE NOR TOO LOW</u>

The Committee argues that the Stalking Horse bid is "artificially low" and will "chill" the bidding. However, as Mr. Bordwin states in his declaration, in his opinion, "going to market with a stalking horse in hand is a positive, not a negative: it encourages rather than discourages third party bidders." *See* Bordwin Dec. at ¶ 8. Keen also "anticipates offering for sale the casino license and anticipates communicating with the Commonwealth Casino Commission (the "CCC") about how Keen and the CCC can work together to encourage buyers." *Id*. at ¶ 9.

The Debtor proposes to employ Keen precisely to market the assets to potential bidders, including distress investors. Keen agrees that

> it is always better to have a stalking horse sooner rather than later. Following the maxim that *a bird in hand is worth two in the bush*, I would not discourage a debtor from signing up a reasonable stalking horse offer prior to marketing, for risk that the prospective stalking horse would move on. In my experience, it is best to lock up a reasonable stalking horse

---

[4] Any investment banker would insist on a substantial guaranteed payment. The Debtor concluded that the estate could not afford two sets of professionals to market the assets.

offer as soon as possible.

*Id*. at ¶ 6 (emphasis supplied).

Finally, the Debtor believes that the $10 million bid for a half-built hotel and related personal property assets is in fact reasonable. On June 30, 2024, one of the best hotels on the island, the Hyatt Regency Saipan Hotel closed permanently, after 43 years of operations. No doubt the closure was due to continuing losses. The Debtor is informed that the owner surrendered the leasehold interest a few months after negotiating for a new 40-year public land lease.

D. <u>THE STALKING HORSE BIDDER HAS AGREED TO CONCESSIONS.</u>

The Committee and Joshua Gray both oppose allowing the Stalking Horse Bidder to "credit bid" his DIP loan toward the purchase price even though the DIP loan comes due December 31, 2024. *See* ECF 173 at 4. The Debtor has requested and Mr. Sit has agreed that there will be no "credit" component to his bid.

Most importantly, at the request of Keen, Mr. Sit has agreed that the outside date for closing on his offer shall be extended from December 31, 2024 to February 28, 2025.

E. <u>CONCLUSION</u>

The Debtor respectfully requests that the Bid Procedures Motion, as modified herein, be granted.

DATED: Honolulu, Hawaii, September 11, 2024.

*/s/ Chuck C. Choi*
CHUCK C. CHOI
ALLISON A. ITO
CHARLES H. McDONALD II (F0494)
Attorneys for Debtor and
Debtor-in-Possession