Aram Ordubegian (admitted *pro hac vice*)
Christopher K.S. Wong (admitted *pro hac vice*)
**ARENTFOX SCHIFF LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:    213.629.7400
Facsimile:    213.629.7401
aram.ordubegian@afslaw.com
christopher.wong@afslaw.com

Keith Chambers II (F0528)
**CHAMBERS LAW LLC**
Marianas Business Plaza, Suite 409
PMB 919 Box 10000
Saipan, MP 96950
Telephone:    670.234.9005/06
Facsimile:    670.235.9007
keith.chambers@chamberslawcnmi.com

Attorneys for the Official Committee of General Unsecured Creditors

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

# BANKRUPTCY DIVISION

| | |
|---|---|
| In re:<br><br>**IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC,**<br><br>Debtor and Debtor in Possession. | Case No. 1:24-bk-00002<br><br>Chapter 11<br><br>**THE OFFICIAL COMMITTEE OF GENERAL UNSECURED CREDITORS' LIMITED OBJECTION TO THE DEBTOR'S APPLICATION TO EMPLOY KEEN-SUMMIT CAPITAL PARNERS LLC AS REAL ESTATE BROKERS TO DEBTOR**<br><br><u>Hearing Date, Time and Location (ChST)</u>:<br>Date:       October 1, 2024<br>Time:       8:30 a.m.<br>Location:   3rd Floor Courtroom<br>            1671 Gualo Rai Rd., Gualo Rai<br>            Saipan, MP 96950<br><br>**Judge:**    Hon. Ramona V. Manglona |

AFSDOCS:300055739.2

ARENTFOX SCHIFF LLP

The Official Committee of General Unsecured Creditors (the "Committee"), duly appointed in the bankruptcy case of Imperial Pacific International (CNMI) LLC, the debtor and debtor in possession (the "Debtor"), by and through its undersigned counsel, hereby submits this limited objection ("Limited Objection") to *the Debtor's Application to Employ Keen-Summit Capital Partners LLC as Real Estate Brokers to Debtor* (the "Application") [Dkt. No. 222] (the "Application"), and respectfully represents as follows:

## I. INTRODUCTION

The Committee does not object to Keen-Summit Capital Partners LLC's ("Keen-Summit") qualifications as a real estate broker or the proposed terms of its retention. In fact, it was the Committee that introduced Keen-Summit to the Debtor as a potential real estate broker three months ago in June of 2024.[1] However, it was, and it continues to be the Committee's position that an investment banker must first be retained to value and market the assets, because as opposed to a real estate broker, it would have the requisite strategic acquisition, reach, and industry specific expertise to capture the true market value of the casino-hotel assets in this case and to salvage the casino side of the operation by working directly with the Commonwealth Casino Commission, without the Debtor's interference.

Logically then, the marketing strategy in this case should begin with marketing the Debtor as a holistic business to maximize the value of *all* of the estate's assets, including the potential revival of its casino operations.[2] However, the Debtor has bypassed this obvious option and instead

---

[1] The Committee worked closely with the Debtor to develop a marketing strategy and discussed the two-step approach on multiple occasions. The Committee explained that the proposed investment banker is adamant that the Debtor's assets and business should be thoroughly marketed and appraised before a stalking horse bidder is selected and disclosed to the public. The Committee further suggested to the Debtor that the estate's assets should first be marketed as a casino and hotel business through an investment banker. If this approach failed, a real estate broker could then be retained to market and sell the estate's assets as real property. Despite these discussions, the Debtor opted to file the *Motion to Approve Bid Procedures for Sale of Substantially All of the Debtor's Assets and Related Relief* [Dkt. No. 182] and the instant Application, in which the Debtor proposes to sell only its interest in real property. All these disputes could have been avoided if the Debtor had agreed to first retain an investment banker to market the estate's assets as a casino and hotel business.

[2] On September 12, 2024, the Debtor filed the Supplemental Reply to Opposition by the Official Committee of Unsecured Creditors to Debtor's Motion to Approve Bid Procedures for Sale of Substantially All of the Debtor's Assets and Related Relief [Docket No. 231] (the "Reply"). In the Reply, the Debtor contends that Keen-Summit anticipates offering for sale the casino license and market the assets to the casino, hospitality, and real estate industries. This contention suggests that the Debtor acknowledges the estate's assets should be marketed as a casino and hotel business, rather than in a piecemeal manner.

AFSDOCS:300055739.2

proposes to only sell it as a real asset opportunity and in a piecemeal fashion, without first attempting to preserve the Debtor's enterprise value. By treating the assets merely as real estate, the Debtor is deterring potential buyers in the gaming and gambling industry from submitting bids and missing opportunities to capture the cumulative value of the assets.

Therefore, the Committee respectfully requests that the Court set the Debtor's backward marketing strategy straight by staying adjudication of the Debtor's employment of Keen-Summit as a real estate broker and allowing the estate's assets to first be market-tested as a holistic business by its proposed investment banker, because the employment of Keen-Summit as a real estate agent may ultimately prove unnecessary if the Debtor is successfully marketed and sold as a casino and hotel business. The Committee has identified an investment banker to facilitate this sale and will file the employment application before the hearing on the proposed bid procedures.

## II.   ARGUMENT

### A.   It Is Premature to Employ the Real Estate Broker.

A typical and standard process for liquidating assets in bankruptcy proceedings begins with hiring agents to conduct a comprehensive marketing campaign for the estate's assets. This marketing effort aims to identify a stalking horse bidder, who sets the initial bid and establishes a floor price. Once a stalking horse bidder is identified, the debtor can then seek the court's approval for the bid procedures with the stalking horse bidder.

In this case, however, the Debtor has altogether jettisoned this rational two-step process for bankruptcy sales. By prematurely and arbitrarily deeming Mr. Sit as the stalking horse bidder without retaining an investment banker to conduct a valuation and marketing of the assets as a holistic business, the Debtor has deprived creditors of the upside of a thorough marketing process, whereby more fulsome bid procedures and a higher stalking horse bid could establish the floor for a robust, lively auction.

Rather than simply retaining Keen-Summit now, creditors of this estate agree that the appropriate strategy is to have an investment banker value and market *all* of the Debtor's assets as a casino-hotel enterprise. This is particularly pertinent given that the Commonwealth Casino Commission has expressed a strong distrust for the Debtor and Mr. Sit, and that it is willing to

ARENTFOX SCHIFF LLP
AFSDOCS:300055739.2

collaborate with disinterested bidders for granting a casino license. By presenting the assets as a holistic casino and hotel business, the estate can draw interest from industries capable of running the assets as a casino and hotel and attract potential buyers who are not only interested in the real property but also in the operational aspects of the business. For instance, potential buyers in the gaming and hospitality sectors are more likely to see the intrinsic value in maintaining the business. This comprehensive marketing strategy ensures that the estate captures the cumulative value of its assets, rather than settling for the diminished returns of a piecemeal liquidation.

Therefore, the Debtor's backward marketing and sale strategy must be corrected. The estate's assets should first be valued, and market tested as a holistic business. If the assets can be successfully marketed and sold as a casino/hotel enterprise, there will be no need for the Debtor to employ a real estate agent. Should this approach not succeed, the real estate broker proposed by the Debtor can then proceed with a real estate sale. Consequently, it is premature to approve the Debtor's employment of a real estate broker to market the estate's assets in a piecemeal fashion.

**B.     It Is Necessary for the Committee to Retain Its Own Investment Banker to Fulfill Its Duty to Consult the Debtor's Administration of the Estate's Assets.**

Section 1103(c)(1) of the Bankruptcy Code provides that a chapter 11 committee appointed under section 1102 may "consult with the trustee or debtor in possession concerning the administration of the case." 11 U.S.C. § 1103(c)(1). Another fundamental duty of a chapter 11 committee is to investigate the affairs of the debtor. *See* 11 U.S.C. § 1103(c)(2). Section 1103(c)(2) provides that a committee appointed under section 1102 may: "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business, and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan." *Id*.

The Committee has engaged in multiple consultations with the Debtor regarding the two-step marketing strategy, which involves initially hiring an investment banker to market the estate's assets as a casino and hotel business. Despite these discussions, the Debtor opted to sell only its interest in real property. The Committee has a fiduciary duty to ensure that the Debtor's administration of the assets is in the best interest of the estate and its creditors. Given the Debtor's

ARENTFOX SCHIFF LLP
AFSDOCS:300055739.2

lack of cooperation on this issue, it is imperative for the Committee to identify potential buyers that may have been overlooked by the Debtor's limited marketing efforts. To adequately fulfill this duty, the Committee requires the expertise and industry connections of an investment banker.

It is important to note that the Application and the supporting declaration from Harold J. Bordwin do not provide adequate evidence showing that Keen-Summit is capable of performing the duties of an investment banker. Specifically, the declaration of Harold J. Bordwin merely states that Keen-Summit "has extensive expertise selling real estate via real estate brokerage and auction processes and sourcing real estate debt financing." *See* Docket 222, Declaration of Harold J. Bordwin, ¶6. Furthermore, the Retention Agreement attached to the Application specifies that Keen-Summit's scope of services is limited to representing the Debtor in soliciting and negotiating offers for the sale or transfer of the Debtor's interest in specific parcels of fee-owned real property, namely the Imperial Palace Casino, hotel, and villas located at 6P68+MXQ, Rte 319, Garapan, Saipan 96950, Northern Mariana Islands (the "Property"). It is clear that the scope of the Property proposed to be marketed and sold by Keen-Summit does not include the sale of the casino license or the marketing of the estate's assets as a casino and hotel business. Faced with strong creditor opposition to the proposed bid procedures, the Debtor's supplement papers [Dkt. No. 231] now seem to indicate the casino license will also be marketed by Keen-Summit; however, the Debtor provides no explanation for the qualifications or credentials of Keen-Summit to market the assets as a casino-hotel enterprise, and certainly not in the manner an investment banker would market the assets using its strategic expertise and reach to capture their composite, true market value. Furthermore, any expansion of the scope of services may necessitate an amendment to the Retention Agreement.

The Committee has identified an investment banker to facilitate a sale as a whole and will file the employment application before the hearing on the Motion, seeking the Court's approval to retain its own investment banker under Section 1103(a) of the Bankruptcy Code. The Committee respectfully requests that the Court delay approving the employment of a real estate agent and instead first approve the employment of an investment banker to initially market the estate's assets as a whole.

ARENTFOX SCHIFF LLP
AFSDOCS:300055739.2

## III. CONCLUSION

Based on the foregoing, the Committee respectfully requests that the Court stay the adjudication of the Application and continue the hearing thereon until the Committee's proposed investment banker is retained and conducts its valuation and marketing of the estate's assets as a holistic business.

Dated: September 18, 2024

Respectfully submitted,

**ARENTFOX SCHIFF LLP**

By: */s/ Aram Ordubegian*
 Aram Ordubegian
 Christopher K.S. Wong
 Attorneys for the Official Committee of
 General Unsecured Creditors

AFSDOCS:300055739.2

ARENTFOX SCHIFF LLP

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2024, I caused the forgoing document to be filed with the Clerk of Court for the United States District Court for the Northern Mariana Islands, Bankruptcy Division, using the CM/ECF System. A true and correct copy of the said pleading has been served on all counsel of record via the Court's CM/ECF System.

Executed this 18th day of September, 2024.

                                     */s/ Aram Ordubegian*
                                     ARAM ORDUBEGIAN

ARENTFOX SCHIFF LLP

AFSDOCS:300055739.2