CHOI & ITO
Attorneys at Law
CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com; aito@hibklaw.com

MCDONALD LAW OFFICE
CHARLES H. MCDONALD II (F0494)
2nd Floor ICC, Room 203
Gualo Rai, Saipan, MP 96950
Telephone: (866) 967-7567
E-Mail: charles@mcdonald.law

Attorneys for Debtor
and Debtor-in-Possession

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS
BANKRUPTCY DIVISION

| | |
|---|---|
| In re<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,<br><br>Debtor and Debtor-in-Possession.<br>88833 | Case No. 24-00002<br>(Chapter 11)<br><br>HEARING<br>DATE: October 1, 2024<br>TIME: 8:30 a.m.<br>JUDGE: Hon. Ramona Manglona |

**SUBMISSION OF REVISED AND REDLINED ASSET PURCHASE AGREEMENT TERM SHEET; EXHIBITS A -B**

IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case, submits as Exhibit A, a revised Asset Purchase Agreement Term Sheet. The Debtor submits as Exhibit B, a redlined Asset Purchase Agreement Term Sheet, which shows the

1

revised Asset Purchase Agreement Term Sheet as compared against the Asset Purchase Agreement Term Sheet filed as ECF No. 182, Ex. A.

The proposed Asset Purchase Agreement Term Sheet has been amended as follows:

1. Deletes credit bid by Stalking Horse Purchaser; and
2. Allocates $1.5 million of the purchase price to personal property; and
3. Extends outside closing date to February 28, 2025.

DATED: Honolulu, Hawaii September 18, 2024

/s/ Allison A. Ito
CHUCK C. CHOI
ALLISON A. ITO
CHARLES H. McDONALD II (F0494)
Attorneys for Debtor
and Debtor-in-Possession

# EXHIBIT A

**ASSET PURCHASE AGREEMENT STALKING HORSE TERM SHEET
RE: ASSETS OF IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC**

This Asset Purchase Agreement Stalking Horse Term Sheet dated September _, 2024, is made by and between IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC ("Debtor") and Loi Lam Sit or his assignee ("Purchaser")

| | | |
|---|---|---|
| 1. | **Certain Defined Terms:** | "**Casino License**" means that certain Exclusive Casino Operator License dated August 12, 2014, by and among the Debtor, Best Sunshine International, Ltd. and the Commonwealth Lottery Commission for the island of Saipan. |
| | | "**Cure Costs**" means the cost of curing any defaults under the Designated Contracts and Real Property Leases as necessary to obtain an order of the Bankruptcy Court assigning them to the Stalking Horse Purchaser. |
| | | "**Designated Contracts**" means those executory contracts and unexpired leases to be assumed by and assigned to the Stalking Horse Purchaser. |
| | | "**DIP Facility**" means the debtor-in-possession term loan funded by Loi Lam Sit in the Seller's bankruptcy case which is pending in the United States District Court for District of the Northern Mariana Islands, Bankruptcy Division (the "**Bankruptcy Court**"). |
| | | "**IPP**" means Imperial Pacific Properties, LLC. |
| | | "**Personal Property**" means all personal property identified in Part 5 (Inventory), Part 7 (Office furniture, fixtures, and equipment; and collectibles), and Part 8 (Machinery, equipment, and vehicles) to Schedule "B" of the Debtor's Schedules and Statement of Financial Affairs, filed in the Debtor's bankruptcy case as dkt # 74, as may be amended. |
| | | "**Real Property Leases**" means all unexpired leases of real property of the Debtor, including its interest in that certain Lease Agreement LA15-002S between Seller and the Department of Public Lands for the Commonwealth of Northern Mariana Islands. |
| 2. | **Stalking Horse Purchaser ("SHP"):** | Loi Lam Sit or assignee |
| 3. | **Seller:** | The Bankruptcy Estate of the Debtor whose chapter 11 case is pending in the Bankruptcy Court as case no. 1:24-bk-0002. |

1

| | | |
|---|---|---|
| 4. | **Transaction Structure:** | Sale free and clear of liens and encumbrances and assumption and assignment of unexpired contracts and leases under sections 363 and 365 of the Bankruptcy Code. |
| 5. | **Purpose:** | This Term Sheet is intended to be legally binding on the Parties and outlines the basic terms of the transaction, and upon mutual agreement of the Parties, can serve as the Stalking Horse Agreement, subject to overbids, to be presented to the Bankruptcy Court for approval under Sections 363(f) and 365 of the Bankruptcy Code (the "**Sale Motion**"). |
| 6. | **Acquired Assets:** | Substantially all of the assets of the Debtors (collectively, the "**Acquired Assets**"), other than the Excluded Assets, to be transferred free and clear of all interests, claims, liens and encumbrances pursuant to section 363(f) of the Bankruptcy Code. The Acquired Assets include all tangible property, accounts, machinery, equipment, inventories, tenant improvements, goodwill, software and computer programs, hardware, intellectual property, company names, product names, trade names, prepaid expenses (other than prepaid insurance) and deposits, any rights, claims or causes of action of the Debtor against third parties relating to assets, properties, losses, business or operations of any Debtor (other than those that constitute Excluded Assets), and proceeds of all the foregoing assets, including the Personal Property, Designated Contracts, Real Property Leases and the Debtor's interest in IPP. |
| 7. | **Excluded Assets:** | Except to the extent specifically identified above as an Acquired Asset, the following are not included in the Acquired Assets and are not being sold to the Stalking Horse Purchaser (collectively, the "**Excluded Assets**"): (i) cash, (ii) cash equivalents (including receivables and the proceeds thereof), (iii) income tax receivables, (iv) deferred tax assets, (v) the Casino License and any claims related thereto, (vi) prepaid insurance, (vii) the Purchase Price and all rights of the Debtor under the Stalking Horse Agreement, (viii) any rights, claims or causes of action under Chapter 5 of the Bankruptcy Code, (ix) all personnel records and other books, records, and files that the Debtor is required by law, if any, to retain, (x) any claim, right or interest of any Debtor in or to any refund, rebate, abatement or other recovery for taxes, together with any interest due thereon or penalty rebate arising therefrom, including (xi) any other prepaid assets or properties expressly set forth on a Schedule to be attached to the Stalking Horse Agreement, (xii) applicable federal, state, and local taxes, (xiii) any |

books and records relating to any of the foregoing rights in, to and under the Casino License or any books and records relating to patrons of the Hotel or Casino; and (ix) (a) any rights, claims or causes of action under Chapter 5 of the Bankruptcy Code; (b) all claims and defenses pursuant to applicable non-bankruptcy law and Sections 105, 502, 506, 510, 524 and 551-553 of the Bankruptcy Code against any creditor regarding the amount, priority, or validity of its claim (whether pre-petition or post-petition); and (c) all causes of action, including, but not limited to, claims against the Debtor's insiders, employees, and/or agents relating to pre-confirmation and/or pre-petition conduct, including without limitation, claims for fraud, breaches of fiduciary duty or negligence.

**8. Purchase Price:** The purchase price for the purchase, sale, assignment and conveyance of the Debtor's right, title and interest in, to and under the Acquired Assets (as defined below), free and clear of all interests, claims, liens and encumbrances pursuant to section 363(f) of the Bankruptcy Code, shall be $10,000,000 consisting of:

(a) Cure Costs: the payment of Cure Costs relating to the Designated Contracts/Real Property Leases on terms ordered by the Bankruptcy Court or negotiated by SHP and the contract counterparties; and
(b) Cash: Balance of the Purchase Price shall be paid in cash at closing.

**9. Allocation:** The Purchase Price shall be allocated as follows: (a) $1,500,000 to the Personal Property; and (b) balance of the Purchase Price to the Leased Property.

**10. Closing** Unless otherwise agreed to by written mutual consent of the Parties, the closing of the transactions contemplated by this Term Sheet (the "Closing") shall occur within seven (7) days following entry of an order approving the Sale Motion.

**11. Good Faith Deposit:** SHP shall deposit as earnest money in escrow the sum of Two Million and 00/100 Dollars ($2,000,000.00) in cash (such sum, together with any interest thereon, being hereinafter collectively referred to and held as the "**Deposit**"), with Pacific American Title Insurance Company or Security Title. (being herein sometimes referred to as the "**Title Company**") which shall hold the balance of the Deposit and make delivery of the Deposit to the party entitled thereto under the terms hereof. The Deposit will be non-refundable, if the SHP is the successful bidder, and the sale does not close due to SHP's default.

3

| | |
|---|---|
| **12. Assumed Liabilities:** | SHP shall, effective as of the closing date, assume those liabilities and obligations arising from events occurring on or after the closing date under any Designated Contracts or Real Property Leases.  SHP shall also be responsible for payment of Cure Costs. |
| **13. Excluded Liabilities:** | SHP shall not assume or be deemed to have assumed any liabilities of the Debtor other than the Assumed Liabilities, including, without limitation, any liabilities associated with the Excluded Assets and specifically including, without limitation, any other existing indebtedness or encumbrances, any federal, state, or local tax liabilities, and any obligations pursuant to employee-related liabilities, in each case to be assumed, if at all, only in SHP's sole discretion by a signed writing and court order. |
| **14. Bidding Procedures:** | Deadline to submit bids shall be no late than 10 business days prior to "Auction."  Copies of a written bid shall be provided to the Debtor and Committee, care of counsel.

Minimum Overbid shall be $300,000 above the purchase price with incremental overbids of not less than $100,000 |
| **15. Requirement of Bankruptcy Court Approval and Subject to Overbids.** | If the Bankruptcy Court does not approve the Sale Motion or the bidding procedures setting forth the terms by which the Acquired Assets will be auctioned (the "**Bid Procedures**"), then the terms of this Term Sheet are null and void, and the Parties will have no obligation to complete the proposed sale or perform any other obligations set forth in this Term Sheet. |
| **16. Breakup Fee:** | In consideration of the significant costs and efforts to be expended and risks assumed by SHP in negotiating the transaction described in this Term Sheet, the Stalking Horse Agreement will provide for a break-up fee payable by the Seller to SHP in the amount of $200,000 (the "**Breakup Fee**") in the event the Stalking Horse Agreement is terminated as a result of either (i) an Event of Default by a Debtor under the DIP Facility, or (ii) a breach by a Debtor of a material term of, or failure to timely satisfy a condition to closing that is a Debtor's obligation under, the Stalking Horse Agreement; provided that, if SHP, in its sole discretion, elects to seek specific performance of the Stalking Horse Agreement, then SHP shall not be entitled to the Breakup Fee or Expense Reimbursement. The Breakup Fee and Expense Reimbursement shall constitute administrative expense claims pursuant to section 503(b) of the Bankruptcy Code.

If the Stalking Horse Agreement is terminated because of a superior bid, then the Breakup Fee shall be payable from the |

|  |  |
|---|---|
|  | proceeds of an alternative transaction whereby the assets contemplated to be sold to SHP are, instead, sold to a third party. For the avoidance of doubt, in no event shall SHP be entitled to the Breakup Fee due to (i) its breach of its obligations under this Term Sheet; or (ii) where the Bid Procedures are not approved by the Bankruptcy Court. |
| **17. No Other Expenses:** | It is expressly understood by SHP that the Breakup Fee is the only source of recovery for expenses it incurs in connections with the transaction contemplated in this Term Sheet. All expenses, including, but not limited to, the Parties' out-of-pocket expenses, legal fees, and costs incurred in connection with the negotiation and consummation of the Term Sheet will be borne by each Party. |
| **18. Conditions:** | Stalking Horse Purchaser's and Debtor's obligations to consummate the transaction shall be subject to the following conditions:<br>• No injunctions;<br>• Material accuracy of representations and warranties;<br>• No termination of any of the Real Property Leases or Designation Contracts<br>• Entry of an Order of the Court approving the Stalking Horse Purchaser as the highest bidder for the Acquired Assets pursuant to sections 363 and 365, including a finding the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code. |
| **19. Specific Performance:** | Because the exact nature and extent of damages resulting from a breach of the Stalking Horse Agreement are uncertain at the time of entering into the Stalking Horse Agreement, and because such a breach would result in damages that would be difficult to determine with certainty, it is understood that money damages would not be a sufficient remedy and the parties shall each be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach. |
| **20. As Is, Where Is:** | The Stalking Horse Purchaser is acquiring the Acquired Assets at the closing "as is, where is" and, except as otherwise expressly provided in the Stalking Horse Agreement, the Debtor is making no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Acquired Assets. |
| **21. Termination:** | The Definitive Agreement may be terminated as follows:<br>• Mutual consent of Seller and Purchaser; |

    •  Material breach of a representation or covenant by Seller or Purchaser which is not cured within thirty (30) days following notice of such breach; or

    •  The Closing has not taken place on or prior to February 28, 2025 or such later date as Seller may agree upon.

**22. <u>Governing Law</u>:**   This Term Sheet will be governed by and construed under the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and, where appropriate, the laws of the Commonwealth of the Northern Mariana Islands, notwithstanding any conflict of or choice of laws principles.

**23. <u>Dispute Resolution</u>:**   All disputes arising out of or in connection with this Term Sheet will fall within the exclusive jurisdiction of the Bankruptcy Court.

**24. <u>Modification</u>:**   Once accepted, this Term Sheet will not be changed, modified, amended, or discharged except by an instrument in writing signed by authorized representatives of each Party specifically referencing this Term Sheet. No delay or failure by any Party in the exercise of any right granted under this Term Sheet or available at law or equity will be construed as a waiver of such right. All waivers must be in writing and will in no way impair the rights of the Parties in any other respect or at any other time.

By: Imperial Pacific International (CNMI), LLC

By: _____
  Howyo Chi, Its Manager
          "Seller"

By: _____
  Loi Lam Sit
          "Stalking Horse Purchaser"

# EXHIBIT B

**ASSET PURCHASE AGREEMENT STALKING HORSE TERM SHEET
RE: ASSETS OF IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC**

This Asset Purchase Agreement Stalking Horse Term Sheet dated ~~August~~September _, 2024, is made by and between IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC ("Debtor") and Loi Lam Sit or his assignee ("Purchaser")

| | | |
|---|---|---|
| 1. | **Certain Defined Terms:** | "**Casino License**" means that certain Exclusive Casino Operator License dated August 12, 2014, by and among the Debtor, Best Sunshine International, Ltd. and the Commonwealth Lottery Commission for the island of Saipan. |
| | | "**Cure Costs**" means the cost of curing any defaults under the Designated Contracts and Real Property Leases as necessary to obtain an order of the Bankruptcy Court assigning them to the Stalking Horse Purchaser. |
| | | "**Designated Contracts**" means those executory contracts and unexpired leases to be assumed by and assigned to the Stalking Horse Purchaser. |
| | | "**DIP Facility**" means the debtor-in-possession term loan funded by Loi Lam Sit in the Seller's bankruptcy case which is pending in the United States District Court for District of the Northern Mariana Islands, Bankruptcy Division (the "**Bankruptcy Court**"). |
| | | "**IPP**" means Imperial Pacific Properties, LLC. |
| | | "**Personal Property**" means all personal property identified in Part 5 (Inventory), Part 7 (Office furniture, fixtures, and equipment; and collectibles), and Part 8 (Machinery, equipment, and vehicles) to Schedule "B" of the Debtor's Schedules and Statement of Financial Affairs, filed in the Debtor's bankruptcy case as dkt # 74, as may be amended. |
| | | "**Real Property Leases**" means all unexpired leases of real property of the Debtor, including its interest in that certain Lease Agreement LA15-002S between Seller and the Department of Public Lands for the Commonwealth of Northern Mariana Islands. |
| 2. | **Stalking Horse Purchaser ("SHP"):** | Loi Lam Sit or assignee |
| 3. | **Seller:** | The Bankruptcy Estate of the Debtor whose chapter 11 case is |

1

|   |   |   |
|---|---|---|
|   |   | pending in the Bankruptcy Court as case no. 1:24-bk-0002. |
| 4. | **Transaction Structure:** | Sale free and clear of liens and encumbrances and assumption and assignment of unexpired contracts and leases under sections 363 and 365 of the Bankruptcy Code. |
| 5. | **Purpose:** | This Term Sheet is intended to be legally binding on the Parties and outlines the basic terms of the transaction, and upon mutual agreement of the Parties, can serve as the Stalking Horse Agreement, subject to overbids, to be presented to the Bankruptcy Court for approval under Sections 363(f) and 365 of the Bankruptcy Code (the "**Sale Motion**"). |
| 6. | **Acquired Assets:** | Substantially all of the assets of the Debtors (collectively, the "**Acquired Assets**"), other than the Excluded Assets, to be transferred free and clear of all interests, claims, liens and encumbrances pursuant to section 363(f) of the Bankruptcy Code. The Acquired Assets include all tangible property, accounts, machinery, equipment, inventories, tenant improvements, goodwill, software and computer programs, hardware, intellectual property, company names, product names, trade names, prepaid expenses (other than prepaid insurance) and deposits, any rights, claims or causes of action of the Debtor against third parties relating to assets, properties, losses, business or operations of any Debtor (other than those that constitute Excluded Assets), and proceeds of all the foregoing assets, including the Personal Property, Designated Contracts, Real Property Leases and the Debtor's interest in IPP. |
| 7. | **Excluded Assets:** | Except to the extent specifically identified above as an Acquired Asset, the following are not included in the Acquired Assets and are not being sold to the Stalking Horse Purchaser (collectively, the "**Excluded Assets**"):  (i) cash, (ii) cash equivalents (including receivables and the proceeds thereof), (iii) income tax receivables, (iv) deferred tax assets, (v) the Casino License and any claims related thereto, (vi) prepaid insurance, (vii) the Purchase Price and all rights of the Debtor under the Stalking Horse Agreement, (viii) any rights, claims or causes of action under Chapter 5 of the Bankruptcy Code, (ix) all personnel records and other books, records, and files that the Debtor is required by law, if any, to retain, (x) any claim, right or interest of any Debtor in or to any refund, rebate, abatement or other recovery for taxes, together with any interest due thereon or penalty rebate arising therefrom, including (xi) any other prepaid assets or properties expressly set forth on a Schedule to be attached to the Stalking Horse |

2

Agreement, (xii) applicable federal, state, and local taxes, (xiii) any books and records relating to any of the foregoing rights in, to and under the Casino License or any books and records relating to patrons of the Hotel or Casino; and (ix) (a) any rights, claims or causes of action under Chapter 5 of the Bankruptcy Code; (b) all claims and defenses pursuant to applicable non-bankruptcy law and Sections 105, 502, 506, 510, 524 and 551-553 of the Bankruptcy Code against any creditor regarding the amount, priority, or validity of its claim (whether pre-petition or post-petition); and (c) all causes of action, including, but not limited to, claims against the Debtor's insiders, employees, and/or agents relating to pre-confirmation and/or pre-petition conduct, including without limitation, claims for fraud, breaches of fiduciary duty or negligence.

8. **Purchase Price:** The purchase price for the purchase, sale, assignment and conveyance of the Debtor's right, title and interest in, to and under the Acquired Assets (as defined below), free and clear of all interests, claims, liens and encumbrances pursuant to section 363(f) of the Bankruptcy Code, shall be $10,000,000 consisting of:

   (a) Credit for the DIP Facility;
   (b)(a)   Cure Costs: the payment of Cure Costs relating to the Designated Contracts/Real Property Leases on terms ordered by the Bankruptcy Court or negotiated by SHP and the contract counterparties; and
   (c)(b)   Cash: Balance of the Purchase Price shall be paid in cash at closing.

9. **Allocation:** The Purchase Price shall be allocated as follows: (a) $1,500,000 to the Personal Property; and (b) balance of the Purchase Price to the Leased Property.

9.10. **Closing:** Unless otherwise agreed to by written mutual consent of the Parties, the closing of the transactions contemplated by this Term Sheet (the "Closing") shall occur within seven (7) days following entry of an order approving the Sale Motion.

10.11. **Good Faith Deposit:** SHP shall deposit as earnest money in escrow the sum of Two Million and 00/100 Dollars ($2,000,000.00) in cash (such sum, together with any interest thereon, being hereinafter collectively referred to and held as the "**Deposit**"), with Pacific American Title Insurance Company or Security Title. (being herein sometimes referred to as the "**Title Company**") which shall hold the balance of the Deposit and make delivery of the Deposit to the party entitled thereto under the terms hereof. The Deposit will be non-

| | | |
|---|---|---|
| | | refundable, if the SHP is the successful bidder, and the sale does not close due to SHP's default. |
| ~~11.~~12. | **Assumed Liabilities:** | SHP shall, effective as of the closing date, assume those liabilities and obligations arising from events occurring on or after the closing date under any Designated Contracts or Real Property Leases.  SHP shall also be responsible for payment of Cure Costs. |
| ~~12.~~13. | **Excluded Liabilities:** | SHP shall not assume or be deemed to have assumed any liabilities of the Debtor other than the Assumed Liabilities, including, without limitation, any liabilities associated with the Excluded Assets and specifically including, without limitation, any other existing indebtedness or encumbrances, any federal, state, or local tax liabilities, and any obligations pursuant to employee-related liabilities, in each case to be assumed, if at all, only in SHP's sole discretion by a signed writing and court order. |
| ~~13.~~14. | **Bidding Procedures:** | Deadline to submit bids shall be no late than 10 business days prior to "Auction."  Copies of a written bid shall be provided to the Debtor and Committee, care of counsel.<br><br>Minimum Overbid shall be $300,000 above the purchase price with incremental overbids of not less than $100,000 |
| ~~14.~~15. | **Requirement of Bankruptcy Court Approval and Subject to Overbids.** | If the Bankruptcy Court does not approve the Sale Motion or the bidding procedures setting forth the terms by which the Acquired Assets will be auctioned (the "**Bid Procedures**"), then the terms of this Term Sheet are null and void, and the Parties will have no obligation to complete the proposed sale or perform any other obligations set forth in this Term Sheet. |
| ~~15.~~16. | **Breakup Fee:** | In consideration of the significant costs and efforts to be expended and risks assumed by SHP in negotiating the transaction described in this Term Sheet, the Stalking Horse Agreement will provide for a break-up fee payable by the Seller to SHP in the amount of $200,000 (the "**Breakup Fee**") in the event the Stalking Horse Agreement is terminated as a result of either (i) an Event of Default by a Debtor under the DIP Facility, or (ii) a breach by a Debtor of a material term of, or failure to timely satisfy a condition to closing that is a Debtor's obligation under, the Stalking Horse Agreement; provided that, if SHP, in its sole discretion, elects to seek specific performance of the Stalking Horse Agreement, then SHP shall not be entitled to the Breakup Fee or Expense Reimbursement. The Breakup Fee and Expense Reimbursement shall constitute administrative expense claims pursuant to section 503(b) of the Bankruptcy Code. |

4

|  |  |
|---|---|
|  | If the Stalking Horse Agreement is terminated because of a superior bid, then the Breakup Fee shall be payable from the proceeds of an alternative transaction whereby the assets contemplated to be sold to SHP are, instead, sold to a third party. For the avoidance of doubt, in no event shall SHP be entitled to the Breakup Fee due to (i) its breach of its obligations under this Term Sheet; or (ii) where the Bid Procedures are not approved by the Bankruptcy Court. |
| ~~16.~~17.    **No Other Expenses:** | It is expressly understood by SHP that the Breakup Fee is the only source of recovery for expenses it incurs in connections with the transaction contemplated in this Term Sheet.  All expenses, including, but not limited to, the Parties' out-of-pocket expenses, legal fees, and costs incurred in connection with the negotiation and consummation of the Term Sheet will be borne by each Party. |
| ~~17.~~18.    **Conditions:** | Stalking Horse Purchaser's and Debtor's obligations to consummate the transaction shall be subject to the following conditions:<br>•	No injunctions;<br>•	Material accuracy of representations and warranties;<br>•	No termination of any of the Real Property Leases or Designation Contracts<br>•	Entry of an Order of the Court approving the Stalking Horse Purchaser as the highest bidder for the Acquired Assets pursuant to sections 363 and 365, including a finding the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code. |
| ~~18.~~19.    **Specific Performance:** | Because the exact nature and extent of damages resulting from a breach of the Stalking Horse Agreement are uncertain at the time of entering into the Stalking Horse Agreement, and because such a breach would result in damages that would be difficult to determine with certainty, it is understood that money damages would not be a sufficient remedy and the parties shall each be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach. |
| ~~19.~~20.    **As Is, Where Is:** | The Stalking Horse Purchaser is acquiring the Acquired Assets at the closing "as is, where is" and, except as otherwise expressly provided in the Stalking Horse Agreement, the Debtor is making no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Acquired Assets. |

5

| | | |
|---|---|---|
| ~~20.~~21. | **Termination:** | The Definitive Agreement may be terminated as follows:<br>• Mutual consent of Seller and Purchaser;<br>• Material breach of a representation or covenant by Seller or Purchaser which is not cured within thirty (30) days following notice of such breach; or<br>• The Closing has not taken place on or prior to ~~December 31, 2024~~February 28, 2025 or such later date as Seller may agree upon. |
| ~~21.~~22. | **Governing Law:** | This Term Sheet will be governed by and construed under the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and, where appropriate, the laws of the Commonwealth of the Northern Mariana Islands, notwithstanding any conflict of or choice of laws principles. |
| ~~22.~~23. | **Dispute Resolution:** | All disputes arising out of or in connection with this Term Sheet will fall within the exclusive jurisdiction of the Bankruptcy Court. |
| ~~23.~~24. | **Modification:** | Once accepted, this Term Sheet will not be changed, modified, amended, or discharged except by an instrument in writing signed by authorized representatives of each Party specifically referencing this Term Sheet. No delay or failure by any Party in the exercise of any right granted under this Term Sheet or available at law or equity will be construed as a waiver of such right. All waivers must be in writing and will in no way impair the rights of the Parties in any other respect or at any other time. |

By: Imperial Pacific International (CNMI), LLC


By: _____
    Howyo Chi, Its Manager
                      "Seller"


By: _____
    Loi Lam Sit
                      "Stalking Horse Purchaser"