Bruce Berline
LAW OFFICE OF BRUCE BERLINE, LLC
Security Title Building
Isa Drive, Capitol Hill
PO Box 5682 CHRB
Saipan, MP 96950
Tel.: (670) 233-3663
Fax: (670) 233-5262
Email: bberline@gmail.com

Aaron Halegua
AARON HALEGUA, PLLC
524 Broadway, 11th Floor
New York, New York 10012
Tel.: (646) 854-9061
Email: ah@aaronhalegua.com

John-Patrick M. Fritz
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Ave.
Los Angeles, CA 90034
Tel: (310) 229-3395
Email: jpf@lnbyg.com

Attorneys for Joshua Gray

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS
BANKRUPTCY DIVISION**

| | |
|---|---|
| In re<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,<br><br>Debtor and<br>Debtor-in-Possession. | Case No. 1:24-bk-00002<br><br>**OPPOSITION BY JOSHUA GRAY TO APPLICATION OF THE OFFICIAL COMMITTEE OF GENERAL UNSECURED CREDITORS FOR AUTHORITY TO EMPLOY INTERPID INVESTMENT BANKERS LLC AS INVESTMENT BANKER EFFECTIE AS OF SEPTEMBER 22, 2024 PURSUANT TO 11 U.S.C. §§ 328 AND 1103**<br><br>Hearing Date: October 1, 2024<br>Hearing Time: 8:30 a.m. (ChST)<br>Judge: Hon. Ramona V. Manglona |

**INTRODUCTION**

Judgment creditor Joshua Gray ("Gray")[1] respectfully submits his opposition (the "Opposition") to the "Application of the Official Committee of General Unsecured Creditors for Authority to Employ Intrepid Investment Bankers LLC as Investment Banker Effective as of September 22, 2024 Pursuant to 11 U.S.C. §§ 328 and 1103 (ECF 251) (the "Application") filed by the Official Committee of General Unsecured Creditors (the "Committee") in the above-captioned chapter 11 case of Imperial Pacific International (CNMI), LLC, the debtor and debtor in possession (the "Debtor") herein.

Gray's primary concern is about the ballooning administrative costs in this case, particularly where it is expected that the money to be distributed by the estate will be quite limited. Along these lines, as he expressed earlier, Gray objects to hiring more than one professional to market and sell the hotel or hotel/casino: either Keen-Summit or Intrepid should be retained. While the Committee contends that Intrepid is only serving as an investment banker for the Committee, the specific activities it will perform—and the contingency fee that it seeks to receive—make clear that Intrepid is going to be running its own diligence, marketing, and sale process. While the Committee claims Intrepid's work will not duplicate that of other professionals, once again, the specific activities it has been engaged to perform suggest substantial (if not complete) overlap with what Keen-Summit is intended to do. Moreover, the Application should be denied because the proposed compensation terms are grossly unreasonable for the instant matter and should not be approved.

---

[1] On August 22, 2024, Gray filed proof of claim number 15 on the Debtor's claim register asserting a secured claim of no less than $5,467,083.29, which includes copies of Gray's recorded judgment lien and documents related to his writ of execution on IPI's personal property.

**ARGUMENT**

1. <u>Gray joins in UST's and the Debtor's objections</u>.

Gray joins in the objection to the Application filed by the United States Trustee ("UST") with one clarification. (*See*, ECF 260). In the event that Intrepid is retained (which Gray opposes), the UST proposed language to provide the UST with the right to object to any fee applications that are filed by professionals at the end of the sale; however, Gray proposes that ***all parties*** be afforded the right and opportunity to object to those applications.

Gray also joins in the objection to the application filed by the Debtor arguing that the services to be performed by Intrepid are duplicative and the fee structure is unreasonable. (ECF No. 261).

2. <u>The Application effectively proposes a second sale procedure, an unnecessary cost.</u>

As a preliminary matter, while the Committee claims that it is hiring Intrepid as "an investment banker for the Committee" (ECF 251 at 4:5), the terms of the Application show that Intrepid is really being hired to run a second diligence, marketing, and sale process alongside the Debtor's. The services to be provided by Intrepid are not limited to conducting a financial analysis to advise the Committee, but also include setting up due diligence, soliciting potential acquirers for a Sale, and determining the form and structure of a Sale. (ECF 251 at 7). These are services that are already going to be performed by Keen-Summit. A sale procedure should be established and then a single firm should be hired to conduct that procedure. It is a complete waste of resources, and almost unheard of, to have two firms running two, simultaneous sale procedures.[2]

---

[2] It should also be noted that the Committee does not actually have the power to engage in the sale of the Debtor's assets. Instead, this power is reserved for the trustee, or, as in this case, the debtor in possession. *See* 11 U.S.C. § 363(b)(1) ("The trustee… may… sell… property of the estate"); 11 U.S.C. § 1107(a) (debtor in possession shall have the rights, powers, and duties of the trustee); *cf.* 11 U.S.C. § 1103(c) (Committee has no power or authority to sell assets of the estate). If the Committee wishes to remove the sale procedure form the Debtor's hands, it must avail itself of the power to "request the appointment of a trustee" under § 1103(c)(4), and then hope the trustee will conduct a

3. <u>The fee structure proposed by the Application is entirely unreasonable</u>.

The fees for Intrepid are very high and very unfair. It is unreasonable that Intrepid receives *both* an hourly fee and a success fee, and that the former does not even off-set the latter. The success fee is unfair because Intrepid gets paid even if it does not produce a winning bid (or any bid). There should not be a $50,000 fee just for Intrepid to get involved without doing anything, let alone adding any value to the outcome. It is more outrageous that the $50,000 does not even offset the hourly fee or the success fee.

More importantly, the fact that either the Committee is not proposing or Intrepid will not agree to do this purely on a contingency fee basis is very telling. The only way that Intrepid really adds value to this process or to creditors is if they bring in a bidder for over $10 million. Accordingly, the estate should only agree to pay them if they are able to do that. However, the Committee has proposed an initial fee, an hourly fee, <u>and</u> a contingency fee even if Intrepid doesn't provide the bidder. How does this benefit creditors? Intrepid should only be retained if they are willing to do this on essentially a contingency basis, perhaps with a small fee of $15,000 or so to cover costs if they are not successful in finding the winning bidder. If they need so much money just to be convinced to participate at all, then they should not be part of this process.

And, as the Debtor points out, this is all in a case where the administrative costs are already ballooning. Gray's counsel inquired as to the current state of the accumulated professional fees in this matter, and they already eclipse $500,000, with Committee counsel already billing $292,000. Those fees will balloon even faster if Intrepid now starts billing hourly on this matter at its high rates.

---

§ 363(b) sale and hire Intrepid to market and sell the asset. Hiring Intrepid as an advisor, but then really having them run a sale process, side-steps the appropriate procedures.

4. <u>In the event that Intrepid is retained, its fees should be subject to evaluation at the end of the process by all parties.</u>

Gray believes that the Application should be denied outright because the proposed structure is so unreasonable given the realities of this case and the assets at hand. In the event that the Court is to consider the Application, however, Gray joins in the UST's objection that at the very least the standard of review of Intrepid's fee structure should be reviewed pursuant to 11 U.S.C. § 330 and not the easier standard of § 328. Moreover, the fees should not be set at the outset, but should be subject to objection and approval at the end of the sale process so that a fair fee commensurate with the value produced by Intrepid can be awarded.

## CONCLUSION

**WHEREFORE**, Gray respectfully requests that the Court deny the Application with prejudice, or, in the alternative, deny the Application without prejudice to the Committee re-filing it with a reasonable compensation proposal pursuant to 11 U.S.C. § 330.

Dated: September 25, 2024

Respectfully submitted,

__/s/_____
Aaron Halegua
Bruce Berline
John-Patrick M. Fritz

*Attorneys for Judgment Creditor Gray*