CHOI & ITO
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com; aito@hibklaw.com

MCDONALD LAW OFFICE

CHARLES H. MCDONALD II (F0494)
2nd Floor ICC, Room 203
Gualo Rai, Saipan, MP 96950
Telephone: (866) 967-7567
E-Mail: charles@mcdonald.law

Attorneys for Debtor and Debtor-in-Possession

UNITED STATES DISTRICT COURT
DISTRICT OF THE NORTHERN MARIANA ISLANDS
BANKRUPTCY DIVISION

| | |
|---|---|
| In re<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,<br><br>Debtor and<br>Debtor-in-possession. | Case No. 24-00002<br><br>(Chapter 11)<br><br>DEBTOR'S SUPPLEMENTAL REPLY TO OPPOSITIONS TO DEBTOR'S MOTION TO APPROVE BID PROCEDURES FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS AND RELATED RELIEF AND DEBTOR'S APPLICATION; EXHIBIT "A"<br><br>Hearing<br><br>Date:  September 19, 2024<br>Time:  8:30 a.m.<br>Judge: Hon. Ramona V. Manglona<br><br>[Relates to ECF 250, 257, 259] |

**DEBTOR'S SUPPLEMENTAL REPLY TO OPPOSITIONS TO DEBTOR'S MOTION TO APPROVE BID PROCEDURES FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS AND RELATED RELIEF; EXHIBIT "A"**

IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, debtor and debtor-in-possession herein (the "Debtor"), by and through its undersigned counsel, hereby files its Further Supplemental Reply to the following: (a) *Supplemental Opposition* filed by the Official Committee of Unsecured Creditors (the "Committee"), on September 23, 2024; (b) *Supplemental Limited Opposition* filed by Joshua Gray ("Gray") on September 24, 2024, and (c) *Supplemental Limited Joinder [to Gray's] Opposition* filed by Dotts Law Office ("Dotts") on September 24, 2024, to the Debtor's *Motion to Approve Bid Procedures for Sale of Substantially All of the Debtor's Assets and Related Relief* (the "Bid Procedures Motion").

Prior to the rescheduling of the hearing on the Bid Procedures Motion from September 19, 2024 to October 1, 2024, the Committee filed its "First" Opposition to the Bid Procedures as ECF 219 and the Debtor filed its "initial" Reply as ECF 231. The Debtor subsequently submitted a *Revised and Redlined Asset Purchase Agreement Term Sheet* (the "Revised Term Sheet") as ECF 245.[1]

The Committee's refrain is familiar: It claims that "[p]resenting the Debtor as a holistic business would attract potential strategic buyers in the gaming and gambling industry and preserve the Debtor's enterprise value." *See* ECF 250 at 3. The Committee

---

[1] The Revised Term Sheet contained three concessions, including one specifically made at the request of Gray, the higher allocation of the purchase price (from $1.0 million to $1.5 million) to the "personal property" included in the proposed sale.

1

criticizes the Debtor for selling its assets in "piecemeal" fashion.  Id.  Finally, the Committee questions the "adequacy of the value proposed by Mr. Sit."   Id. at 4.

Gray's Supplemental Limited Opposition is more targeted.  He wants (because he claims a lien on the personal property) an even higher allocation of the purchase price than $1.5 million, and asks for clarification that the estate's claims against third parties are not being sold.  See ECF 257 2.  Gray also opposes any breakup fee to Mr. Sit and notes that given the extended deadline to close the sale, deadlines for competing bids should also be extended.  Id. at 3.

Dotts similarly urges the Debtor to give potential bidders at least 60 days to conduct due diligence before the bid deadline.  See ECF  259 at 1.  He also suggests that bids be "sealed" and that the bids should be "opened by Creditors Committee or the Court . . . ."  Id. at 2.

A.    THE STALKING HORSE OFFER OF $10 MILLION IS REASONABLE.

In ECF 231, the Debtor noted that the owner of the Hyatt Regency Saipan Hotel "surrendered" the Hotel to the Department of Public Lands.  See ECF 231 at 5.  The Debtor was misinformed insofar as suggesting that the owner did not receive any consideration.  In fact, as set forth in Exhibit "A" hereto the Hyatt lease was recently assigned by the owner, Saipan Portopia Hotel Corporation, to MB Capital Corporation, for $650,000.  The Debtor notes that the Hyatt lease expires on December 31, 2061, with an option for an additional 15 years upon "the approval of the CNMI Legislature."  By contrast, the Debtor's DPL lease expires in 2040, with an option for an additional 15 years "upon approval by three-fourths of the members of the legislature."  See ECF 183 at 10 (Motion for Order Authorizing the Assumption of Nonresidential Real Property

Lease). The Hyatt comparable transaction leads to one conclusion: The Stalking Horse offer is more than reasonable under the circumstances.

Finally, the approval of the Bid Procedures Motion would not preclude a casino operator from engaging with the CCC and CNMI for an assignment of the Debtor's exclusive Casino License, or for that matter, issuance of a nonexclusive casino license. However, it is difficult to see how the estate would see any of the cure payments due to the CCC and CNMI. Given amount of the "cure", it is unlikely that any prospective purchaser would pay a "premium" for the exclusive Casin License.

C.      THE ESTATE'S CAUSES OF ACTION ARE NOT INCLUDED IN THE SALE.

The Amended Term Sheet (as well as the original Term Sheet) itemizes the following "Personal Property" as part of the sale:

> all personal property identified in Part 5 (Inventory), Part 7 (Office furniture, fixtures, and equipment; and collectibles), and Part 8 (Machinery, equipment, and vehicles) to Schedule "B" of the Debtor's Schedules and Statement of Financial Affairs, filed in the Debtor's bankruptcy case as dkt # 74, as may be amended.

The Schedules at Part 3 identify nearly $465 million in "Accounts receivable" which consist of gambling debts. It is not the Debtor's nor the Stalking Horse Purchaser's intent to include these receivables in the sale. Any Asset Purchase Agreement will make this clear.

B.      DOTTS' SUGGESTIONS ARE UNWORKABLE.

The assets that are being offered for sale through a competitive and transparent bidding process belong to the Debtor. Any sale requires the approval by both the Court and the Debtor, with input from the Committee. Hence it is puzzling that Dotts would suggest that the Debtor be excluded from the process by arguing for sealed bids to be

3

opened by the Committee or the Court. There is no precedent, rationale or basis for such a process.

Furthermore, sealed bidding is exceptionally rare in bankruptcies and only used after extensive (and failed) attempts to set a floor through a stalking horse bid. Here, the Debtor and the Stalking Horse Purchaser have agreed to reasonable bid procedures, with Committee input. Keen-Summit has confirmed that "it is best to lock up a reasonable stalking horse offer as soon as possible." *See* ECF 231-1 at ¶ 8. The Debtor has done so, subject to Court approval.

D. <u>GIVEN THE STALKING HORSE BIDDER'S CONCESSIONS, DEADLINES SHOULD BE RESET.</u>

In the Bid Procedures Motion, the Debtor requested the following deadlines be set by the Court:

- Deadline for Competing Bids:       Ten days before November 19, 2024
- Auction Date (if necessary):       November 19, 2024
- Hearing Date to confirm sale:      November 20, 2024

In light of the new extended deadline, the Debtor proposes that the above dates be moved to the Court's January, 2025 calendar. If the Court approves the employment of Keen-Summit and the Bid Procedures Motion on October 1, 2024, potential bidders will have ample time to conduct their due diligence.

E. <u>CONCLUSION</u>

The Debtor respectfully requests that the Bid Procedures Motion, as further modified herein, be granted.

4

DATED: Honolulu, Hawaii, September 25, 2024.

/s/ *Chuck C. Choi*
CHUCK C. CHOI
ALLISON A. ITO
CHARLES H. McDONALD II (F0494)
Attorneys for Debtor and
Debtor-in-Possession