CHOI & ITO
Attorneys at Law
CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com; aito@hibklaw.com

MCDONALD LAW OFFICE
CHARLES H. MCDONALD II (F0494)
2nd Floor ICC, Room 203
Gualo Rai, Saipan, MP 96950
Telephone: (866) 967-7567
E-Mail: charles@mcdonald.law

Attorneys for Debtor and
Debtor-in-Possession

UNITED STATES DISTRICT COURT
DISTRICT OF THE NORTHERN MARIANA ISLANDS
BANKRUPTCY DIVISION

| | |
|---|---|
| In re<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,<br><br>    Debtor and<br>    Debtor-in-possession. | Case No. 24-00002<br><br>(Chapter 11)<br><br>DEBTOR'S OMNIBUS REPLY TO OPPOSITIONS TO APPLICATION TO EMPLOY KEEN-SUMMIT CAPITAL PARTNERS AS REAL ESTATE BROKERS TO DEBTOR<br><br><u>Hearing</u><br><br>Date:   October 1, 2024<br>Time:  8:30 a.m. (ChST)<br>Judge: Hon. Ramona V. Manglona<br><br>[Relates to ECF 222, 225, 244, 257, and 259] |

**DEBTOR'S OMNIBUS REPLY TO OPPOSITIONS TO APPLICATION TO EMPLOY KEEN-SUMMIT CAPITAL PARTNERS AS REAL ESTATE BROKERS TO DEBTOR**

IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, debtor and debtor-in-possession herein (the "Debtor"), by and through its undersigned counsel, hereby replies to the oppositions filed by the Office of the U.S. Trustee (the "UST"), the Official Committee of General Unsecured Creditors (the "Committee"), Joshua Gray ("Gray"), and the Law Offices of Michael Dotts ("Dotts"), as ECF 225, 244, 257, and 259, respectively, to the Debtor's *Application to Employ Keen-Summit Capital Partners as Real Estate Brokers to Debtor* (the "Application"), filed herein on September 6, 2024.

I.  **REPLY**

The Debtor has tasked Keen with fulfilling two mandates:

- First, to solicit overbids, and
- Second, to the extent that there are no overbids, to provide assurance that the stalking horse offer was tested in the market.

Providing market-based evidence that the stalking horse bid is the highest and best offer available is a valuable and necessary service for which Keen should be reasonably compensated, even if this task appears difficult due to the condition of the Debtor's real property and the current state of the economy of the CNMI.

A.  **Response to UST's Limited Objection**

In its Limited Objection, the UST argues that (1) the Debtor has not proven the reasonableness of Keen's proposed compensation; and (2) potential conflicts of interest. *See* ECF 225.

1.  Compensation

The UST argues that the Debtor has not established the reasonableness of Keen's

2

proposed compensation under Section 328.  See 11 U.S.C. § 328(a).

The UST objects that:

1. A "fixed fee" of $250,000 ($50,000 engagement fee + $200,000 minimum fee which is payable even if the existing stalking horse bidder closes the sale, regardless of Keen's marketing efforts).

2. A 5% "Transaction Fee" on the gross proceeds, which the UST argues may not be reasonable if Keen's marketing efforts only marginally increase the sale price.

3. The "fixed fees" constitute a "bonus" under applicable law, which the UST questions.

The bankruptcy court "has **wide** discretion to decide whether a proposed arrangement is or is not **reasonable** or appropriate under the circumstances of a **particular case**." *Danner v. United States Tr. (In re Danner)*, 2012 Bankr. LEXIS 3634, at *14 (B.A.P. 9th Cir. July 31, 2012) (emphasis added).

Given the dual mandates of Keen's proposed employment, the proposed compensation structure is reasonable and warranted.

First, the $50,000 initial engagement fee will compensate Keen for the setup of a virtual due-diligence room, to develop and create marketing materials and a marketing plan.  It is not a bonus.

Second, given the resources that will be mobilized and devoted to market the assets, the proposed compensation structure is reasonable.  As noted in the *Debtor's Supplemental Reply to Oppositions to [Bid Procedures Motion]*, filed herein as ECF 263, there may not be any overbids because a more favorable leasehold interest for the Hyatt Hotel (which shuttered its operations earlier this year, presumably due to low occupancy) recently sold for $650,000.  Simply stated, this is a challenging real estate sale.

3

The difficulty in ascribing a value to the Debtor's assets cannot be ignored in determining the reasonableness of Keen's proposed compensation.  This transaction is the polar opposite of the sale of a stabilized, income-producing property.  The Debtor owns a 4-year closed casino with a suspended casino license and a partially constructed hotel that has been open to the elements for four years on a distant island that could not even support the local Hyatt Hotel.  The only way to validate a stalking horse offer in this climate is by exposing it to a broad market for higher and better offers.  Keen should be compensated for these efforts, regardless of outcome.

Furthermore, the 5% broker commission (which is standard in the real estate industry) is a necessary component to properly incentive Keen to find a qualified overbidder.  Any commission payable to Keen would be payable at closing, which would only occur after this Court approves a higher bid.[1]

2. <u>Scope of engagement with third-parties.</u>

The UST raises concerns about a potential conflict of interest arising from the terms and conditions in Keen-Summit's retention agreement.  The UST argues that Section XII allows Keen-Summit to provide services to competitors of the Debtor, which contradicts Section XIV's requirement that Keen-Summit act solely as the Debtor's agent.  The UST suggests that the Debtor should require Keen-Summit to delete Section XII or clarify that they can only advise competitors on matters unrelated to the Debtor's operations.

Section XII of the retention agreement provides:

---

[1] If the Stalking Horse Bidder's $10 million bid is the only bid, Keen will <u>not</u> receive any commission.

4

> **Multiple Clients**. From time to time, Keen, or one of its related entities, may and shall have the right to advise or provide services to several industry participants, some of which may be competitors of the Seller. The Seller waives any right to commence any action, suit or proceeding or make any demand, complaint or claim against Keen, its subsidiaries or affiliates, or their partners, directors, officers or other personnel, that arises out of Keen's, or one of its related entities', right to advise or provide services to industry competitors of the Seller.

Keen has agreed that Keen will not work on any other hospitality projects in the Northern Mariana Islands during the pendency of its engagement in this case. However, Keen may advise competitors on matters unrelated to the Debtor's operations. The Debtor is willing to incorporate language to that effect in any order approving Keen's employment.

B.  **Response to Committee's Limited Objection**

The Committee filed a limited objection to the Application. The Committee "does not object to [Keen's] qualifications as a real estate broker or the proposed terms of its retention." *See* ECF at 2. However, the Committee argues that an investment banker should first be retained to value and market the assets as a "holistic" casino-hotel enterprise (e.g., the casino operations), as opposed to selling just the real estate.

The Committee insists upon a bifurcated marketing process and claims that by treating the assets merely as real estate, the Debtor is deterring potential buyers in the gaming and gambling industry from submitting bids and missing opportunities to capture the cumulative value of the assets.

The Debtor incorporates by reference ECF 263 in which it lays out the rationale for the proposed process and responds to the Committee's objections to the Bid Procedures Motion.

Neither time nor money is a luxury in this case. The investment banker is insisting on a substantial guaranteed payment. However, as previously noted, the Debtor concluded that the estate cannot afford two sets of professionals to market the assets. *See e.g.*, ECF 257, *Gray's Limited Opposition* ("Gray believes that only one firm should be hired in order to avoid duplicative work and excessive administrative costs to the estate—which will eventually result in less money for creditors in the event of a sale"). *See also* ECF 261, *Debtor's Objection to Committee's Application to Employ Intrepid Investment Bankers LLC*.

The Committee has failed in its attempt to appoint a Chapter 11 Trustee. Yet, the Committee seeks again to usurp the Debtor's central role in this Chapter 11 proceeding and override the Debtor's reasonable business judgment by opposing Keen's employment, and proposing to hire an investment banker to market the Debtor's assets. While the Bankruptcy Code and Rules ensures the Committee the opportunity to participate in the process, they do not contemplate the Committee selling off substantially all of the Debtor's assets. The Court should not allow the Committee to overstep its authority. Only the estate representative, i.e., the Debtor, has authority to sell estate assets under Section 363 of the Bankruptcy Code.

C. **Response to Gray**

In ECF 262, Gray makes clear that he opposes Intrepid's retention because the proposed compensation of Intrepid is unreasonable and because Intrepid would duplicate services that would be performed by Keen. The Debtor agrees that only one firm should be hired, Keen.

D. **Response to Dott's Joinder**

Dotts filed a joinder to the Gray's Limited Opposition to the Application in which Dotts also suggests that "Keen-Summit or such other entity who will be marketing the property should meet with the Department of Public Lands to determine what will be required to obtain lease extensions, with the Commonwealth Casino Commission to determine the feasibility of marketing a casino license with the property, and the Department of Public Works to identify permitting issues and what will be required to complete the project." ECF 259 at 1-2.

Harold J. Bordwin has already confirmed that it will reach out to the Commonwealth Casino Commission. *See* ECF 231-1. Keen is also prepared to reach out to DPL regarding its concerns and potentially favorable modification to the ground lease.

II. **CONCLUSION**

For the foregoing reasons, the Debtor requests that the Application be approved, as modified herein.

DATED: Honolulu, Hawaii, September 25, 2024.

 */s/ Chuck C. Choi*
CHUCK C. CHOI
ALLISON A. ITO
CHARLES H. McDONALD II
Attorneys for Debtor and
Debtor-in-Possession