F I L E D
Clerk
District Court
OCT 19 2024
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS
BANKRUPTCY DIVISION

| | |
|---|---|
| In re<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,<br><br>　　Debtor and<br>　　Debtor-in-Possession. | Case 1:24-bk-00002<br><br>**MEMORANDUM OF DECISION DENYING CREDITOR CNMI'S MOTION TO CONVERT TO CHAPTER 7** |

　　Creditor Commonwealth of the Northern Mariana Islands ("CNMI") filed a motion to convert the case from Chapter 11 to Chapter 7 of the bankruptcy code. (Mot. Convert, ECF No. 129-1.) The U.S. Trustee ("UST") filed a statement in response seeking dismissal instead. (UST Statement 8-9, ECF No. 138.) The Official Committee of General Unsecured Creditors ("Committee"), and the Debtor and Debtor-in-Possession Imperial Pacific International (CNMI), LLC ("Debtor") each filed their own respective oppositions (Committee Opp'n, ECF No. 155; Debtor Opp'n, ECF No. 158). Thereafter, the CNMI and UST filed replies (CNMI Reply, ECF No. 166; UST Reply, ECF No. 167). After the Debtor filed a separate motion to approve bid procedures (ECF No. 182) against the Committee's admonition, the Committee supplemented its opposition to the CNMI's motion seeking appointment of a Chapter 11 trustee. (Committee Suppl., ECF No. 188.) The matter came for a hearing on August 14, 2024, during which the Court denied the CNMI's motion to convert and the UST's

1

request to dismiss the case. (Mins., ECF No. 195.) The Court now issues this Memorandum Decision detailing its rationale.

I.   FACTS

The Debtor filed its voluntary Chapter 11 bankruptcy petition on April 19, 2024. (ECF No. 1.) Initially, the Debtor planned to reorganize, which required settling with the CNMI over the issue of the Commonwealth Casino Commission's suspension of the Debtor's Casino License. (Committee Opp'n 7.) "However, when it became clear that no settlement could be reached, the Committee worked diligently and collaboratively with the Debtor to reevaluate and adjust the case exit strategy." (*Id.*) In July 2024, after the pending motion was filed, the Court issued a final order (ECF No. 173) authorizing the Debtor to obtain postpetition indebtedness ("DIP loan") in the amount of $1.4 million, with $50,000 earmarked for insurance (ECF No. 173-1).

The movant CNMI has $87,573,315.39 in unsecured claims against the debtor. (*See* ECF No. 3.)[1] The CNMI filed its motion to convert case to Chapter 7 (Mot. Convert) pursuant to 11 U.S.C. §1112(b) on June 20, 2024, but noticed it for August 14, 2024. While the Court is required to hold a § 1112(b) hearing "not later than 30 days after filing of the motion" and a decision "not later than 15 days after commencement of such hearing," there is an exception if "the movant expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting the time limits established by this paragraph." 11 U.S.C. § 1112(b)(3). Here, the CNMI

---

[1] The Court grants the UST's request to take judicial notice, pursuant to Federal Rule of Evidence 201 which is made applicable by Federal Rules of Bankruptcy Procedure 9017, of the Debtor's filings in this case. (UST Statement 2 n.1.)

requested a hearing date beyond the 30-day deadline to accommodate its counsel's off-island notice, constituting express consent.

## II. LEGAL STANDARD

Section 1112(b)(1) of Title 11 of the U.S. Code dictates that:

> on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

Conversely, § 1112(b)(2) precludes conversion and dismissal

> if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
>
> > (i) for which there exists a reasonable justification for the act or omission; and
> >
> > (ii) that will be cured within a reasonable period of time fixed by the court.

The term "cause," as required per § 1112(b)(1), includes "(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" and "(C) failure to maintain appropriate insurance that poses a risk to the estate or to the public[.]" 11 U.S.C. § 1112(b)(4). "The bankruptcy court has broad discretion in determining what constitutes 'cause' under section 1112(b)." *In re Sullivan*, 522 B.R. 604, 614 (B.A.P. 9th Cir. 2014) (citation omitted). "The

movant bears the burden of establishing by a preponderance of the evidence that cause exists." *Id.* (citation omitted).

Once the movant meets its burden to establish cause, "the burden shifts to the party opposing the motion, usually the debtor, to establish grounds for applying the exception under § 1112(b)(2) and avoid conversion or dismissal." *In re Hoyle*, No. 10–01484–TLM, 2013 WL 210254, at *13 (Bankr. D. Idaho 2013); *see Sullivan*, 522 B.R. at 612 (explaining that once bankruptcy court finds cause, it must also "identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate" pursuant to § 1112(b)(2) (citations omitted)); *In re Delta AG Grp. LLC*, 596 B.R. 186, 194 (Bankr. W.D. La. 2019). If the movant establishes cause and the non-movant is unable to meet its burden under § 1112(b)(2), "dismissal or conversion is mandatory, *unless* the court determines the appointment of a chapter 11 trustee or an examiner is in the best interests of creditors and the estate." *Delta*, 596 B.R. at 194 (citing § 1112(b)(1)); *see, e.g.*, *In re Staff Inv. Co.*, 146 B.R. 256, 260 (Bankr. E.D. Cal. 1992). To determine what is in the best interest of creditors and the estate, the court should employ "a balancing test to be applied through case-by-case analysis." *Staff Inv. Co.*, 146 B.R. at 260. The bankruptcy court has "an independent obligation under § 1112 to consider what would happen to all creditors on dismissal and, in light of its analysis, [decide] whether dismissal or conversion would be in the best interest of all creditors, not just the largest and most vocal creditor." *Sullivan*, 522 B.R. at 613 (citations omitted). "Bankruptcy courts should proceed in a deliberate manner when confronted with a motion under § 1112(b) and should not 'precipitously sound the death knell for a Chapter 11 debtor by prematurely converting or dismissing the case.'" *In re Integrated Pet Foods, Inc.*, No. 03–33362 DWS, 2004 WL 2252119, at *6 (Bankr.

E.D. Pa. Sept. 17, 2004) (quoting *In re Tracey Serv. Co., Inc.*, 17 B.R. 405, 409 (Bankr. E.D. Pa. 1982)).

### III. DISCUSSION

The CNMI, as a creditor, is a party in interest eligible to bring a motion to convert.[2] *See* 11 U.S.C. § 1109(b) ("A party in interest, including . . . a creditor . . . may raise and may appear and be heard on any issue in a case under this chapter.") It argued that cause exists to convert the case from Chapter 11 to Chapter 7 "because of substantial or continuing loss to or diminution of the Estate and the absence of a reasonable likelihood of rehabilitation" and "because of the Debtor's failure to maintain appropriate insurance that poses a risk to its Estate and to the public." (Mot. Convert 10, 14.) The UST agreed that cause exists based on the Debtor's failure to maintain fire and casualty insurance but requested the case be dismissed. (UST Statement 7–9.) The Committee contended that cause does not exist and that neither conversion nor dismissal is in the best interest of the estate or creditors; rather it proposed appointment of a Chapter 11 trustee pursuant to 11 U.S.C. § 1104(a) if by the hearing on August 14, 2024, the debtor does not abide by the following "Sale Milestones":

> 1. select and retain an investment banker, acceptable to the Committee, with an international reach and experience in selling distressed hotel and casino assets, that has no prior connections to the Debtor's principals;
>
> 2. file a motion to retain said investment banker in the form approved by the Committee; and
>
> 3. provide draft bidding procedures and sale motion to the Committee for its comments and approval.

---

[2] IPI objected that the CNMI had not filed a certificate of service denoting service on all creditors as required per Federal Rule of Bankruptcy Procedure 2002(a)(4) (Debtor Opp'n 2 n.1), and the CNMI subsequently filed a certificate of service (ECF No. 174).

(Committee Opp'n 5-9.) The Debtor opposed conversion and dismissal because it argued that casualty insurance is not appropriate. (Debtor Opp'n 5.) In its reply, movant CNMI disagreed with the UST and advocated against dismissal, but conceded that if the case is not converted to Chapter 7, a Chapter 11 trustee should be appointed. (CNMI Reply 2.) The UST maintained that the case should be dismissed because neither a Chapter 7 trustee nor Chapter 11 trustee will be able to obtain casualty insurance. (UST Reply 2–3.) While the Committee requested appointment of a Chapter 11 trustee when the Debtor filed a motion to sell its assets for an arbitrary price (Committee Suppl. 2), at the hearing, the Committee recognized that it needed to file a separate motion.

### A. Continuing Diminution of the Estate *and* the Absence of a Reasonable Likelihood of Rehabilitation

Cause to convert or dismiss a case exists when there is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation[.]" § 1112(b)(4)(A). "Diminution of an estate exists where, for example, the debtor's business has ceased . . . or the debtor's liabilities outstrip its assets." *In re Bay Area Material Handling, Inc.*, 76 F.3d 384, at *2 (9th Cir. 1996) (unpublished) (first citing *In re Citi–Toledo Partners*, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994), and then citing *In re CCN Realty Corp.*, 23 B.R. 261, 262 (Bankr. S.D.N.Y. 1982)). Here, the Debtor acknowledged that it has no operations. (Debtor Opp'n 2.) Further, the Debtor lists its liabilities at $284,353,211.16 ($284 million) with its assets at $6,474,768.71 ($6 million). (ECF No. 74, 2.) Neither the Debtor nor the Committee contested the first element of continuing diminution of the estate. Because the Debtor's liabilities outstrip its assets, the Court concluded that there is continuing diminution of the estate.

As to the second element of rehabilitation, the CNMI focused its motion on the Debtor's inability to reorganize. (Mot. Convert 14.) However, "[t]here is no requirement that the plan

6

contemplate reorganization, as a liquidating plan is an acceptable alternative in a Chapter 11 case, and thus a liquidation is a form of rehabilitation." *In re Smith*, 77 B.R. 496, 502 (Bankr. E.D. Pa. 1987) (citations omitted); *see* 11 U.S.C. § 1123(a)(5)(D) ("[A] plan shall . . . provide adequate means for the plan's implementation, such as . . . sale of all or any part of the property of the estate[.]"). The Committee detailed the steps the Debtor undertook to proceed with liquidation under Chapter 11 once it became apparent that reorganization was not feasible since the CNMI is unwilling to settle. (Committee Opp'n 5–9.) For example, "[t]he Debtor and the Committee have begun the process of interviewing investment bankers with proven track records in selling distressed hotel and casino assets and the wherewithal to reach regional and international hotel investors and developers" and they "have been conferring on the various proposals, comparing the compensation terms, and reviewing marketing plans." (*Id*. at 5–6.) To ensure that the sale advances, the Committee proposed that IPI undertake the Sale Milestones. Based on the foregoing, the Court held that the CNMI failed to meet its burden to establish the absence of a reasonable likelihood of rehabilitation, as liquidation is a form of rehabilitation.

### B. Failure to Maintain Appropriate Insurance that Poses a Risk to the Estate or Public

Failure to maintain *appropriate* insurance that poses a risk to the estate or to the public is another basis for cause. § 1112(b)(4)(C) (emphasis added). Here, Debtor has commercial general liability insurance (UST Statement 3; Committee Statement 4) but does not have fire or casualty insurance (UST Statement 3; Debtor Opp'n 4). The issue was thus whether the failure to maintain fire and casualty insurance poses a risk to the estate or to the public.

The CNMI argued that cause exists because the Debtor's failure to maintain appropriate insurance poses a risk to its estate and to the public. (Mot. 14.) It further argued that "[w]hen a Chapter

11 debtor owns real property with structures," § 1112(b)(4)(C) requires that the debtor "maintain casualty and liability insurance to protect the estate and the public." (*Id*., citing *Delta*, 596 B.R. at 196) (other citation omitted). In *Delta*, the debtor had grain storage bins but failed to acquire appropriate insurance such that the debtor was "unable to mitigate the inherent risks to the estate and the public arising from its proposed operation of grain storage bins." *Delta*, 596 B.R. at 196. In concluding that there was cause based on the lack of insurance, the court observed "that the operation of grain storage bins present risks of known and unknown dangers to the public" such as the constant risk of explosions in grain storage. *Id.* (citation omitted). This case is distinguishable; a partially completed hotel building does not pose the same risk as grain storage bins that are at a constant risk of exploding.

Rather than apply the reasoning in *Delta*, the undersigned considered the following factors relevant for determining appropriate insurance:

> (1) applicable requirements under other federal or state laws; (2) the debtor's size and the complexity of the case; (3) the debtor's financial wherewithal to purchase insurance; (4) the existence of or lack of pre- or post-petition uninsured claims against the debtor; (5) any steps taken by the debtor to reduce the risk of claims; and, (6) the best interests of creditors.

*In re KC's Pub, LLC*, 428 B.R. 612, 617 (Bankr. M.D. Pa. 2010). In *KC's Pub*, the debtor, who owned and operated a restaurant and tavern serving food and liquor, had considerable insurance coverage but not liquor liability or dram shop insurance coverage. *Id.* at 614, 616. In concluding that the debtor's failure to maintain liquor liability insurance did not create cause, the court observed that (1) Pennsylvania law did not require this insurance; (2) the debtor is a small business debtor per 11 U.S.C. § 101(51D) and the case was not a complex Chapter 11 case since the debtor was a LLC with a sole member; (3) the debtor did "not have easily available funds to purchase additional insurance coverage[;]" (4) no alcohol-related claims were filed against the debtor since it opened for business;

(5) the debtor had instated a training program to reduce such claims; and (6) a Chapter 11 reorganization was in the best interest of the creditors. *Id.* at 617–18. In finding that the best interest of the creditors was a successful Chapter 11 reorganization, the court noted that no disclosure statement or plan had been filed in the proceeding. *Id*. at 617–18.

Here, the factors weighed in favor of finding that lack of casualty insurance does not constitute lack of appropriate insurance. First, the CNMI did not identify CNMI or federal law requiring casualty insurance. Rather, the CNMI cited to the land lease (Lease, ECF No. 166-1) between the CNMI Department of Public Lands and the Debtor in support of its insurance argument. Article 19 of the Lease requires the Debtor to "procure upon the completion of construction of the Initial Gaming Facility, and maintain in force during the entire Term of this Lease or any extension thereof, fire and damage insurance[.]" The Debtor highlighted that fire and damages insurance is only required upon completion of the Initial Gaming Facility (IPI Opp'n 5), and the CNMI subsequently conceded that the construction of that facility has not been completed (CNMI Reply 4). Article 20 of the Lease requires the Debtor to, "from the Commencement Date of this Lease, procure and maintain in force during the entire term of this Lease or any extension thereof, at its sole expense, commercial general liability insurance[.]" The Debtor does have commercial general liability insurance. (UST Statement 3; Committee Statement 4.) The UST noted that its Operating and Reporting Requirements for Chapter 11 Cases for Region 15 ("Region 15 ORR"), which the Debtor was provided, require that the Debtor maintain insurance with "[c]asualty coverage (tangible assets capable of loss by fire, weather, theft, vandalism, etc.)[.]" (UST Statement 2–3.) The Region 15 ORR warn that "[t]imely compliance with each of the following requirements is essential and required by United States Bankruptcy Code ("USC") Section 1107(a), Federal Rule of Bankruptcy Procedure ("Fed.R.Bankr.P.") 2015." Neither

the CNMI nor the UST has identified CNMI law requiring casualty insurance. Second, the Court recognizes that this case is more complex than *KC's Pub*, as the Debtor's liabilities are listed at $284,353,211.16 and assets at $6,474,768.71. (ECF No. 74 at 2.) However, the Debtor is an LLC with a sole member, like the Debtor in *KC's Pub*. Third, while a portion of the approved DIP loan was reserved for insurance, the Debtor has been unable to locate an insurance company willing to underwrite casualty insurance coverage. (Debtor Opp'n 8, 12–15.) Fourth, the Debtor represented that it "is unaware of any pre- or post-petition claims that would have been covered by casualty insurance. (*Id.* at 8.) Fifth, the Debtor undertook steps to reduce the risk of casualty insurance, such as securing its personal property, employing security guards, and closing the hotel grounds to the public. (*Id.*) Moreover, similar to the debtor in *KC's Pub*, the Debtor here has other insurance, such as commercial general liability insurance and workers compensation insurance. (Debtor Opp'n 4.)

The last factor——the best interests of the creditors——was heavily disputed. Movant CNMI argued that a Chapter 7 liquidation would be in the best interest; if not, then a Chapter 11 trustee. The UST proffered that dismissal would be in the best interest. The Debtor urged that a Chapter 11 liquidation is in the best interest. The Committee contended that a Chapter 11 liquidation is in the best interest, assuming that the Debtor complied with the Sale Milestones. Beginning with the CNMI's argument, the Court found Chapter 7 liquidation is not in the creditors' best interests.

> A liquidation under Chapter 11 allows the debtor in possession, one who is presumably more familiar with the assets of the debtor's organization and its respective values, the ability to plan for an orderly divestiture of the assets over time as opposed to a Chapter 7 trustee, who is generally less familiar with the debtor's assets.

*In re Deer Park*, 136 B.R. 815, 818 (B.A.P. 9th Cir. 1992). Chapter 11 liquidation "is often preferable when the liquidation can proceed in a more orderly, expeditious, and less expensive manner under the

control of the debtor" when compared to a Chapter 7 liquidation. *In re Jartran*, Inc., 71 B.R. 938, 942 n.6 (Bankr. N.D. Ill. 1987) (citation omitted); *accord In re Mirabilis Ventures, Inc.*, No. 6:08-bk-04327-KSJ, 2010 U.S. Dist. LEXIS 48055, at *15 (M.D. Fla. Apr. 21, 2010) ("In a proper case, the expertise of the debtor in possession can result in a liquidation that produces more for the benefit of creditors than would a liquidation conducted by a Chapter 7 trustee."). The Court also considered that this case was initiated less than four months prior and that the Debtor and Committee "worked diligently and collaboratively . . . to reevaluate and adjust the case exit strategy" when it became apparent that reorganization was not feasible with the CNMI unwilling to settle. (Committee Opp'n 7.) *See Integrated Pet Foods, Inc.*, 2004 WL 2252119, at *6 (warning that the court should not "precipitously sound the death knell for a Chapter 11 debtor by prematurely converting or dismissing the case" (citation omitted)). Based on the caselaw and the procedural history, the Court concluded that conversion to Chapter 7 was not in the best interest of the creditors.

   Similarly, dismissal was not in the creditor's best interest as the creditors would be left to fend for themselves to seek recovery, like through the piecemeal receiverships, without the oversight of the Committee and UST. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983), ("By permitting reorganization, … Congress presumed that the assets of the debtor would be more valuable if used in a rehabilitated business than if 'sold for scrap.'" (quoting H.R. Rep. No. 95–595, p. 220 (1977), reprinted in 1987 U.S. Code Cong. & Adm. News 5787, 6179)). Therefore, this last factor weighed in favor of finding that a Chapter 11 liquidation is currently in the best interests of the creditors.

   On balance, the factors warrant in favor of concluding that a lack of casualty insurance is not fatal, such that there is no cause based on failure to maintain appropriate insurance that poses a risk to

the estate or to the public. Therefore, the CNMI did not meet its burden to establish that cause exists to convert or dismiss the case.

## IV.  CONCLUSION

Because "cause" under 11 U.S.C. § 1112(b) does not exist, the Court DENIED the CNMI's motion to convert and declined to dismiss the case at this juncture.

IT IS SO ORDERED this 19th day of October 2024.

/s/ Ramona V. Manglona
RAMONA V. MANGLONA
Chief Judge