F I L E D
Clerk
District Court
OCT 19 2024
for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS
# BANKRUPTCY DIVISION

| | |
|---|---|
| In re<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC,<br><br>           Debtor and<br>           Debtor-in-Possession. | Case No. 1:24-bk-00002<br><br>Chapter 11<br><br>**MEMORANDUM OF DECISION DENYING BID PROCEDURES MOTION, GRANTING INTREPID APPLICATION, AND STAYING KEEN-SUMMIT APPLICATION** |

      On October 1, 2024, a hearing was held on three related motions: Debtor and Debtor-in-possession Imperial Pacific International (CNMI), LLC's ("Debtor") Motion to approve bid procedures for the sale of substantially all of its assets ("Bid Procedures Motion," ECF No. 182); the Debtor's Application to employ Keen-Summit Capital Partners LLC ("Keen-Summit") as real estate brokers to Debtor ("Keen-Summit Application," ECF No. 222); and the Official Committee of General Unsecured Creditors' (the "Committee") Application to Employ Intrepid Investment Bankers LLC ("Intrepid") as an investment banker, pursuant to 11 U.S.C. §§ 328 and 1103 ("Intrepid Application," ECF No. 251). For the reasons stated on the record and herein, the Court denied the Bid Procedures Motion, stayed the Keen-Summit Application, and granted the Intrepid Application. (Min., ECF No. 272.) On October 5, 2024, the Court issued its Order approving the Intrepid Application, subject to the modifications set forth in the Order. (ECF No. 276.) The Court now issues this memorandum decision detailing its reasoning.

## I.    BID PROCEDURES MOTION

      The Bid Procedures Motion, as updated by the Revised Asset Purchase Agreement (ECF No. 245), sets forth the Debtor's proposed procedures for conducting the sale of substantially all

the Debtor's assets. The Motion names a Stalking Horse Purchaser ("SHP"), Mr. Loi Lam Sit or his assignee, and a Stalking Horse Bid of $10,000,000. (ECF No. 245 at 4, 6.) The Motion also outlines "Acquired Assets" that would be included in sale, and "Excluded Assets" that would be excluded from the sale. (*Id.* at 5–6.) Listed among the "Excluded Assets" is "the Casino License and any claims related thereto." (*Id.* at 5.) Furthermore, at the October 1 hearing, the Debtor clarified that all causes of action against third parties, reflected in Parts 3 and 11 of the Debtor's Schedule of Assets and Liabilities (ECF No. 74 at 3–4, 8–9), would be excluded from the sale. Lastly, the Motion conditions the SHP's and Debtor's "obligations to consummate the transaction" upon the court's "finding [that] the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code." (ECF No. 245 at 8.)

### A. Maximizing the Value of the Debtor's Assets

11 U.S.C. § 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . ." "A trustee's selection of bidding and sale procedures is a matter committed to the trustee's business judgment, to which the bankruptcy court. . . give[s] deference." *In re Irish Pub-Arrowhead, LLC*, No. BAP AZ-13-1024-PaKuD, 2014 WL 486955, at *10 (B.A.P. 9th Cir. 2014) (citing *In re Lahijani*, 325 B.R. 282, 288–89 (B.A.P. 9th Cir. 2005)). However, the Court also holds the obligation in § 363(b) sales to "assure that optimal value is realized by the estate under the circumstances." *In re Lahijani*, 325 B.R. at 288. "Ordinarily, the position of the trustee is afforded deference. . . Nevertheless, particularly in the face of opposition by creditors, the requirement of court approval means that the responsibility ultimately is the court's." *In re Lahijani*, 325 B.R. at 289.

In fulfilling its duty to ensure that the Debtor's assets are sold at their optimal value, the Court denied the Bid Procedures Motion. The Motion proposed the sale of substantially all the assets of the Debtor, including its real property interests in the completed casino housed in the

unfinished hotel building located on approximately 19,204 square meters of land (ECF No. 182 at 4) at a prime location in downtown Garapan, Saipan; and all its personal property of unknown value, including 90 containers of construction materials and supplies. However, the Motion excludes the casino license and causes of action against third parties, listed as totaling over $1.2 billion, from the sale. The Debtor justifies these exclusions based on its speculation that the license and causes of action are worth little in value under the circumstances. (*See e.g.*, ECF No. 263 at 4; Schedule A/B, ECF No. 74.) The Court is not satisfied by the Debtor's speculations. The Commonwealth Casino Commission has expressed a willingness to work with disinterested bidders——parties not connected to the Debtor——in granting a casino license. (*See* ECF No. 251 at 4.) The Debtor successfully operated a casino for approximately four years, until the COVID-19 pandemic forced its closure in March 2020, and the hotel construction ceased in 2021. (ECF No. 182 at 4.) The Court finds that it is in the best interest of the estate to pursue the sale of its assets as a package. Accordingly, the Court favors the Committee's proposed approach, which requires valuing and marketing the Debtor's assets——including the casino license and the causes of action——as a package deal. For this reason, the Court has also approved the Committee's Application to employ Intrepid as an Investment Banker. (ECF No. 276.) Intrepid will pursue a comprehensive approach, market testing the Debtor's assets as a "casino/hotel business." (*See* ECF No. 251 at 4.) While Intrepid's employment to value and market the Debtor's assets has been approved, the Court notes that neither the Committee nor Intrepid has the authority to engage in the sale of the Debtor's assets; that authority rests with the Debtor. *See* 11 U.S.C. §§ 363(b)(1), 1107(a), 1103(c).

### B. Pursuing a Good-Faith Sale

In approving any sale outside the ordinary course of business, the Court has the responsibility to find that the sale has been "negotiated and proposed in good faith, that the

purchaser is proceeding in good faith, and that it is an 'arms-length' transaction." *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C. D. Cal. 1991) (internal citations omitted). Typical misconduct includes collusion between the seller and buyer. *Id.* at 842. Any sale involving an "insider" is subject to heightened scrutiny. *In re Catalina Sea Ranch, LLC*, No. 2:19-BK-24467-NB, 2020 WL 1900308, at *17 (Bankr. C.D. Cal. 2020). Section 101(31) of the Bankruptcy Code defines the term "insider." If the debtor is a corporation, insiders include directors of the debtor; officers of the debtor; persons in control of the debtor; partnerships in which the debtor is a general partner; general partners of the debtor; or relatives of a general partner, director, officer, or person in control of the debtor." 11 U.S.C. § 101(31)(B).

In addition to denying the Bid Procedures Motion on account of the Court's concerns about maximizing the value of the Debtor's assets, the Court denied the Motion because of the provision that conditions the SHP's and Debtor's "obligations to consummate the transaction" upon the court's "finding [that] the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code." (*See* ECF No. 245 at 8.) All parties who filed a response to the Bid Procedures Motion raised substantial concerns about the SHP being an "insider" within the meaning of 11 U.S.C. § 101 and raised doubts as to whether the SHP was a good faith purchaser within the meaning of 11 U.S.C § 363(m). (*See* ECF Nos. 207 at 2–3; 215 at 9; 219 at 6–8; 250 at 3–4; 257 at 4; 259.) Further, on September 16, 2024, counsel for Joshua Gray and the CNMI filed a petition for an Order to Show Cause against Mr. Loi Lam Sit, the SHP, for failing to appear for a deposition and produce requested documents regarding "his ability to pay the bid price, ability to fund and oversee the completion of the hotel, the value that he ascribed to the personal property and the basis for that valuation, and other important topics." (ECF Nos. 236; 236-1 at 11.) As the creditors in this matter have expressed, the Court does not have any information before it to suggest that the SHP is or will be a "good faith purchaser." Accordingly,

the Court, without having been provided any information about the SHP, denied the Bid Procedures Motion in part because of the provision conditioning performance of the transaction upon the Court's finding of good faith.

## II.     INTREPID AND KEEN-SUMMIT APPLICATIONS

As discussed *supra* § I.A., the Court believes that it is in the best interests of the estate to pursue the sale of its assets as a package; thus, the Court approved the Committee's Application to employ Intrepid as an Investment Banker in order for Intrepid to pursue a comprehensive approach by market testing the Debtor's assets as a "casino/hotel business" (ECF No. 276). The Court acknowledges the possibility that after completing such market testing, Intrepid may suggest that the Debtor's real estate be sold separately from its other assets. Accordingly, the Court stayed the Debtor's Application to employ Keen-Summit as Real Estate Brokers, in the event that the need for Keen-Summit's services arises.

## III.    CONCLUSION

For the foregoing reasons, the court DENIED the Bid Procedures Motion, GRANTED the Intrepid Application, and STAYED the Keen-Summit Application.

IT IS SO ORDERED this 19th day of October, 2024.

_____
RAMONA V. MANGLONA
Chief Judge