CHOI & ITO
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813

Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com; aito@hibklaw.com

McDONALD LAW OFFICE

CHARLES McDONALD
2nd Floor ICC, Room 203
Gualo Rai, Saipan, MP 96950
Telephone: (866) 967-7567
E-Mail: charles@mcdonald.law

Attorneys for Debtor
and Debtor-in-Possession

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN MARIANA ISLANDS**

**BANKRUPTCY DIVISION**

| | |
|---|---|
| In re:<br><br>**IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC,**<br><br>Debtor and Debtor in Possession. | Case No. 1:24-bk-00002<br><br>Chapter 11<br><br>**NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL ASSET**<br><br>Judge:     Hon. Robert J. Faris<br><br>[Related to Docket Nos. 338, 340] |

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On January 4, 2025, the above-captioned debtor and debtor in possession (the "Debtor") and the Official Committee of General Unsecured Creditors (the "Committee") in the above-captioned chapter 11 case (the "Chapter 11 Case") filed with the United States District Court for the Northern Mariana Islands Bankruptcy Division (the "Court") a stipulation [Docket No. 338]

(the "Stipulation") seeking entry of an order (the "Bidding Procedures Order") (i) approving bidding procedures (the "Bidding Procedures")[1] to be used in connection with the sale ("Sale") of all, or substantially all of the Debtor's assets (the "Assets"); (ii) authorizing the Debtor and the Committee to designate a Stalking Horse Bidder and provide Bid Protections in accordance with the Stalking Horse Designation Procedures; (iii) scheduling (A) an auction of the Assets (the "Auction") on and (B) a hearing to consider approval of the proposed Sale (the "Sale Hearing"); (iv) approving the form and manner of notice of the Bidding Procedures, the Auction and the Sale Hearing; (v) approving procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts") in connection with the Sale; (vi) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract of the Debtor's calculation of the amount necessary to cure any defaults under an applicable Contract and certain other information regarding the potential assumption and assignment of Contracts in connection with a Sale; and (vii) granting related relief.

On January 8, 2025, the Court entered the Bidding Procedures Order [Docket No. 340].

**You are receiving this Notice because you may be a Counterparty to a Contract of the Debtor that may be assumed and assigned to the Successful Bidder for the Assets.**

## CURE COSTS

In accordance with the Assumption and Assignment Procedures and the Bidding Procedures Order, the Debtor may, in connection with the Sale to the Successful Bidder, seek to assume and assign to the Successful Bidder certain of their Contracts. Each of the Contracts that potentially could be assumed and assigned in connection with the Sale, together with the Debtor's calculation of Cure Costs with respect to such Contracts, is set forth on Schedule 1 hereto. The inclusion of any Contract on Schedule 1 does not constitute an admission by the Debtor, the Committee, any Stalking Horse Bidder, any Successful Bidder, or any other party that such Contract is an executory

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Stipulation or the Bidding Procedures, as applicable. Any summary of the Bidding Procedures or the Bidding Procedures Order (or any provision thereof) contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any inconsistency between any summary in this Sale Notice and the terms and conditions of either of the Bidding Procedures or the Bidding Procedures Order, the actual terms and conditions in those documents shall control.

contract or an unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such Contract ultimately will be assumed or assigned. All rights of the Debtor with respect thereto are reserved.

In addition, to the extent that any of the Cure Costs set forth on Schedule 1 do not reflect (i) postpetition payments that have been made by the Debtor in respect of applicable Cure Costs or (ii) any payments that are made by the Debtor in respect of such Cure Costs after the filing of this Notice, the respective amounts required to be paid to cure any existing defaults under the applicable Contracts shall be reduced by any such corresponding postpetition payments, and the Debtor reserves its right to update the Cure Costs set forth on Schedule 1 accordingly, either by filing a supplemental notice with the Court or by written notice to the applicable Counterparty.

## CURE OBJECTIONS

### A. Cure Objection Deadline

Any Counterparty that wishes to object to the Debtor's proposed Cure Costs (each such objection, a "Cure Objection") must file with the Court by **no later than March 5, 2025, at 6:00 p.m. (ChST)** and serve on the Objection Notice Parties (as defined in Section X.C of the Bidding Procedures) its Cure Objection, which must be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof.

### B. Resolution of Cure Objections

Pursuant to the Bidding Procedures Order, the Debtor, the Committee, any Stalking Horse Bidder or Successful Bidder (if applicable) and the objecting Counterparty must first confer in good faith to attempt to resolve the Cure Objection without Court intervention. If the parties are unable to consensually resolve the Cure Objection prior to the commencement of the Sale Hearing, the Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to the following paragraph. If a Cure Objection is resolved in a manner that is not in the best interests of the Debtor and its estate, whether or not such resolution occurs prior to or after the closing of the Sale, the Debtor, the Committee, and the Successful Bidder may determine that any Contract subject to such resolved Cure Objection no

longer will be assumed and assigned. All other objections to the Debtor's proposed assumption and assignment of the Debtor's right, title, and interest in, to, and under a Contract shall be heard at the Sale Hearing.

### C. Adjourned Cure Objections

If a timely filed Cure Objection cannot otherwise be resolved by the parties, the Cure Objection may be heard at the Sale Hearing, or, at the option of the Debtor, the Committee, and the Successful Bidder, be adjourned to a subsequent hearing (each such Cure Objection, an "<u>Adjourned Cure Objection</u>"). Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the applicable Contract that was the subject of such Adjourned Cure Objection shall, at the election of the Successful Bidder, and subject to the Debtor's rights set forth in the Bidding Procedures Order, be deemed assumed and assigned to the Successful Bidder as of the closing date of the Sale.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY CURE OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE COST TO CURE ANY DEFAULTS UNDER THE APPLICABLE CONTRACT, AND THE CURE COSTS SET FORTH ON <u>SCHEDULE 1</u> HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE CONTRACT AND SATISFY THE REQUIREMENTS OF SECTION 365(b) OF THE BANKRUPTCY CODE, AND THE COUNTERPARTY TO THE CONTRACT SHALL BE DEEMED BOUND BY AND TO HAVE CONSENTED TO THE CURE COSTS.**

### <u>NOTICE OF AUCTION RESULTS</u>

The Auction, if required, will be conducted **on February 26, 2025, at 8:00 a.m. (ChST)** virtually or at such other date, time or location as designated by the Debtor and the Committee. The Debtor and the Committee will provide instructions setting forth how to attend the Auction to the participants and other attendees via electronic mail. The Debtor and the Committee will provide

notice (via electronic mail or otherwise) of any change in the date, time or location of the Auction to Qualified Bidders and will cause publication of such change to occur on the docket, which is accessible at https://veritaglobal.net/ipi, as soon as reasonably practicable and in any event no later than 24 hours before the Auction.  If held, the Auction proceedings will be transcribed and/or video recorded.

Within two business days after the conclusion of the Auction, the Debtor will file with the Court and serve on the Sale Notice Parties a notice setting forth the results of the Auction (the "Notice of Auction Results"), which will (a) identify each Successful Bidder and the Backup Bidder; (b) include a copy of each Successful Bid and the Backup Bid or a summary of the material terms of such bids; and (c) set forth the Sale Objection Deadline (as defined in Section X.C of the Bidding Procedures), the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Auction.

## ADEQUATE ASSURANCE OBJECTIONS

### A. Adequate Assurance Objection Deadline

Any Counterparty to a Contract that wishes to object to the proposed assumption and assignment of the Contract, the subject of which objection is the proposed form of adequate assurance of future performance of, (i) in the event that the Stalking Horse Bidder is the Successful Bidder, the Stalking Horse Bidder (or any other relevant assignees) (each such objection, a "Stalking Horse Adequate Assurance Objection"); or, (ii) in the event that a Qualified Bidder other than the Stalking Horse Bidder is the Successful Bidder, such Successful Bidder (or any other relevant assignees) (each such objection, a "Non-Stalking Horse Adequate Assurance Objection" and together with any Stalking Horse Adequate Assurance Objection, an "Adequate Assurance Objection"), shall file with the Court and serve on the Objection Notice Parties **no later than March 5, 2025, at 6:00 p.m. (ChST)**.  Any Adequate Assurance Objection must state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof.

**B.     Resolution of Adequate Assurance Objections**

Pursuant to the Bidding Procedures Order, the Debtor, the Committee, the Successful Bidder and the objecting Counterparty must first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention.  If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the Successful Bidder (or any other relevant assignee) shall be determined by the Court at the Sale Hearing or, at the option of the Debtor, the Committee, and the Successful Bidder, be adjourned to a subsequent hearing, with notice to the party having filed the Adequate Assurance Objection.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND/OR ASSIGNMENT OF THE APPLICABLE CONTRACT WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE. THE APPLICABLE SUCCESSFUL BIDDER SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE CONTRACT IN ACCORDANCE WITH BANKRUPTCY CODE SECTIONS 365(b)(1)(C), 365(f)(2)(B) AND, IF APPLICABLE, 365(b)(3), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR ANY OTHER DOCUMENT.**

## SALE HEARING

The Sale Hearing shall take place on **March 25, 2025, at 9:00 a.m. (ChST)** before the Honorable Robert J. Faris, United States Bankruptcy Judge, in the United States District Court for the Northern Mariana Islands, Bankruptcy Division, located at the 3rd Floor Courtroom, 1671 Gualo Rai Rd., Gualo Rai, Saipan, MP 96950.

Dated:  January 10, 2025          **ARENTFOX SCHIFF LLP**

By: /s/ Christopher K. S. Wong
    Aram Ordubegian
    Christopher K.S. Wong
    Attorneys for the Official Committee of
    Unsecured Creditors

Dated:  January 10, 2025          **CHOI & ITO ATTORNEYS AT LAW**

By: /s/ Allison A. Ito
    Chuck C. Choi
    Allison A. Ito
    Attorneys for Imperial Pacific International
    (CNMI), LLC, the debtor and debtor in
    possession

**Schedule 1**

LIST OF CONTRACTS THAT <u>POTENTIALLY</u> COULD BE ASSUMED AND ASSIGNED IN CONNECTION WITH SALE[2]

| | Description | Cure Amount |
|---|---|---|
| 1 | ***Lease Agreement (LA 15-002S)*** by and between the Department of Public Lands, as lessor, and [the Debtor] as lessee, dated April 29, 2015 [for Tract No. 21049-R2, Lot Numbers 104 D 08, 104 D 11R/W, 104 D 12, and 104 D 04; (as amended by that certain  First Amendment to Lease Agreement dated September 13, 2016; Second Amendment to Lease Agreement  dated October 12, 2016;, and Third Amendment to Lease Agreement dated October 10, 2019). | $0.00 |
| 2 | ***Casino License Agreement (LA 15-002S)*** by and between the Commonwealth of the Northern Mariana Islands Lottery Commission, and [the Debtor] executed on August 12, 2024 (as amended by that certain Casino License Agreement Amendment No. 1 dated November 19, 2014; Casino License Agreement Amendment No. 2 dated March 3, 2015; Casino License Agreement Amendment No. 3 dated April 25, 2017; Casino License Agreement Amendment No. 4 dated June 29, 2017; Casino License Agreement Amendment No. 5 dated July 31, 2017; Casino License Agreement Amendment No. 1 dated September 28, 2018; Casino License Agreement Amendment No. 1 dated July 17, 2019; and Casino License Agreement Amendment No. 9 dated December 15, 2020) | To Be Determined[3] |

---

[2] Please contact attorneys for Debtor, for copies of any of the listed instruments.

[3] On October 11, 2024, the Commonwealth Casino Commission (the "CCC") submitted Proof of Claim No. 25, asserting an unsecured, non-priority claim of $17,625,000.00 for casino regulatory fees and fines.  However, the cure amount in connection with the Casino License Agreement (LA 15-002S) is currently subject to determination, and the Debtor and the CCC are in active discussion to determine the appropriate cure amount.