OFFICE OF THE UNITED STATES TRUSTEE

TIFFANY L. CARROLL
Acting United States Trustee
CURTIS CHING                3931
Assistant United States Trustee
300 Ala Moana Boulevard, Room 4108
Honolulu, Hawaii   96850
Telephone:   (808) 522-8154
Email:   ustpregion15.hi.ecf@usdoj.gov
Email:   curtis.b.ching@usdoj.gov.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS
## BANKRUPTCY DIVISION

| | |
|---|---|
| In re<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,<br><br>       Debtor and<br>       Debtor-in-Possession. | Case No. 24-00002<br>(Chapter 11)<br><br><br><u>Hearing:</u><br>Date:   December 5, 2025<br>Time:   9:00 a.m. (ChST)<br>Chief Judge:   Hon. ROBERT J. FARIS<br><br>[Related Docket Entry: Dkt. #483] |

1

## TABLE OF CONTENTS

I.    OVERVIEW ........................................................................................................... 1

II.    BACKGROUND ................................................................................................... 2

III.    APPLICABLE LAW .......................................................................................... 7

IV.    LEGAL ANALYSIS:    UNDER REASONABLENESS STANDARD, the COURT SHOULD REDUCE THE AMOUNT OF COMPENSATION AWARDED TO INTREPID ............................................................................................................ 9

V.    CONCLUSION .................................................................................................. 12

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**

*Hensley v. Eckerhart,*
    461 U.S. 424 S.Ct. 1933, 76 L.Ed.2d 40 (1983)..................................................... 12

*In re AutoParts Club, Inc.,*
    211 B.R. 29 (B.A.P. 9th Cir. 1997).................................................................... 9

*In re Busy Beaver Building Centers, Inc.,*
    19 F.3d 833 (3d Cir. 1994)............................................................................ 9

*In re Eliapo,*
    298 B.R. 392 (B.A.P. 9th Cir. 2003)................................................................. 10

*In re Eliapo,*
    468 F.3d 592 (9th Cir. 2006) ........................................................................ 13

*In re Fibermark, Inc.,*
    349 B.R. 385 (Bankr. D. Vt. 2006)................................................................... 9

*In re Ginji Corp.,*
    117 B.R. 983 (Bankr. D. Nev. 1990) ................................................................. 10

*In re Lucky Dragon Hotel & Casino, LLC,*
    2021 WL 3412936 (Bankr. D. Nev. 2021) ....................................................... 8, 10

*In re Spanjer Brothers, Inc.,*
    191 B.R. 738 (Bankr. N.D. Ill. 1996) ................................................................ 10

*Unsecured Creditors' Comm. v. Puget Sound Plywood,*
    924 F.2d 955 (9th Cir. 1991) ......................................................................... 13

**Statutes**

11 U.S.C. § 1103.................................................................................... 2, 4

11 U.S.C. § 327........................................................................................ 7

11 U.S.C. § 328..................................................................................... 2, 4

11 U.S.C. § 330........................................................................................ 9

11 U.S.C. § 330(a).................................................................................... 11

11 U.S.C. § 330(a)(1).................................................................................. 8

11 U.S.C. § 330(a)(2).................................................................................. 9

11 U.S.C. § 330(a)(3).................................................................................. 8

11 U.S.C. § 330(a)(4)(A)............................................................................... 8

11 U.S.C. § 363........................................................................................ 6

28 U.S.C. § 586(a)(3).................................................................................. 1

28 U.S.C. § 586(a)(3)(A)............................................................................... 1

**UNITED STATES TRUSTEE'S OBJECTION TO INTREPID
INVESTMENT BANKERS LLC APPLICATION FOR
COMPENSATION; DECLARATION OF CURTIS CHING**

The United States Trustee, by and through counsel, hereby submits this Objection to Intrepid Investment Bankers LLC's Fee Application ("Intrepid Fee Application"). Intrepid Investment Bankers LLC ("Intrepid") seeks an award of compensation in the amount of $1,160,036.49 (comprised of $1,154,792.50 of fees and $5,243.99 of expenses). The United States Trustee has authority and standing to make this statement since its responsibilities include, among other things, supervising "the administration of cases … under Chapter 11" of the Bankruptcy Code. 28 U.S.C. § 586(a)(3). Pursuant to 28 U.S.C. §586(a)(3)(A), the United States Trustee has the duty and authority to file comments regarding fee applications. For the reasons set forth herein, the United States Trustee respectfully requests the Court reduce the amount of compensation (and reimbursement of expenses) awarded to a reasonable amount, not exceeding $128,723.56.

## I.    OVERVIEW

The standard for which the Intrepid Fee Application should be viewed is the reasonableness standard set out in Section 330(a) since the United States Trustee reserved the right to raise objections to Intrepid's fee under this standard. Accordingly, Intrepid should be paid reasonable compensation and reimbursed its out-of-pocket expenses in the amount of $128,723.56. This compensation would award Intrepid at the blended rate of $541 per hour for its work.

Awarding Intrepid the full amount of its request, $1,154,792 or $5,969.46 per hour, would not be reasonable. Even if Intrepid had found bidders for the auction whose participation had contributed to increasing the ultimate sales price, it would be arguable that a $5,969.46 hourly rate would be excessive. But in this case, Intrepid did not find any bidders. The two

parties that ultimately bid at the auction came into the case independent of Intrepid's search for

bidders.    In this circumstance, Intrepid's claim of a $1 million sales fee is beyond excessive.

Intrepid should not be awarded a sales fee when none of the participants in the auction were

found from its efforts.

## II.    BACKGROUND

On April 19, 2024, Debtor Imperial Pacific International (CNMI), LLC commenced this

Chapter 11 bankruptcy case in the United States District Court for the Northern Marianas

Islands, Bankruptcy Division.

On August 10, 2024, Debtor filed a Motion to Approve Bid Procedures for Sale of

Substantially all of the Debtor's Assets and Related Relief, Dkt. #182 which proposed a

November 19, 2024 auction of Debtor's Acquired Assets (not including the Excluded Assets,

i.e., excluding, inter alia, the Casino License) under a competitive bidding process, with a

stalking horse bid of $10,000,000 by Mr. Lo Lam Sit ("Mr. Sit"), subject to a minimum initial

overbid of $300,000, and incremental overbids of $100,000.    The contract included a break-up

fee of $200,000.

On September 23, 2024, the Official Committee of General Unsecured Creditors

("Committee") filed its Application to Employ Intrepid Investment Bankers LLC as Investment

Banker effective as of September 22, 2024 pursuant to 11 U.S.C. §§ 328 and 1103.

Intrepid's Engagement Agreement specified the following terms of compensation:

## C.  COMPENSATION

1.    Intrepid compensation shall be payable as follows:

    a.  An earned upon receipt and non-refundable initial fee (the "Initial Fee") payable upon signing of this Engagement Agreement and entry of a Bankruptcy Court order approving Intrepid's retention equal to $50,000; and

    b.  In addition, Intrepid shall be compensated on a rates and hours basis using the rates set forth in Exhibit C. Intrepid shall record hours in increments of 0.25 and will provide summary level descriptions consistent with historical practices of investment banks in bankruptcy proceedings; and

    c.  A non-refundable sale fee (a "Sale Fee") payable upon the consummation of any Sale equal to:

        i.  Aggregate Consideration of less than $5,000,000: $500,000

        ii.  Aggregate Consideration of $5,000,001 to $10,000,000: $750,000

        iii.  Aggregate Consideration of $10,000,001 to $15,000,000: $1,000,000

        iv.  Aggregate Consideration of $15,000,001 to $20,000,000: $1,250,000

        v.  Aggregate Consideration of $20,000,001 to $25,000,000: $1,500,000

        vi.  Aggregate Consideration in excess of $25,000,000: $1,500,000 plus 5.0% of all proceeds in excess of $25,000,000

        vii.  In the event of a Sale effectuated through a plan of reorganization, the Sale Fee shall be $2,000,000

    d.  The Debtor has filed a motion to approve bid procedures and designating Loi Lam Sit ("Sit") as the stalking horse bidder at a purchase price of $10,000,000 [Dkt. No. 182] and an application to employ Keen-Summit Capital Partners LLC ("Keen-Summit") as the estate's real estate broker [Dkt Nos. 222]. Intrepid acknowledges and agrees that it shall not be entitled to a Sale Fee in the event that a sale is consummated with Sit, at the stalking horse bid of $10,000,00. In the event that a Sale is consummated with a third party that is solicitated or introduced by Keen-Summit, Intrepid's Sale Fee shall be limited to $250,000.

    e.  The Committee and Intrepid acknowledge and agree that more than one fee may be payable to Intrepid under section C.1,, in connection with any single Sale or series of Sales, it being understood and agreed that if more than one fee becomes so payable to Intrepid, each such fee shall be paid to Intrepid.

    f.  For the avoidance of doubt, the Initial Fee and any hourly fees, shall not be credited against any Sale Fee as defined herein.

On September 25, 2024, the United States Trustee filed a Limited Objection to the Committee's Application to Employ Intrepid, Dkt. #260.   The United States Trustee expressed that "[g]iven the uncertain value of the Debtor's assets to be administered, and the uncertainty in recoveries for secured creditors, administrative expenses creditors, and unsecured creditors, careful review of the term of proposed compensation to professionals is warranted."   The United States Trustee argued the Section 328 terms were not appropriate and in the best interests of the estate because the terms of employment (the proposed "Initial Fee", the hourly Fees, and "Sales Fee") appeared to be overly generous.

On October 5, 2024, the Court entered an Order Approving Application of the Official Committee of General Unsecured Creditors for Authority to Employ Intrepid Investment Banker Effective as of September 22, 2024 Pursuant to 11 U.S.C. §§ 328 and 1103, Dkt. 276 (the "Employment Order").   Importantly, although the Employment Order authorized Intrepid's employment under Section 328, the United States Trustee retained the right to object to Intrepid's compensation requests based on the reasonableness standard provided in Section 330:

4.  Notwithstanding anything to the contrary herein, the Office of the U.S. Trustee ("OUST") shall have the right to object to Intrepid's requests for interim and final compensation and reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of this Court; *provided* that the requirements of the Bankruptcy Code and the Bankruptcy Rules, are hereby modified such that: (i) Intrepid's professionals shall only be required

4

to maintain summary records in half-hour (**.50**)[2] increments describing each professional's tasks on a daily basis in support of each fee application, including reasonably detailed descriptions of those services and the individuals who provided those services, and shall not be required to keep time records on a "project category" basis, and (ii) will present such records to this Court.  This Order shall not prejudice or otherwise affect the rights of the OUST to challenge the reasonableness of Intrepid's fees under the standard set forth in the preceding sentence.

On January 8, 2025, the Court entered an Order Approving Stipulation of Debtor and Official Committee of General Unsecured Creditors (A) To Establish Bidding Procedures for the Sale of the Assets of the Debtor, (B) To Designate a Stalking Horse Bidder, (C) To Schedule an Auction and a Sale Hearing, and (D) To Establish Assumption and Assignment Procedures, Dkt. #340 ("Order Approving Bid Procedures Stipulation") which set forth procedures and schedule for an auction of Debtor's assets and approved a minimum bid amount of $10,000,000.

According to the Intrepid Fee Application, Intrepid contacted "nearly 100 parties." While the ultimate buyer, Team King Investment (CNMI) LLC ("Team King"), was included in the "nearly 100 parties" contacted, Intrepid has acknowledged that Team King initiated the contact in order to participate in the sales process. In other words, Team King contacted Intrepid, not the other way around.

According to the Intrepid Fee Application, of the "nearly 100 parties" contacted by Intrepid, seven executed non-disclosure agreements and received confidential information. Intrepid has indicated that none of the seven became bidders. Moreover, neither of the two parties which ultimately bid on the assets were contacted by Intrepid.   The stalking horse bidder,

Mr. Sit, had participated early in the case as a DIP lender and had made the initial $10 million stalking horse bid.   The other bidder was Team King which, as mentioned above, contacted Intrepid.

On January 30, 2025, the Debtor designated Mr. Sit as the stalking horse bidder and submitted a proposed Asset Purchase Agreement for $12.5 million, an increase from his original $10 million offer.   See Docket 359.   The United States Trustee is informed and believes that this increase did not stem from Intrepid's participation in the case.   Rather, the increase appears to have been generated through Sit's discussions with the Debtor and its counsel.

On February 14, 2025, the Debtor and Committee filed a Joint Motion of Debtor and Official Committee of General Unsecured Creditors for Order (I) Approving the Sale of Substantially all of the Debtor's Assets Free and Clear of all Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363, Subject to Overbids, and (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Cure Amounts Associated Therewith ("Joint Motion"). See Docket 367.

The auction took place on February 25, 2025.   Mr. Sit and Team King were the only bidders.   Team King's bid of $12,950,000 was the highest.   On February 28, 2025, the Committee filed a Notice of Successful Bidder and Back-up Bidder, Docket 374, stating that the Debtor and Committee selected Team King Investment (CNMI), LLC as the successful bidder for Debtor's assets with a bid comprised of $12,950,000.00 cash (plus an option to purchase the Casino License and assumption of certain liabilities) with Mr. Loi Lam Sit as the back-up bidder with a back-up bid comprised of $12,500,000.00 cash (plus an option to purchase the Casino License and assumption of certain liabilities).

On May 1, 2025, the Court entered an Order Granting the Joint Motion which approved

the sale of the Debtor's assets to Team King for $12,950,000 plus an option to purchase the Casino License and assumption of certain liabilities.   See Docket 433.   On or about August 20, 2025, the sale transaction closed.   See Docket 473.

On October 31, 2025, Intrepid filed the Intrepid Fee Application.   See Docket 483. Intrepid seeks an award of compensation and reimbursement of expenses in the amount of $1,160,036.49.   This is comprised of $50,000 (initial fee) which has already been paid, plus $104,792.50 in hourly fees, plus a sales fee of $1,000,000, plus reimbursement of expenses of $5,243.99.

The Intrepid Fee Application states that its staff spent a total of $193.45 hours working on this case. The $104,792.50 in hourly fees comes to a blended rate of $541.70/hour.   Taking the *total* fee request (initial fee plus hourly fees plus sales fee) of $1,154,792.50, the blended hourly rate comes to **$5,969.46/hour**.[1]

## III.    APPLICABLE LAW

Section 330(a)(1) of the Bankruptcy Code (the "Code") provides that a court may award to professionals retained pursuant to 11 U.S.C. § 327:

> (A) reasonable compensation for actual, necessary services, and
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).   11 U.S.C. §330(a)(3) instructs a reviewing court:

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
> (A) the time spent on such services;
> (B) the rates charged for such services;

---

[1] CNMI local bankruptcy rule 2016-1 which adopts the US Trustee fee guidelines requires disclosure of the blended rate.

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3).   Pursuant to Section 330(a)(4)(A), "the court **shall disallow** compensation in instances of: (1) unnecessary duplication of services; or (2) services that were not reasonably likely to benefit the debtor's estate or necessary to the administration of the case."   *In re Lucky Dragon Hotel & Casino, LLC*, 2021 WL 3412936, at *18 (Bankr. D. Nev. 2021)(citing 11 U.S.C. § 330(a)(4)(A))(citation modified and emphasis added).

Section 330(a)(2) states that "[t]he court may, on its own motion or on the motion of the United States Trustee … or any other party in interest, award compensation that is **less than** the amount of compensation that is requested."   11 U.S.C. § 330(a)(2) (emphasis added).   There is an inherent public interest that must be considered in awarding fees in a bankruptcy case and trial courts have a supervisory obligation to evaluate the appropriateness of fees and expenses requested by a bankruptcy professional. *In re Fibermark, Inc.*, 349 B.R. 385, 393-94 (Bankr. D. Vt. 2006).   The Bankruptcy Court has the independent duty to examine the reasonableness of the fees requested by retained professionals, notwithstanding the absence of objections by the trustee, debtor or creditor.   *In re AutoParts Club, Inc.*, 211 B.R. 29, 33 (B.A.P. 9th Cir. 1997), *citing In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 841 (3d Cir. 1994) (stating "the bankruptcy court must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors).

8

The fee applicant bears the burden of proof to show entitlement to the requested fees under 11 U.S.C. § 330.   *See In re Eliapo*, 298 B.R. 392, 402 (B.A.P. 9th Cir. 2003), *rev'd in part on other grounds*, 468 F.3d 592 (9th Cir. 2006); *In re Ginji Corp.*, 117 B.R. 983, 990 (Bankr. D. Nev. 1990) ("[t]he applicant … has the burden of proof to show the reasonableness of the fees sought"); *In re Spanjer Brothers, Inc.*, 191 B.R. 738, 747 (Bankr. N.D. Ill. 1996) (noting the burden of proof to show entitlement to fees should "not be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors).   "If the evidence supporting a fee application is too vague or insufficient to allow for a fair evaluation of the work done and the reasonableness and necessity for such work, the court should disallow compensation for such services."   *In re Lucky Dragon Hotel & Casino, LLC*, 2021 WL 3412936, at *19 (Bankr. D. Nev. 2021) (citation modified).

## IV.    LEGAL ANALYSIS:   UNDER REASONABLENESS STANDARD, THE COURT SHOULD REDUCE THE AMOUNT OF COMPENSATION AWARDED TO INTREPID

Under the standards of section 330(a), the United States Trustee submits that the total fee request of $1,154,792.50 in which Intrepid's blended hourly rate comes to $5,969.46/hour, should not be approved.   In particular, the "Sales Fee" of $1,000,000.00 is plainly excessive under the circumstances of this case.   The $1,000,000.00 Sales Fee bears no relationship to the benefit to the estate provided by Intrepid and, therefore, is unreasonable under the standards of § 330(a).

In September 2024, in connection with Intrepid's employment application, the United States Trustee gave early notice of her concern that "[g]iven the uncertain value of the Debtor's assets to be administered, and the uncertainty in recoveries for secured creditors, administrative expense creditors, and unsecured creditors, careful review of the terms of proposed

9

compensation to professionals is warranted."   Pursuant to the Employment Order, the United States Trustee reserved the right to object to Intrepid's compensation requests based on the reasonableness standard provided in Section 330.   Because the only prospects for any recovery to unsecured creditors in this case was a sale of the Debtor's assets for a sufficient purchase price less administrative expenses, all administrative expense claimants should have been aware of the likelihood their claims would be subject to scrutiny.

Intrepid's September 22, 2024 Engagement Agreement provided that Intrepid would not be entitled to a Sale Fee "in the event that a sale is consummated with Sit, at the stalking horse bid of $10,000,000" and that "[i]n the event that a Sale is consummated with a third party that is solicited or introduced by Keen-Summit, Intrepid's Sale Fee shall be limited to $250,000."   The agreement recognized that (1) Intrepid was entering the case with an initial stalking horse bid already having been made; and (2) it would be unreasonable for Intrepid to receive a full Sales Fee for sale with a third party that was not produced by Intrepid.

Similarly, Intrepid's Engagement Agreement recognized that it would be unreasonable for Intrepid to receive a Sales Fee for a transaction consummated with the existing stalking hose bidder, Mr. Sit, in the amount of $10,000,000.   The agreement's terms regarding limitations on compensation embody the common-sense concept that a professional should not be rewarded for a transaction that was not the product of its own efforts, but rather resulted from the efforts of others or fortuity.

In January 2025, Mr. Sit increased his stalking horse bid to $12,500,000.   The U.S. Trustee is informed that Intrepid was not involved in Mr. Sit's increasing his offer by $2.5 million.   Then, in February 2025, Team King was approved as the successful bidder for Debtor's assets with a bid comprised of $12,950,000.00 cash (plus an option to purchase the

10

Casino License and assumption of certain liabilities).    Intrepid's efforts did not uncover Team King as the potential buyer.    Since Intrepid did not solicit or introduce either Team King or Mr. Sit to the Debtor or the Committee, it is not clear that Intrepid's efforts warrant paying the $1,000,000 Sales Fee.    Certainly, Intrepid conducted the auction which resulted in Team King's winning bid, and Intrepid should be paid for its work in conducting this auction. The United States Trustee has no objection to paying Intrepid its hourly fees which come to a blended rate of $541.70/hour.

For the Sales Fee request, Intrepid is still subject to the U.S. Trustee's analysis under section 330 and the Court's own assessment of its work under this standard.    The assessment starts with the customary method for assessing fees, the lodestar analysis, under which the number of hours reasonably expended" is multiplied by "a reasonable hourly rate" for the person providing the services. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).    Under the lodestar analysis, the compensation requested by Intrepid for its *hourly* work, coming at $541.70/hour, is reasonable in light of the services performed.    In contrast, when looking at the entire fee request, including the Sales Fee, the blended hourly rate of $5,969.46/hour shows a vast disconnect between the fee request and the work of the firm.

Admittedly, the lodestar method, while customary, is not mandated in all cases. *See In re Eliapo,* 468 F.3d 592, 598 (9th Cir. 2006). Courts can modify the lodestar and adjust the award of fees looking at the services against the benefit to the estate.    *See Unsecured Creditors' Comm. v. Puget Sound Plywood,* 924 F.2d 955, 960 (9th Cir. 1991) (affirming court's reduction in fees using alternate approach of reviewing benefit to the estate).    However, in this case, given that Intrepid found neither of the two parties which bid at the auction, including the prevailing buyer, awarding Intrepid for its hourly work, including the creation of a data center, soliciting potential

11

candidates, processing bids, and conducting the auction, provides fair and reasonable compensation.

Granting an additional $1,000,000 Sales Fee would reward Intrepid for work beyond its hourly rate that accomplished little for the estate.   To be sure, the overall sales price increased by $2.95 million, but of critical importance is that Intrepid's efforts did not find either of the two bidders.   Moreover, Intrepid's efforts did not cause the $2.5 million stalking horse bid increase by Mr. Sit and did not cause Team King's (ultimately winning) bid of $450,000 more.   While Intrepid deserves credit and compensation for its work in soliciting bids to "nearly 100" parties, it should not earn what amounts to a commission on a transaction that it did not broker.[2] Intrepid's Initial Fee and Hourly Fee are more than adequate to compensate for professional time expended in this case.   Because the proposed "Sales Fee" appears to bear no relationship to either Intrepid's marketing efforts, or its hourly rates, Intrepid's award should be limited to its hourly fee.[3]

# V.    <u>CONCLUSION</u>

---

[2]  Courts have departed from broker's commissions even under § 328 where the broker spent only limited time on the engagement, and the winning bidder was not procured by the broker.   *See In re Begun*, 162 B.R. 168, 180 (Bankr. N.D. Ill. 1993) (holding previously approved commission was improvident for several reasons, including that the winning bidder was not procured by broker).

[3]  Intrepid's "Sales Fee" is essentially a "Success Fee" as used in other cases.   Such fees are warranted only in exceptional cases. *See, e.g., In re Manoa Finance Co., Inc.*, 853 F.2d 687, 688, 691-92 (9th Cir. 1988) (although there is a "strong presumption" that the lodestar amount is reasonable compensation, this amount may be enhanced in "exceptional circumstances where the applicant produces specific evidence that [the lodestar amount] does not fairly compensate for the work done …."). To warrant an upward adjustment, the results must meet the "'rare and exceptional'" threshold that "'exceed the reasonable expectations of the parties.'" *See In re Buckridge*, 367 B.R 191, 204 (Bankr. C.D. Cal. 2007) (quoting *In re Farah*, 141 B.R. 920, 925 (Bankr. W.D. Tex. 1992)).   Good results alone usually do not merit a "success" fee. *See Manoa*, 853 F.2d at 691; *In re Buckridge*, 367 B.R. at 202; *In re Amberjack Interests, Inc.*, 326 B.R. 379, 391 (Bankr. S.D. Tex. 2005) (results that were "very good"—including piercing the corporate veil, and "probably pay[ing] off all the creditors"—were not so "highly extraordinary" to warrant an enhancement).

For the reasons stated above, Intrepid's Application for Compensation should be allowed in the amount of $104,792.50 with its additional requests denied.

DATE: Honolulu, Hawaii, November 18, 2025.

TIFFANY L. CARROLL
Acting United States Trustee

By /s/ CURTIS CHING
Assistant United States Trustee

13

## DECLARATION OF CURTIS CHING

I, CURTIS CHING, hereby declare:

1.      I am over the age of 18 years old, and I am competent to make this declaration. Except as otherwise stated, I make this declaration upon my personal knowledge.

2.      I am the Assistant United States Trustee based in Honolulu, Hawaii which has responsibility over bankruptcy cases in the District of the Northern Mariana Islands.

3.      In my communications with agents of Intrepid, Intrepid has acknowledged that Team King initiated the contact with Intrepid in order to participate in the sales process.

4.      According to the Intrepid Fee Application, of the "nearly 100 parties" contacted by Intrepid, seven executed non-disclosure agreements and received confidential information. Intrepid has indicated to the U.S. Trustee that none of the seven parties executing non-disclosure agreements became bidders. Moreover, neither of the two parties which ultimately bid on the assets were contacted by Intrepid.   The stalking horse bidder, Loi Lam Sit, had participated early in the case as a DIP lender and had made the initial $10 million stalking horse bid.   The other bidder was Team King which, as mentioned above, contacted Intrepid.

5.      On January 30, 2025, the Debtor designated Mr. Sit as the stalking horse bidder and submitted a proposed Asset Purchase Agreement for $12.5 million, an increase from his original $10 million offer.   Both the Debtor's counsel (Mr. Choi) and Mr. Sit's counsel (Mr. Muzzi) have confirmed that this increased bid did not stem from Intrepid's participation in the case.   Rather, the increase appears to have been generated through Sit's discussions with the Debtor and its counsel.

I declare under penalty of perjury and under the laws of the United States of America that

14

the foregoing is true and correct to the best of my knowledge.

DATED: Honolulu, Hawaii, November 18, 2025.

/s/ CURTIS CHING
Assistant U.S. Trustee

15